**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

CENTRAL DISTRICT OF CALIFORNIA

Case number *(if known)* ____________ Chapter **11**

☐ Check if this an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

**4/19**

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | **Hawkeye Entertainment, LLC** |
| 2. | **All other names debtor used in the last 8 years**<br>Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **26-2189973** |
| 4. | **Debtor's address** | **Principal place of business**<br>**14242 Ventura Boulevard #300**<br>**Sherman Oaks, CA 91423**<br>Number, Street, City, State & ZIP Code<br>**Los Angeles**<br>County<br><br>**Mailing address, if different from principal place of business**<br>P.O. Box, Number, Street, City, State & ZIP Code<br>**Location of principal assets, if different from principal place of business**<br>Number, Street, City, State & ZIP Code |
| 5. | **Debtor's website** (URL) | |
| 6. | **Type of debtor** | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: |

Debtor **Hawkeye Entertainment, LLC** Case number (*if known*)
Name

**7. Describe debtor's business**

A. *Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☑ None of the above

B. *Check all that apply*

- ☐ Tax-exempt entity (as described in 26 U.S.C. §501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

____

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

- ☐ Chapter 7
- ☐ Chapter 9
- ☑ Chapter 11. *Check all that apply*:
  - ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625 (amount subject to adjustment on 4/01/22 and every 3 years after that).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  - ☐ A plan is being filed with this petition.
  - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  - ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
- ☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

- ☐ No.
- ☑ Yes.

| | | | | | |
|---|---|---|---|---|---|
| District | **Los Angeles Central - Woodland Hills Division** | When | **8/21/19** | Case number | **1:19-bk-12102-MT** |
| District | **Los Angeles Central District of California** | When | **9/30/13** | Case number | **1:13-bk-16307-MT** |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list

- ☑ No
- ☐ Yes.

| | | | |
|---|---|---|---|
| Debtor | | Relationship | |
| District | When | Case number, if known | |

Debtor **Hawkeye Entertainment, LLC** Case number (*if known*) ________
Name

**11. Why is the case filed in *this district?***

*Check all that apply:*

- [x] Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.
- [ ] A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

- [x] No
- [ ] Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

- [ ] It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
  What is the hazard? ________
- [ ] It needs to be physically secured or protected from the weather.
- [ ] It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).
- [ ] Other ________

**Where is the property?** ________
Number, Street, City, State & ZIP Code

**Is the property insured?**

- [ ] No
- [ ] Yes. Insurance agency ________
  Contact name ________
  Phone ________

## Statistical and administrative information

**13. Debtor's estimation of available funds**

. *Check one:*

- [ ] Funds will be available for distribution to unsecured creditors.
- [x] After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| [x] 1-49 | [ ] 1,000-5,000 | [ ] 25,001-50,000 |
| [ ] 50-99 | [ ] 5001-10,000 | [ ] 50,001-100,000 |
| [ ] 100-199 | [ ] 10,001-25,000 | [ ] More than100,000 |
| [ ] 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| [ ] $0 - $50,000 | [x] $1,000,001 - $10 million | [ ] $500,000,001 - $1 billion |
| [ ] $50,001 - $100,000 | [ ] $10,000,001 - $50 million | [ ] $1,000,000,001 - $10 billion |
| [ ] $100,001 - $500,000 | [ ] $50,000,001 - $100 million | [ ] $10,000,000,001 - $50 billion |
| [ ] $500,001 - $1 million | [ ] $100,000,001 - $500 million | [ ] More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| [ ] $0 - $50,000 | [x] $1,000,001 - $10 million | [ ] $500,000,001 - $1 billion |
| [ ] $50,001 - $100,000 | [ ] $10,000,001 - $50 million | [ ] $1,000,000,001 - $10 billion |
| [ ] $100,001 - $500,000 | [ ] $50,000,001 - $100 million | [ ] $10,000,000,001 - $50 billion |
| [ ] $500,001 - $1 million | [ ] $100,000,001 - $500 million | [ ] More than $50 billion |

Debtor **Hawkeye Entertainment, LLC** Case number (*if known*)
Name

**Request for Relief, Declaration, and Signatures**

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 10/18/2023
MM / DD / YYYY

**X** ______________________________ **Adi McAbian**
Signature of authorized representative of debtor — Printed name

Title **President of Saybian Gourmet, Inc., Member of Hawkeye Ent.**

---

**18. Signature of attorney**

**X** **/s/ Sandford L. Frey** Date **10/18/2023**
Signature of attorney for debtor — MM / DD / YYYY

**Sandford L. Frey 117058**
Printed name

**Leech Tishman Fuscaldo & Lampl, LLC**
Firm name

**200 S. Los Robles Avenue, Suite 300**
**Pasadena, CA 91101**
Number, Street, City, State & ZIP Code

Contact phone **626-796-4000** Email address **sfrey@leechtishman.com**

**117058 CA**
Bar number and State

## RIDER TO STATEMENT OF RELATED CASES AND EXPLANATION

### I. Prior Related Cases.

Hawkeye Entertainment, LLC ("**Hawkeye**") has two prior Chapter 11 cases that were filed as follows:

In re Hawkeye Entertainment, LLC, Case No. 1:13-bk-16307-MT, United States Bankruptcy Court, Central District of California, San Fernando Valley Division, Chapter 11 filed September 30, 2013, assigned to the Honorable Maureen Tighe ("**First Case**"). The Plan in the First Case was confirmed June 20, 2016; and

In re Hawkeye Entertainment, LLC, Case No. 1:19-bk-12102-MT, United States Bankruptcy Court, Central District of California, San Fernando Valley Division, Chapter 11 filed August 21, 2019, assigned to the Honorable Maureen Tighe ("**Second Case**"). The Plan in the Second Case was confirmed by order entered on August 6, 2021 [Second Case, Docket No. 391]. The Confirmation Order in the Second Case is a Final Order. The Effective Date of the Plan in the Second Case occurred on October 20, 2021 (sixty days after the Confirmation Order became a Final Order). The final decree in this Chapter 11 case has not yet been entered because the Court deferred the closing solely for purposes of awaiting rulings on the numerous appeals filed by the landlord (discussed below).

On September 20, 2023, the United States District Court entered its *Order: (1) Granting Hawkeye Entertainment, LLC'S Motions for Attorney's Fees [Case No. 2:20-cv-10656-FLA, Dkts. 22, 38]; (2) Denying Smart Capital Investments I, et al.'s Motion for Relief to Allow Late-Filed Opposition [Case No. 2:20-cv-10656-FLA, Dkt. 43]; and (3) Denying Appellants Smart Capital Investments I, et al.'s Appeals of the Bankruptcy Court's Orders In Case Nos. 2:21-cv-04768-FLA and 2:21-cv-04952-FLA* [Docket No. 55] ("**Fee Appeal Order**"), which resolved the fee appeals assigned case numbers 2:21-cv-04768-FLA and 2:21-cv-04952-FLA before the District Court ("**Fee Appeals**"), as well as a related motion and pending motions for additional fees awarded in connection with separate appeals of the order of the Bankruptcy Court assuming a Lease. Hawkeye is now in a position to seek a final decree in the Second Case. Unfortunately, the landlord's recent actions necessitate this filing before the motion could be filed.

Judge Tighe, having lived with the related cases for over a decade, is acutely familiar with background of the disputes between Hawkeye and its landlord and of the landlord's unrelenting egregious efforts to wrongfully terminate Hawkeye's lease and the sublease of its subtenant. Each time the landlord has lost, and each time Hawkeye has prevailed and successfully confirmed a plan, the landlord comes up with a new strategy to terminate the lease and drive Hawkeye and its subtenant out of business with the result that it has cost Hawkeye and related entities millions in defense costs, thus preventing payment of its bona fide creditors and investors.

Hawkeye did not take this new Chapter 11 filing lightly; but, as discussed below, the landlord's recent egregious actions and the strategic timing of those actions, left Hawkeye with the draconian choice of either filing again to preserve its valuable lease or do nothing and risk

losing its right to possession, its business, and ability of its subtenant to operate, which it has successfully fought to maintain for over a decade.

## II. Facts Necessitating the Filing of this Case.

Hawkeye is the tenant under a commercial lease for the first four floors and a portion of the basement in the historic Pacific Stock Exchange Building, located at 618 S. Spring Street, Los Angeles, California 90014 ("**Property**") pursuant to an unexpired Lease ("**2009 Lease**") as amended by the First Amendment to the Lease Agreement ("**First Amendment**" and together with the 2009 Lease, the "**Lease**"). W.E.R.M. Investments, LLC ("**WERM**") is the subtenant operating a nightclub and entertainment venue under the name "**Exchange LA**." Exchange LA is a highly successful musical event venue that is ranked among the top 10 music venues in the world. The subtenancy of WERM was approved under the terms of the Lease with its landlord, Smart Capital Investments I, LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC, Smart Capital Investments IV, LLC, and Smart Capital Investments V, LLC (collectively "**Smart Capital**"), which is the successor landlord under the 2009 Lease.

Since acquiring the Property by acquiring a defaulted note from the lender of the previous landlord and then foreclosing the interest of the prior landlord, Michael Chang acquired the Property through a previous entity New Vision Horizon, LLC ("**New Vision**") (whose principal was also Michael Chang, the same principal of Smart Capital). Since acquiring the Property, Michael Chang, first through New Vision and then Smart Capital, has been engaged in a relentless, scorched-earth, campaign to wrongfully terminate the Lease (because, based on his own sworn testimony, Michael Chang perceives it to be below market). Michael Chang's campaign to terminate the Lease has persisted for over a decade, has forced two prior Chapter 11's to preserve the Lease, and has cost Hawkeye and WERM millions of dollars in professional fees and costs.

Despite its having lost a five day evidentiary trial wherein it failed to prove up its fifteen alleged non-monetary defaults, having lost four separate appeals (including before the Ninth Circuit Court of Appeals), having three published opinions issued against it, having had an aggregate of $824,314.40 in Attorneys' fees awarded against it by three different Courts, having recently lost its appeal in the U.S. District Court in connection with the award of attorneys' fees by the Bankruptcy Court, having lost a motion in connection with the fee appeal which the United States District Court deemed to have strained credibility, having been enjoined by the California Superior Court for trying to interfere with Hawkeye's renewal of the City of Los Angeles conditional use permit allowing alcohol to be served ("**CUB**") under which it is permitted to operate Exchange LA, Smart Capital continues undaunted in its flagrant efforts to wrongfully terminate the Lease of Hawkeye and the sublease of WERM and interfere with and destroy a successful business that has taken well over a decade to build, all to the detriment of Hawkeye, WERM, their creditors, employees, investors and thousands of patrons.

Smart Capital's wrongful motivation has been recognized by at least three separate Court's, including the Ninth Circuit Court of Appeals, which recently stated in a published opinion:

> Here, the record establishes that the bankruptcy court determined that any default was cured as of the time of assumption, and that many of the alleged defaults were either not defaults in the first place or were only minor deviations from the contract terms.

*In re Hawkeye Entertainment, LLC*, 49 F.4th 1232, 1240 (9th Cir. 2022)

> While section 365 provides "protection from having to be saddled with a debtor that may continue to default and return to bankruptcy," it does not allow a landlord to "improve its position" by "escap[ing] the bargain it made" in pursuit of an opportunity to "rent the premises to others at a higher" amount.). Smart Capital made the deal it made with Hawkeye. And while it is entitled to assurance that Hawkeye will comply with the terms of that deal, it is not entitled to use section 365(b)(1) as a means to get out of a * bad deal so that it can make a better one.

Id. at 1241

So, why is Hawkeye here again? That is because Smart Capital continues to serve fraudulent notices of default at strategic moments in furtherance of its efforts to terminate the Lease. Prior to the filing of the Second Case, on August 5, 2019, without warning or prior notice to Hawkeye or the subtenant, WERM, Smart Capital suddenly delivered a letter alleging various nonmonetary defaults, most of which lacked specificity as to the exact nature of such defaults, with a 15-day cure deadline ("**August 5 2019 Default Letter**"). It is noteworthy that no monetary defaults were alleged or could legally be alleged.

Hawkeye had no prior knowledge or notice of Smart Capital's claims before receipt of the August 5 2019 Default Letter. Moreover, Hawkeye was unaware of any citation from any governmental authority (which would typically be the entity citing and enforcing such alleged violations) of the purported defaults asserted in Smart Capital's August 5 2019 Default Letter. On the contrary, this letter was the first such notification, whether written or oral, in which Smart Capital claimed the existence of nonmonetary defaults. In other words, Smart Capital's fifteen-day notice came out of the clear blue.

In response to Smart Capital's August 5 2019 Default Letter, Hawkeye made numerous attempts to reach Smart Capital's principal, Mr. Chang, to obtain more specificity as to the alleged defaults and discuss the allegations. All of those were unsuccessful. Having been unable to obtain specificity from Smart Capital despite repeated attempts, on August 19 (within the 15-day period), Hawkeye served its written response to the Landlord's contentions ("**Hawkeye's August Response**"). As part of Hawkeye's August Response, and despite Hawkeye's categorical disagreement with Smart Capital's claims and contentions contained in the August 5 2019 Default Letter, Hawkeye notified Smart Capital within the 15-day cure period that it had complied with Smart Capital's demands as to those items capable of being performed within 15 days, and had commenced compliance with those items which required longer than 15 days.

Nevertheless, once again without warning or prior discussion, and prior to expiration of the 15 day notice period, Smart Capital surreptitiously slipped under the door of Hawkeye's business office a document entitled *3 Day Notice to Perform Conditions and Covenants or Quit*

(“**Previous Three-Day Notice**”), which purported to declare Hawkeye and WERM in default and declare a forfeiture of the Lease and Sublease.

Due to short notice period and the potentially devasting impact of the Previous Three-Day Notice on the right to possession of Hawkeye and its subtenant pursuant to applicable law in the Ninth Circuit, Hawkeye did not have adequate time to seek judicial intervention and/or reopen its former bankruptcy case and seek relief from any Court. In order to preserve its right to possession under applicable Ninth Circuit law, protect its most valuable assets -- its Lease and Sublease -- and therefore protect the operating business, the rights of numerous creditors and interested parties, and indirectly the jobs of WERM’s numerous employees, Hawkeye was forced to file chapter 11.

In previous contested litigation in the Bankruptcy Court regarding alleged default under the Lease, Hawkeye was the prevailing party against Smart Capital. *See In Re Hawkeye Entm’t, LLC,* Case Nos. 2:20-cv-10656-FLA; 1:19-bk-12102-MT; affirmed on appeal to the U.S District Court in *Smart Capital Invs. I, LLC v. Hawkeye Entm't, LLC (In re Hawkeye Entm't, LLC)* (C.D.Cal. Oct. 26, 2021, No. 2:20-cv-10656-FLA) 2021 U.S.Dist.LEXIS 206568); and again affirmed on appeal to the Ninth Circuit Court of Appeals with entitlement to attorneys’ fees, in a reported decision *Smart Cap. Invs. I, LLC v. Hawkeye Ent., LLC (In re Hawkeye Ent., LLC),* 49 F.4th 1232 (9th Cir. 2022).

On November 6, 2020, in reliance upon the attorneys’ fee provision in the Lease and California Civil Code §1717, Hawkeye sought to recover its attorneys’ fees and costs incurred in connection with the litigation in the Bankruptcy Court by filing its Bankruptcy Court Fee Motion with the Bankruptcy Court pursuant to Rule 54(d) of the Federal Rules, as made applicable to bankruptcy proceedings by Rule 7054(a) of the Bankruptcy Rules. [Bankr. Dkt. No. 235].

On February 19, 2021, the Bankruptcy Court granted the Bankruptcy Fee Motion in favor of Hawkeye, which ruling is set forth as reported in *In re Hawkeye Entertainment*, LLC, 625 B.R. 745 (Bankr. C.D. Cal. 2021) (“**Bankruptcy Fee Decision**”); and thereafter, on March 8, 2021, entered a *Final Order and Judgment for an Award of Attorney’s Fees* [Bankruptcy Docket No. 297] (“**Bankruptcy Fee Judgment**”). The Bankruptcy Fee Decision and Bankruptcy Fee Judgment awarded fees and costs in favor of Hawkeye as the prevailing party against Smart Capital in connection with the Lease litigation and trial regarding purported defaults asserted by the landlord, Smart Capital.

Smart Capital appealed the Bankruptcy Fee Decision to the U.S. District Court, where it was assigned Case Number 2:21-cv-04768-FLA. Smart Capital also filed a separate appeal to the U.S. District Court in connection with supplemental fees awarded for October 2020 in favor of Hawkeye, which was originally assigned Case Number 2:21-cv-04952-FLA. The Fee Appeals were consolidated at Case Number 2:21-cv-04768-FLA.

After prevailing in the U.S. District Court, Hawkeye requested fees as the prevailing party in that appeal. In addition, after prevailing in the appeal to the Ninth Circuit Court of Appeals, Hawkeye filed on November 20, 2022, before the Ninth Circuit Court of Appeals, an *Appellee’s Motion for Attorneys’ Fees on Appeal (With Supporting Memorandum)* [9th Circuit

Docket No. 41-1] (“**Supplemental Court of Appeals Fee Motion**”). The Supplemental Court of Appeals Fee Motion requested supplemental fees and expenses of an additional $107,429 in connection with the appeal to the Ninth Circuit Court of Appeals. Hawkeye also filed contemporaneously a motion to transfer the determination to the District Court to consolidate the Ninth Circuit Court of Appeals award with the pending Supplemental District Court Appeal Fees. Thus, in addition to the amount previously awarded by the Bankruptcy Court, Hawkeye requested supplemental fees in the additional amount of $229,618.

On November 3, 2022, the Court of Appeals for the Ninth Circuit issued an Order [Court of Appeals Docket No. 43] (“**9th Circuit Fee Award**”), which rules as follows:

> **Appellee’s Motion for Attorneys’ Fees on Appeal**, Docket No. 41, and Motion to Transfer Motion for Attorneys’ Fees on Appeal, Docket No. 40, are **GRANTED**. Pursuant to Ninth Circuit Rule 39-1.8, this matter is **TRANSFERRE**D to the district court for a **determination of the appropriate amount** of fees to be awarded on appeal.

[Emphasis added]

Thereafter, Smart Capital filed a motion for reconsideration and clarification seeking to have the Ninth Circuit Court of Appeals reverse its award of fees, which motion was denied. On December 30, 2022, the Ninth Circuit Court of Appeals issued its ruling which states as follows:

> Filed text clerk order (Deputy Clerk: OC): **Appellants’ motion to reconsider and modify or clarify the November 3, 2022 order [Dkt. [44], is denied**. Appellee’s motion for judicial notice [46], is granted.

[Emphasis added]

In summary, the District Court had before it the following under submission for nearly two years: (a) the appeal of the Bankruptcy Court’s Fee Decision; (b) the District Court Fee Motion requesting supplemental fees of $122,189.80; and (c) the amount to be awarded in connection with the 9th Circuit Fee Award (which was requested in the amount of an additional $107,429. As stated earlier, the United States District Court entered its Fee Appeal Order on September 20, 2023, which resolved the Fee Appeals, as well as a related motion and pending motions for additional fees awarded in connection with separate appeals of the order of the Bankruptcy Court assuming a Lease.

The Fee Appeal Order affirmed the Bankruptcy Court’s award of attorney’s fees in the amount of $597,601.90 and awarded Hawkeye an additional $226,712.50 in attorneys’ fees as the prevailing party in the appeals of the Bankruptcy Court’s order approving assumption of the Lease with Smart Capital for an aggregate award of $824,314.40.

This did not deter Smart Capital. Unbelievably, on October 16, 2023 after losing the appeal, Smart Capital once again without warning or prior notice, surreptitiously served yet another Three-Day Notice (actually 3 separate notices this time), each of which is defective and each of which makes allegations which are patently false. The timing of these notices is not coincidental and done in flagrant bad faith and for the improper purpose of wrongfully

terminating the Lease; thereby achieving indirectly that which it has been unable to achieve directly for over a decade and in cavalier disregard of the warnings of the Ninth Circuit and Superior Court. In other words, the notices are a ruse concocted by Smart Capital to terminate the Lease which if unrestrained will result in irreparably harm to Hawkeye, WERM, hundreds of employees, creditors, investors, vendors, equity holders and literally thousands of patrons of Exchange LA. The irreparable harm will occur even though Hawkeye can once again demonstrate that the claimed non-monetary acts asserted by Smart Capital (without even citing to a Lease default by Hawkeye this time around) and the purported "nuisance" claimed in the recent notices are meritless and bogus. The reasons are explained below.

Apart from losing the litigation and ensuing appeals, Smart Capital also failed in its efforts to block the filing of the CUB renewal application and its efforts to circumvent the Superior Court's Order (which prompted the Superior Court to warn Smart Capital that it was coming dangerously close to crossing the line for contempt, see the background below). As a result, Hawkeye was able to file its renewal application. The timing of the three new Three-Day Notices served on Hawkeye and WERM is not coincidental. Despite that two of such notices are patently in bad faith and without merit (of which Smart Capital is keenly aware) and the third alleges erroneous facts and thus defective, Smart Capital is also acutely aware that Hawkeye is currently in the midst of the process for renewal of its CUB and that the renewal hearing will be heard shortly.

Pursuant to the landmark case of *In re Windmill Farms, Inc*., 841 F.2d 1467 (9th Cir. 1988) ("**Windmill Farms**") and its progeny and California Code of Civil Procedure § 1161, Hawkeye's right to possession will terminate once upon expiration of the three days set forth in its Three-Day Notices, all three of which declare a forfeiture. Hawkeye's CUB renewal hearing is imminent (because Smart Capital is contemporaneously causing the hearing to be expedited by simultaneously threatening the City of Los Angeles, see discussion below). It is not feasible for Hawkeye to obtain an anti-forfeiture ruling in its favor in time for the expedited CUB hearing. Thus, it is axiomatic that the right to possession under the Lease will remain in a state of termination at the time that the CUB renewal hearing is conducted, with the resulting risk that the CUB will likely not be renewed or deferred given the then current state of uncertainty over Hawkeye's right to possession. Thus, Exchange LA will be unable to operate. Even when Hawkeye and WERM are later successful, Hawkeye will need to reapply for the CUB which will take many years (as opposed to the shorter period for renewal). As a result, Smart Capital's will have finally achieved that which it has been trying to do unsuccessfully since it acquired the Property – terminate the Lease. Therefore, the irreparable harm will occur even if Hawkeye is later successful in once again proving that the claims in the Three-Day Notices are pure fabrication because it will take years for Hawkeye to obtain a new CUB and Exchange LA will be unable to operate and will be shuttered during that period.

Smart Capital's devious plan will result in irreparable harm to Hawkeye, WERM, hundreds of employees, creditors, investors, vendors, the equity holders and the public interest evidenced by the thousands of patrons of Exchange LA.

### A. Hawkeye Can Demonstrate a Likelihood of Prevailing on the Merits

All three notices are defective and fabricated.

1. *<u>The Alleged Nuisances Set Forth in Three-Day Notices No. 1 Could Not Have Taken Place on the Specified Dates</u>*

On October 16, 2023, an employee of Hawkeye was handed a Three-Day Notice attached as **<u>Exhibit 3</u>** ("**Three-Day Notices No. 1**"). Three-Day Notices No. 1 attempts to terminate Hawkeye's right to possession with claims of nuisance and use of the Premises for an unlawful purpose on the basis of alleged acts by various staff and patrons. The claims in Three-Day Notices No. 1 are defective because they lack specificity and fail to establish that Hawkeye or WERM had any knowledge thereof. The allegations are tantamount to trying to terminate the stadium lease of the Los Angeles Dodgers baseball team because unbeknownst to the Dodgers a fight occurred among two patrons in a parking lot. Moreover, most of the purported events could not have taken place on the dates alleged.

The chart below sets forth the contentions contained in Three-Day Notices No. 1. As can be seen, Exchange LA was closed and had no events on 8 out of the 12 days alleged. Moreover, neither Hawkeye nor WERM were aware of any such alleged activities and there is no evidentiary support presented in Three-Day Notices No. 1 that they were aware. It is also noteworthy that the first two items raised in Three-Day Notices No. 1, that purportedly occurred in 2020, were never raised at trial in the Bankruptcy Court; and, therefore, Smart Capital is precluded from raising them now.

| Date Alleged | Nuisance Alleged | Status of Exchange LA on Alleged Date |
|---|---|---|
| January 29, 2020 | Patron's sexual assault of another patron | **Wednesday/Exchange LA Closed/No Event** |
| July 21, 2020 | Staffs' sexual assault of patron | **Tuesday/Exchange LA Closed/No Event** |
| July 10, 2022 | Staffs' sexual assault of patron | **Sunday/Exchange LA Closed/No Event** |
| August 20,2022 | Staffs' physical battery of patron | Saturday/Bassjackers Event |
| November 13, 2022 | Patrons' use of drugs | **Sunday/Exchange LA Closed/No Event** |
| November 15, 2022 | Staffs' theft of patron's money | **Tuesday/Exchange LA Closed/No Event** |
| November 28, 2021[1] | Staffs' physical battery of patron | **Sunday/Exchange LA Closed/No Event** |
| February 25, 2023 | Patrons' use of drugs | Saturday/Skyline Afterparty Dom Dolla |

[1] Even assuming in *arguendo* that this date is a typographical error and was intended to be November 28, 2022, November 28, 2022 was a Monday and Exchange LA was closed and there was no event that day.

| | | |
|---|---|---|
| May 23, 2023 | Staffs' theft of patron's money | Tuesday/Exchange LA Closed/No Event |
| July 2, 2023 | Staffs' sale of drugs | RoRoll – Club night |
| July 23, 2023 | Patrons' use of drugs | **Sunday/Exchange LA Closed/No Event** |
| September 2, 2023 | Staffs' sale of drugs and patrons' use of drugs | Saturday – Factory 93 Anfisa Letyago |

2. *The Claim in Three-Day Notices No. 2 that the Lease was Forged is Meritless and Was Previously Settled*

On October 16, 2023, an employee of Hawkeye was handed a Three-Day Notice attached as **Exhibit 4** ("**Three-Day Notices No. 2**"). Three-Day Notices No. 2 attempts to terminate Hawkeye's right to possession with claims that the Lease was forged, and that alcohol is being served illegally on the premises.

Almost immediately after its acquisition of the Property, Michael Chang, thought his predecessor company, New Vision, attempted to terminate the Lease which forced Hawkeye into its first Chapter 11 filing. After numerous contested proceedings and substantial discovery, on July 29, 2014, New Vision and Hawkeye attended mediation with retired former Bankruptcy Judge, the Honorable Mitchel R. Goldberg ("**Mediation**"). Although New Vision and Hawkeye were not initially successful in settling their disputes at the Mediation, significant progress was made toward consensual resolution. Due to the progress made at the Mediation, the parties continued negotiations subsequent to the Mediation, which resulted in a global resolution, whereby Hawkeye's claims against the prior landlord and New Vision were allowed through offset and rent credit, and the 2009 Lease was assumed, subject to certain modifications to the 2009 Lease requested by New Vision. Mr. Chang reluctantly settled, but resented doing so.

The settlement was memorialized in a series of documents, including, (i) the First Amendment; (ii) the *Stipulation for Assumption of Nonresidential Real Property Lease and Sublease for the Premises located at 618 South Spring Street, Los Angeles, California*, filed on August 28, 2014 *[Prior Case Docket No. 233]* ("**New Vision Assumption Stipulation**"); (iii) the *Order (1) Approving Stipulation for Assumption of Nonresidential Real Property Lease and Sublease for Premises Located at 618 South Spring Street, Los Angeles, California; and, (2) Granting Omnibus Motion of Hawkeye Entertainment LLC, Debtor and Debtor-in-Possession for an Order Authorizing the Assumption of Non-Residential Real Property Lease and Sublease for Premises Located at 618 South Spring Street, Los Angeles*, entered by the Bankruptcy Court on September 4, 2014 *[First Case Docket No. 242]* ("**New Vision Assumption Order**"); (iv) *Settlement Agreement and Mutual Release of Claims*, dated August 19, 2014 *[First Case Docket No. 226]* ("**Global Settlement Agreement**"); and (v) the *Order Granting Motion of Hawkeye Entertainment, LLC, Debtor and Debtor in Possession, for an Order Approving Global Settlement between the Debtor and New Vision Horizon, LLC pursuant to FRBP 9019*, entered on September 12, 2014 *[First Case Docket No. 257]* ("**New Vision *Settlement Order***" and together with the First Amendment, the New Vision Assumption Stipulation, the New Vision

Assumption Order and the Global Settlement Agreement, the "**New Vision Settlement Documents**").

The First Amendment, which was executed by Michael Chang on behalf of New Vision pursuant to the New Vision Settlement Documents, provides in pertinent part as follows:

> Except as amended hereby the Lease shall remain in full force and effect, and as amended hereby the Lease is hereby restated and reaffirmed by Landlord and Tenant.

See, First Amendment, Section 3.

The First Amendment goes on to state as follows:

> Assignment and Subletting. Section 12.4 of the Lease is hereby deleted in its entirety. Landlord acknowledges and agrees that Tenant has sublet the Premises to WERM, and Landlord hereby approves of and accepts WERM as a sublease of the Premises.

See, First Amendment, Section 14.

Pursuant to the terms of the Global Settlement Agreement, Michael Chang, through New Vision, adopted the 2009 Lease dated July 17, 2009, as modified by the First Amendment entered into as part of the Global Settlement Agreement. In the trial in the Bankruptcy Court before Judge Tighe, Michael Chang, through Smart Capital, never raised a claim of forgery.

The New Vision Settlement Documents also contain mutual general releases of known and unknown claims. Smart Capital is the successor in interest to New Vision, and as such, there is no basis whatsoever for the claim that the 2009 Lease was forged. This issue, to the extent it ever was an issue, was fully adjudicated and resolved through the New Vision Settlement Documents (which included a mutual release of all claims related to the validity and enforceability of the Lease and Sublease), the First Amendment, and the Bankruptcy Court's approval of Hawkeye's assumption of the Lease and Sublease in Bankruptcy Case No. 1:13-bk-16307-MT. The Bankruptcy Court approved the New Vision Settlement Documents, including the mutual releases in the prior Chapter 11 Case by order entered on September 12, 2014, and confirmed the Chapter 11 plan of reorganization filed by Hawkeye by order entered June 20, 2016.

3. *The Claim in Three-Day Notices No. 3 that the CUB was Obtained by Fraud is Meritless and Released*

As with Smart Capital's erroneous claim that the Lease was forged, Smart Capital's claim that alcohol is being served illegally on the premises based on allegations of fraud in obtaining the original CUB in 2013 is without merit and it has no basis by which to raise such a claim based on, among other things, the mutual releases of claims in the New Vision Settlement Documents wherein the parties resolved all disputes between them and the 2009 Lease was reaffirmed and ratified.

Moreover, Smart Capital's August 5 2019 Default Letter and indeed almost the entirety of the five day trial before Judge Tighe centered on alleged defaults under the CUB. At no time

during the trial did Smart Capital contend that the CUB was obtained fraudulently. Moreover, the City of Los Angeles Planning Commission has never raised such issue. Inasmuch as the City issued the CUB, Smart Capital has no standing to raise it and it is certainly no basis for suddenly unilaterally asserting a forfeiture of the Lease. Smart Capital is raising it now after its failed attempts to block the filing of the application for renewal of the CUB.

**B. Smart Capital's Intentional Refusal to Cooperate with the Renewal of the CUB**

Smart Capital having failed to prevail in trial before the Bankruptcy Court and on appeal in its prior attempts to wrongfully terminate the Lease for its own economic benefit, Smart Capital next resorted to trying to interfere with Hawkeye's and WERM's business operations by, among other things, interfering with renewal of the CUB. Hawkeye/WERM uses the Property as permitted in the Lease, primarily for the operation of Exchange LA, a night club and entertainment venue. The sale of alcoholic beverages is an integral part of Hawkeye/WERM's operations and use of the Property and is acknowledged in the Lease both through the description of use and requirements for liquor liability related insurance. In order to sell alcoholic beverages at the Property, Hawkeye/WERM obtained a CUB permit from the City.

The CUB needed to be renewed and the application needed to be filed prior to March 12, 2023 to avoid expiration while the renewal process took place. In order to renew the CUB, Hawkeye/WERM needs to file an application with the City of Los Angeles. However, the CUB application must be signed by Smart Capital as the property owner unless the subject Lease is for the entire Property.[2] By signing and notarizing the CUB permit application, Smart Capital merely confirms that it has notice the application is being filed and that it understands that conditions may be placed on the permit, including the recording of the permit with the County Deed Records for the Property. For approximately one year, Hawkeye/WERM made multiple requests of Smart Capital to sign and notarize the CUB renewal application. But Smart Capital refused.

Eventually, Hawkeye/WERM was forced to commence another lawsuit against Mr. Chang and Smart Capital in California Superior Court. In connection with that lawsuit, Hawkeye/WERM was forced to file a motion to compel Mr. Chang to deliver the executed landlord's portion of the CUB renewal application in compliance with the Lease. On December 14, 2022, the Los Angeles Superior Court ordered Mr. Chang to sign and notarize the application and deliver it to Hawkeye/WERM. After a lengthy hearing, the Los Angeles Superior Court granted Hawkeye/WERM's Motion for Preliminary Injunction ("**Injunction Motion**") and ordered ("**Injunction Order**") as follows:

> Within one week of the issuance of this order Plaintiffs *[Hawkeye/WERM]* are ordered to post a bond in the amount of $100,000. Within one day if *[sic]* the bond being posted, Defendants *[Mr. Chang and Smart Capital et. al]* are **ordered to sign and notarize the CUB application**.

[2] Whether the Lease covers the entire Building is a debatable point because to the best of the Movant's knowledge and belief, the only space in the Building that can be legally occupied is covered by the Lease.

[Emphasis added]

In granting Hawkeye/WERM's request for injunctive relief, the Superior Court found, among other things, as follows:

> Defendants' *[Mr. Chang and Smart Capital et. al]* arguments are unavailing. . . . the Lease does state that the use of the Subject Property is solely for operation of a nightclub, restaurant and entertainment venue (Ex. 1-A-1, ¶ 1.17); that Plaintiffs are required to provide liquor liability insurance (Ex. 1-A-1, ¶1.18); and that Defendants shall not unreasonably interfere with the Plaintiffs' business operations. (Ex. 1-A-1, ¶ 2.2.)
>
> By refusing to sign the CUB application, Defendants deny Plaintiffs the opportunity to serve alcoholic beverages in the Subject Property, thereby interfering with Plaintiffs' ability to operate a nightclub and entertainment venue, as described in the Lease.

On December 16, 2022, Hawkeye/WERM posted the $100,000 bond with the Superior Court Clerk as required by the Injunction Order and gave notice to Mr. Chang and Smart Capital, through their lawyer, of such posting of the bond the same day.

On January 18, 2023, in contravention of the Superior Court's December 14, 2022 Order (which provided that Mr. Chang and Smart Capital do the following "within one day" of the bond posting), Mr. Chang/Smart Capital signed/notarized the CUB Renewal Application; but, in lieu of delivering it to Hawkeye, Mr. Chang/Smart Capital lodged it with the Superior Court Clerk under the unilateral assertion that such lodgment stays the use of the signed/notarized CUB Application.

Subsequently, Hawkeye/WERM was forced to file another motion with the Superior Court to procure release of the signed/notarized CUB Renewal Application, which the Superior Court granted on February 21, 2023, stating, among other things, as follows:

> The Court orders the signed CUB Application to be released to Plaintiffs within 24 hours of the issuance of this order.

On February 22, 2023, Hawkeye/WERM obtained the Chang-signed/notarized CUB Renewal Application and set an appointment for February 28, 2023 to submit it to the City of Los Angeles in an effort to prevent the expiration of Hawkeye/WERM's current CUB on March 12, 2023. Sometime prior to Hawkeye/WERM's submittal of the CUB Renewal Application to City Planning, Chang/Smart Capital attempted to poison City Planning with false statements, including, but not limited to, false allegations against Hawkeye/WERM's (and their officers) and the deceitful statement that Mr. Chang's notarized signature on the CUB Renewal Application (the same one that Chang/Smart Capital lodged with the Superior Court Clerk) was not authentic, so that City Planning would reject the CUB Renewal Application. Hawkeye/WERM believed that such action by Smart Capital/Mr. Chang is a willful violation of the Superior Court orders and was forced to file a motion seeking to hold Smart Capital/Mr. Chang in contempt.[3]

---

[3] The contempt motion has been continued a number of times due to the unavailability of the Superior Court Judge; most recently it was continued from May 1, 2023 to July 11, 2023.

Chang/Smart Capital's zealous interference continued and, on March 14, 2023 at 3:14 pm, Daniel Kim, an employee and agent of Chang/Smart Capital, "on behalf of Michael Chang," sent a false and defamatory email ("**Kim/Chang Email**") threatening the City and attempting to retract the Chang-signed/notarized CUB Renewal Application and obstruct the Superior Court's December 14, 2022 and February 21, 2023 Orders. City Planning subsequently forwarded to Hawkeye/WERM the Kim/Chang Email. The Kim/Chang Email falsely states, among other things:

- ***"The signature of the property owner on the application was signed under protest and <u>against Mr. Chang's approval</u>."***

- ***"It was discovered that Mr. Chang was given an incomplete CUB PA5 application so he is not even aware of the full effects and liabilities his signature implies"***

- ***"Mr. McAbian's operations are also currently in default of the Lease and have <u>been violating the existing CUB conditions</u> over the last 10 years. They are also in <u>violation of ABC laws</u> and we will be reporting them immediately."***

- ***"Mr. Adi McAbian has <u>lied to the Court</u> and is now attempting to <u>deceive the City</u> as well."***

- ***"There is a <u>criminal investigation into the Applicant</u>, Adi McAbian, William McAbian, WERM, Hawkeye and their operations Exchange LA <u>involving white collar crimes</u> which <u>also involve the CUB</u>. <u>If the City decides to continue the application process, we will consider it an act to assist the Applicant in performing criminal activities</u>."***

- ***"We will be notifying the following government agencies: <u>FBI-white collar crimes, LAPD, LAFD, LADBS, DOJ, Zoning Administration, ABC board, IRS</u>, and the public media."***

Apart from the fabrication, most of the issues that Smart Capital raises with the City are issues which Smart Capital already failed to prove at trial before the Bankruptcy Court, and on appeals before the U.S. District Court and the Ninth Circuit Court of Appeals. The interference by Smart Capital/Mr. Chang resulted in days of delay in getting the City to accept the CUB Renewal Application, also forcing Hawkeye/WERM to incur substantial additional attorneys and consultant fees and expenses. Hawkeye/WERM's CUB Renewal Application was finally accepted for filing by City Planning. However, Smart Capital/Mr. Chang threats and efforts to interfere continued undaunted as there are ongoing efforts by Smart Capital/Mr. Chang and Mr.

Danniel Kim to threaten the City into rejecting the application and interfere with the renewal process.

The foregoing is a brief summary of the disputes, which is amply supported by the record in each of the applicable proceedings and various published opinions. Although Hawkeye and WERM intend to continue to pursue litigation against Smart Capital and Mr. Chang in the Superior Court despite the filing of this Chapter 11, including pursuing an injunction against Smart Capital and Michael Chang as vexatious litigators, there was inadequate time to obtain a ruling in time to prevent the impairment to the right of the right to possession. Moreover, there is no state law equivalent to Bankruptcy Code § 365(b)(1)(A).

**Fill in this information to identify the case:**

Debtor name **Hawkeye Entertainment, LLC**

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number (if known) ____________

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

**12/15**

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____________
- ☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration ____________

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **10/18/2023**

*X* [signature]
Signature of individual signing on behalf of debtor

**Adi McAbian**
Printed name

**President of Saybian Gourmet, Inc., Member of Hawkeye Ent.**
Position or relationship to debtor

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Hawkeye Entertainment, LLC** |
| United States Bankruptcy Court for the: | **CENTRAL DISTRICT OF CALIFORNIA** |
| Case number (if known): | |

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Ahmed Al Goud<br>P O Box 10211<br>Dubai, UAE** | | | | | | **$350,000.00** |
| **Laurentiu Beada<br>10626 Valley Spring<br>Unit 204<br>North Hollywood, CA 91602** | | | | | | **$150,000.00** |
| **Rene Vardapour<br>943 Andover Drive<br>Burbank, CA 91504** | | | | | | **$70,000.00** |
| **Robert Guichard<br>1578 35th Avenue<br>San Francisco, CA 94122** | | | | | | **$48,000.00** |
| **SEG<br>100 West Broadway<br>Suite No 1130<br>Glendale, CA 91210** | | | | | | **$170,000.00** |
| **U S Small Business Administration<br>1545 Hawkins Blvd<br>Suite 202<br>El Paso, TX 79925** | | **Small Business State Loan** | | **$150,000.00** | **unknown** | **unknown** |

## STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LBR 1015-2
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1. A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

**None**

2. (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

**None**

3. (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)**SEE ATTACHED RIDER**

**Hawkeye Entertainment, LLC, Case No. 1:19-bk-12102-MT, United States Bankruptcy Court, Central District of California, San Fernando Valley Division, Chapter 11 filed August 21, 2019, Judge Maureen Tighe. Plan confirmed August 6, 2021.**

**Hawkeye Entertainment, LLC, Case No. 1:13-bk-16307-MT, United States Bankruptcy Court, Central District of California, San Fernando Valley Division, Chapter 11 filed September 30, 2013, Judge Maureen Tighe. Plan confirmed June 20, 2016.**

4. (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

**None**

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at ______________________, California.

Date: **October 18, 2023**

**Adi McAbian**
Signature of Debtor 1

______________________
Signature of Debtor 2

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Sandford L. Frey 117058**<br>**200 S. Los Robles Avenue, Suite 300**<br>**Pasadena, CA 91101**<br>**626-796-4000 Fax: 626-795-6321**<br>California State Bar Number: **117058 CA**<br>**sfrey@leechtishman.com**<br><br>☐ *Debtor(s) appearing without an attorney*<br>■ *Attorney for Debtor* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re: | |
|---|---|
| **Hawkeye Entertainment, LLC**<br><br>Debtor(s). | CASE NO.:<br>CHAPTER: **11**<br><br>**VERIFICATION OF MASTER MAILING LIST OF CREDITORS**<br>**[LBR 1007-1(a)]** |

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of **3** sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: October 18, 2023 ______________________ Signature of Debtor Adi McAbian

Date: ______________________ Signature of Debtor 2 (joint debtor) ) (if applicable)

Date: ______________________ Signature of Attorney for Debtor (if applicable)

Hawkeye Entertainment, LLC
14242 Ventura Boulevard #300
Sherman Oaks, CA 91423

Sandford L. Frey
Leech Tishman Fuscaldo & Lampl, LLC
200 S. Los Robles Avenue, Suite 300
Pasadena, CA 91101

Ahmed Al Goud
P O Box 10211
Dubai, UAE

Laurentiu Beada
10626 Valley Spring Unit 204
North Hollywood, CA 91602

New Vision Horizon LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Rene Vardapour
943 Andover Drive
Burbank, CA 91504

Robert Guichard
1578 35th Avenue
San Francisco, CA 94122

Saybian Gourmet Inc
14242 Ventura Blvd Suite 212
Sherman Oaks, CA 91423

SEG
100 West Broadway
Suite No 1130
Glendale, CA 91210

Smart Capital Investments I LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Smart Capital Investments II LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Smart Capital Investments III LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Smart Capital Investments IV LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Smart Capital Investments V LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Social Entertainment Group
17412 Ventura Boulevard
Suite 35
Encino, CA 91316

U S Small Business Administration
1545 Hawkins Blvd
Suite 202
El Paso, TX 79925

U S Small Business Administration
Office of the General Counsel
312 N Spring Street
5th Floor
Los Angeles, CA 90012

U S Small Business Administration
Office of Disaster Assistance
14925 Kingsport Rd
Fort Worth, TX 76155

WERM Investments LLC
14242 Ventura Blvd. Suite 212
Sherman Oaks, CA 91423

William McAbian
14242 Ventura Blvd Suite 210
Sherman Oaks, CA 91423