1  Alan G. Tippie (CA Bar No. 89587)
     alan.tippie@gmlaw.com
2  Steve Burnell (CA Bar No. 286557)
     steve.burnell@gmlaw.com
3  **GREENSPOON MARDER LLP**
   1875 Century Park East, Suite 1900
4  Los Angeles, CA 90067
   Telephone: 213.626.2311
5  Facsimile: 954.771.9264

6  Attorneys for Smart Capital Investments I,
   LLC, Smart Capital Investments II, LLC,
7  Smart Capital Investments III, LLC, Smart
   Capital Investments IV, LLC, and Smart
8  Capital Investments V, LLC

9               **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11              **SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| 12  In re | **Case No. 1:23-bk-11501-MB** |
| 13  HAWKEYE ENTERTAINMENT, LLC, | **Chapter 11** |
| 14       Debtor. | **MOTION TO DISMISS THE CHAPTER 11 CASE UNDER 11 U.S.C. § 1112(b)(1)** |
| 15 | [Memorandum of Points and Authorities, Declarations of Michael Chang and Steve Burnell, and Request for Judicial Notice Filed Herewith In Support Thereof] |
| 16 | |
| 17 | |
| 18 | [Appendix of Exhibits In Support Thereof Separately Filed] |
| 19 | |
| 20 | **Hearing Information:** |
| 21 | Date: January 9, 2024<br>Time: 1:30 p.m.<br>Place: Courtroom 303 |
| 22 |       21041 Burbank Boulevard<br>      Woodland Hills, CA 91367 |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

## MOTION

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, DEBTOR HAWKEYE ENTERTAINMENT, LLC, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

Smart Capital Investments I, LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC, Smart Capital Investments IV, LLC, and Smart Capital Investments V, LLC (collectively, "**Smart Capital**") hereby move the Court ("**Motion**") for an order dismissing the instant chapter 11 bankruptcy case ("**Third BK Case**") for "cause" under 11 U.S.C. § 1112(b)(1).  The instant case is the third voluntary chapter 11 case commenced in the last 10 years by Hawkeye Entertainment LLC, the debtor in possession herein ("**Debtor**").

"Bad faith" is one ground to dismiss a chapter 11 case under 11 U.S.C. § 1112(b)(1). Courts have routinely concluded a chapter 11 case is filed in bad faith when the filing arises from a two-party dispute that can be resolved outside the Bankruptcy Court's jurisdiction, the estate is effectively comprised of only one asset, the debtor does not have an ongoing business to reorganize, the debtor has no employees, it cannot sustain a plan of reorganization, is a repeat filer, and is using the case as a litigation tactic for forum shopping.  All these grounds exist in this case.

Rather than allow the state court - the proper court to exercise jurisdiction over unlawful detainer matters -  to rule on the three day notices served by Smart Capital, Debtor admits it filed the instant Third BK Case solely to thwart Smart Capitals' day in state court. This judicial admission is now conclusive and binding on the Debtor.   No other financial distress was mentioned by Debtor to prompt the instant filing.  Three voluntary filings in such a short span is not a coincidence; rather, it is a discernible pattern of Debtor's misuse of the Bankruptcy laws and the resulting automatic stay in bad faith to deter and harass Smart Capital's attempts to have the state court adjudicate what is simply a two-party, landlord-tenant dispute.

Debtor's bad faith is further exhibited by what appears to be Debtor "speaking out

1    both sides of its mouth."  On the one hand, Debtor contends the merits of Smart Capital's

2    allegations in the three-day notices are frivolous, but on the other hand, it cries to this Court

3    it can't risk the possibility these allegations are sustained in state court.    Such

4    gamesmanship by Debtor should not be tolerated by this Court.  Debtor cannot have it both

5    ways.  The proper court to adjudicate the merits of this two-party, landlord-tenant dispute

6    is the state court specialized to address these matters - the unlawful detainer court.

7        And contrary to the false dichotomy Debtor presents to this Court that it had no

8    choice but to file for bankruptcy protection or else forever lose its interests in the Lease,

9    Debtor would not be prejudiced if required to litigate state law issues in state court.  Smart

10   Capital is still required under state law to "prove" its case, with Debtor retaining all its rights

11   and remedies to defend the unlawful detainer complaint.  Debtor's hesitancy to litigate the

12   three-day notices in state court is belied by Debtor's election to actively litigate the very

13   same three-day notices, post-petition, in the state court complaint it initiated against Smart

14   Capital.

15       Other "badges of bad faith" that exist are: (1) Debtor essentially has one asset - the

16   subject lease with Smart Capital, (2) Debtor is a holding company with no employees, so

17   there's no ongoing business to reorganize, (3) the creditors in this case are minimal with

18   the largest amounts owed to insiders, (4) Debtor is using the automatic stay as a litigation

19   tactic to stop Smart Capital from pursuing its state court rights and remedies with respect

20   to the three-day notices while Debtor continues to actively litigate those very same issues

21   in a pending state court action, (5) Debtor is engaging in forum shopping by preventing

22   Smart Capital from pursuing its state law claims in state court, (6) Debtor is serial chapter

23   11 filer, with this being its third voluntary bankruptcy case filed during the last 10 years.

24   Like the "new debtor syndrome" in which an entity is specially created for the strategic

25   purpose of filing bankruptcy, Debtor here is a specially created holding company that is

26   being used strategically to file bankruptcies to invoke the automatic stay when convenient.

27   Such serial filings do not demonstrate a legitimate, "good faith" bankruptcy purpose.

28       This Motion is brought in accordance with 11 U.S.C. § 1112, Federal Rule of

1   Bankruptcy Procedure 1017 and 9014, and Local Bankruptcy Rule 9013-1, and is

2   supported by the attached Memorandum of Points and Authorities, the supporting

3   declarations of Michael Chang and Steve Burnell, the Requests for Judicial Notice, and the

4   separately filed Appendix of Exhibits.  The Motion is further supported by the record and

5   pleadings on file in the above-captioned bankruptcy case, all judicially noticeable facts, the

6   arguments and representations of counsel, and such other evidence as may be presented

7   prior to or at the hearing on the Motion.

8          **WHEREFORE**, Smart Capital respectfully requests that the Court enter an order:

9          1.     Granting the Motion;

10         2.     Dismissing the instant bankruptcy case for "cause" under 11 U.S.C. § 1112;

11   and

12         3.     Awarding such other relief the Court deems proper and just.

13   DATED:  December 19, 2023          Respectfully submitted,

14                                      **GREENSPOON MARDER LLP**

15

16

17                                      By:    _/s/ Steve Burnell_____
                                               Alan G. Tippie
18                                             Steve Burnell
                                               Attorneys for Smart Capital
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. RELEVANT BACKGROUND ............................................................................... 1

    A.    The Original Lease ................................................................................ 1

    B.    Debtor's First Bankruptcy Case in 2013 ............................................. 1

    C.    Debtor's Second Bankruptcy Case in 2019 ........................................ 3

    D.    Debtor's Adversary Proceeding Is Dismissed .................................... 5

    E.    Smart Capital Discovers Adi McAbian's Fraud Related To Renewal
          Of WERM's CUB ................................................................................ 6

    F.    The Currently Pending State Court Action .......................................... 7

    G.    The 3-Day Notices .............................................................................. 8

    H.    Debtor's Third Bankruptcy Case in 2023 ............................................ 8

    I.    Debtor Continues to Litigate the 3-Day Notices Post-Petition,
          Thereby Using the Bankruptcy Code For Tactical Advantage ..................... 9

    J.    Smart Capital Has Not Received Rents For Approximately Eight Out
          Of The Last 14 Years ........................................................................ 10

II. THE COURT HAS WIDE DISCRETION IN DETERMINING BAD FAITH
    "CAUSE" FOR DISMISSAL UNDER 11 U.S.C. § 1112(b)(1) .............................. 10

III. THE ST. PAUL FACTORS ESTABLISH "BAD FAITH" CAUSE FOR
    DISMISSAL UNDER 11 U.S.C. § 1112(b) ............................................. 13

    A.    The Third BK Case Is Essentially A Two-Party Dispute Capable Of
          Prompt Adjudication In State Court ............................................................. 13

          1.    Debor Admitted the Third BK Case Is a Two-Party Dispute ........... 13

          2.    The State Court Can Adjudicate The 3-Day Notices Where
               Debtor Will Suffer No Prejudice Because Its Maintains Its
               Rights And Remedies ........................................................ 14

    B.    Debtor Essentially Has Only One Asset ............................................ 18

    C.    Debtor Has No Ongoing Business To Reorganize ............................. 19

    D.    Debtor's Unsecured Creditors Are Minimal and Insiders ................... 19

    E.    Debtor Has Made No Progress On Either of Its Two Prior Plans of
          Reorganization ................................................................................. 19

IV. ADDITIONAL GROUNDS EXIST FOR FINDING "BAD FAITH" CAUSE TO
    DISMISS THIS THIRD BK CASE ....................................................... 20

A.    Debtor Is Using the Third BK Case A Bad Faith Litigation Tactic ............... 20

B.    Debtor Is Using The Third BK Case For Forum Shopping ........................ 22

C.    Debtor's Bad Faith Is Evident By Its Serial Repeat Filing & Having
Two Active Bankruptcy Cases Pending At The Same Time ...................... 22

V. DISMISSAL OF THE THIRD BK CASE IS IN THE BEST INTEREST OF THE
ESTATE ............................................................................................................. 23

VI. CONCLUSION ...................................................................................................... 24

REQUEST FOR JUDICIAL NOTICE .......................................................................... 25

DECLARATION OF MICHAEL S. CHANG .................................................................. 27

DECLARATION OF STEVE BURNELL ....................................................................... 39

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

American Title Ins. Co. v. Lacelaw Corp.,
  861 F.2d 224 (9th Cir. 1988) ...................................................................... 14

Bedi v. McMullan,
  160 Cal. App. 3d 272 (Ct. App. 1984) ....................................................... 17

Borsuk v. App. Div. of Superior Ct.,
  242 Cal. App. 4th 607 (2015) ..................................................................... 16

Four Seas Inv. Corp. v. Int'l Hotel Tenants' Assn.,
  81 Cal. App. 3d 604 (Ct. App. 1978) ......................................................... 17

Frazier v. Superior Ct. of Los Angeles Cnty.,
  86 Cal. App. 5th Supp. 1 (Cal. App. Dep't Super. Ct. 2022)................... 15

Glass v. Najafi,
  78 Cal. App. 4th 45 (2000) .......................................................................... 17

In re Arnold,
  806 F.2d 937 (9th Cir. 1986) ...................................................................... 11

In re Consolidated Pioneer Mortg. Entities,
  248 B.R. 368 (B.A.P. 9th Cir. 2000) ........................................................... 11

In re Corona Care Convalescent Corp.,
  527 B.R. 379 (Bankr. C.D. Cal. 2015) ........................................................ 11

In re Jartran, Inc.,
  886 F.2d 859 (7th Cir. 1989) ................................................................. 22, 23

In re Mahmood,
  2017 WL 1032569, at *4 (B.A.P. 9th Cir. Mar. 17, 2017) ........... 12, 13, 18

In re Marsch,
  36 F.3d 825 (9th Cir. 1994) .................................................................. 11, 12

In re Marshall,
  298 B.R. 670 (Bankr. C.D. Cal. 2003) .................................................. 11, 12

In re Moore,
  583 B.R. 507 (C.D. Cal. 2018) ............................................................. 12, 20

In re Oasis at Wild Horse Ranch, LLC,
  2011 WL 4502102, at *10 (B.A.P. 9th Cir. Aug. 26, 2011) ...................... 12

In re Paris,
  568 B.R. 810 (Bankr. C.D. Cal. 2017) ........................................................ 14

In re Silberkraus,
    253 B.R. 890 (Bankr. C.D. Cal. 2000) ................................................................22

In re St. Paul Self Storage Ltd. P'ship,
    185 B.R. 580 (B.A.P. 9th Cir. 1995) ......................................................... passim

In re Studio Five Clothing Stores Inc.,
    192 B.R. 998 (Bankr. C.D. Cal. 1996) ..............................................................22

In re Sullivan,
    522 B.R. 604 (B.A.P. 9th Cir. 2014) ......................................................... passim

In re Windmill Farms, Inc.,
    841 F.2d 1467 (9th Cir. 1988) ...........................................15, 16, 17, 18

Matter of Little Creek Dev. Co.,
    779 F.2d 1068 (5th Cir. 1986) ...........................................................................12

Moore v. U.S. Trustee for Region 16,
    749 Fed.Appx. 621 (9th Cir. 2019) ....................................................................12

Stancil v. Superior Ct.,
    11 Cal. 5th 381 (2021) .......................................................................................15

**STATUTES**

11 U.S.C. § 1112(b) .........................................................................11, 12, 23, 24

11 U.S.C. § 1112(b)(1) ....................................................................10, 11, 13, 18

11 U.S.C. § 1112(b)(4) ..................................................................................... 10

11 U.S.C. § 365(a) ............................................................................................ 16

CCP § 1159 ....................................................................................................... 17

CCP § 1160 ....................................................................................................... 17

CCP § 1161 ....................................................................................................... 15

CCP § 1161(2) ................................................................................................... 16

CCP § 1161(4) ................................................................................................... 16

CCP § 1174 ....................................................................................................... 17

CCP § 1179 ....................................................................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### RELEVANT BACKGROUND

#### A.    The Original Lease

In 2009, Debtor and an unrelated third-party landlord entered into that certain Lease Agreement dated July 17, 2009 ("**Lease Agreement**") to lease the first 4 floors ("**Leased Premises**") of real property located at 618 South Spring Street, Los Angeles, California ("**Property**").   The Property consists of a twelve-story building commonly known as the Pacific Stock Exchange Building.  Debtor subleased the Leased Premises ("**Sublease**") to W.E.R.M. Investments, LLC ("**WERM**") who operates a dance club and event venue on the Leased Premises, known as "Exchange LA."  The Lease Agreement was later amended via three written "Amendments to Lease" respectively dated August 5, 2009, August 17, 2009, and September 16, 2009 ("**Alleged Amendments**").  New Vision Horizon, LLC ("**New Vision**"), via foreclosure, subsequently acquired the interests of the prior unrelated landlord under the Lease Agreement and Alleged Amendments.  New Vision thereby became the successor landlord under the Lease Agreement.

#### B.    Debtor's First Bankruptcy Case in 2013

Landlord-tenant disputes arose between Debtor and New Vision regarding the lease terms.  Debtor alleged that New Vision, in part, breached the Lease Agreement and Alleged Amendments by failing to pay for certain improvements to the Leased Premises.  Based on these alleged defaults, Debtor withheld rents from approximately 2009 to 2013, totaling $945,224.78.  Debtor then filed two lawsuits against New Vision in Los Angeles Superior Court, case nos. BC464610 (filed in 2011) and BC 515124 (filed in 2013), while continuing to withholds rents.  Upon receiving New Vision's Notice of Default dated September 20, 2013 ("**2013 Default Letter**") for failure to pay $945,224.78 of rents, Debtor filed its first voluntary bankruptcy case.  See 2013 Default Letter attached to the separately filed *Appendix of Exhibits In Support Of Motion To Dismiss Chapter 11 Case Under 11 U.S.C. § 1112(b)(1)* ("**Appendix**") as **Exhibit A**.

On September 30, 2013, Debtor filed its first voluntary chapter 11 petition in this Court, giving rise to *In re Hawkeye Entertainment, LLC*, case no. 1:13-bk-16307-MT ("**First BK Case**").  The Court approved a global settlement resolving the then-pending disputes related to the Lease Agreement between Debtor and New Vision.[1]  As part of the settlement, in relevant part, the Alleged Amendments to the Lease Agreement were voided, and Debtor and New Vision entered into the First Amendment to the Lease Agreement dated August 19, 2014 ("**First Amendment**") (Lease Agreement and First Amendment, collectively, "**Lease**").  The Lease is attached to the Appendix as **Exhibit B**.

Debtor's schedules in the First BK Case reveal no meaningful assets other than the Lease, no secured or priority unsecured debt, and the following general unsecured creditors (excluding New Vision):

| Creditor | Basis | Claim Amount |
|---|---|---|
| Ahmed Al-Goud | Loan | $300,000.00 |
| E & A Mechanical Inc. | Trade Debt | $120,000.00 |
| G & A Fire Protection Corp | Trade Debt | $23,000.00 |
| Jasper Watt | Trade Debt | $185,000.00 |
| Laurentiu Badea | Loan | $175,000.00 |
| McKenna Long & Aldridge | Legal Services | $75,000.00 |
| Rene Vardapour | Loan | $145,000.00 |
| Robert Guichard | Consulting Services | $27,000.00 |
| Saybian Gourmet Inc. | Loan Capital Advance | Unknown |

Debtor's schedules filed in the First BK Case are attached to the Appendix as collective **Exhibit C**, bates stamp p. 54-62.[2]  Saybian Gourmet Inc. (highlighted in gold) is an insider of Debtor - with Mr. Adi McAbian ("**Mr. McAbian**") being the principal of both entities.  See Ex. C, bates stamp p. 47-50, 72.  So, as far back as 2009, Debtor has been nothing more than a holding company for the Lease.  See Ex. C, bates stamp p. 71, Sec. 18.

By confirmation order entered on June 20, 2016, Debtor's plan of reorganization

---

[1] First BK Case docket no. 257, entered Sep. 12, 2014.

[2] First BK Case docket no. 25, filed Oct. 29, 2013.

("**First BK Plan**") attached as Exhibit D to its solicitation package ("**First BK Solicitation Package**") was confirmed.   Debtor's First BK Solicitation Package is attached to the Appendix as **Exhibit D**.[3]

Under Debtor's First BK Plan, after the effective date and payment of administrative and priority claims, general unsecured creditors classified in Class 1 were to receive deferred monthly payments equal to the present value of their claims.  Class 2 consisted of the general unsecured creditors receiving equity interests in WERM in exchange for their claims.  Based on the Ballot Analysis filed by Debtor, creditors Jasper Watt and Rene Vardapour elected treatment under Class 2 and received equity interests in WERM upon the effective date of the First BK Plan.  See Debtor's Analysis of Ballots, a copy of which is attached to the Appendix as **Exhibit E**, bates stamp p. 370-71; Ex. D, bates stamp p. 341-42 (First BK Plan).[4]

Debtor admitted in its disclosure statement that it filed the First BK Case only as a result of New Vision serving Debtor with a five-day notice and request for forfeiture of the Lease.  Debtor mentioned no other financial hardship prompting or requiring the filing of the First BK Case.  See Ex. D, bates stamp p. 124.

The First BK Case was closed and a final decree was issued on April 28, 2017.[5]

**C.      Debtor's Second Bankruptcy Case in 2019**

On August 21, 2023, Debtor filed its second voluntary chapter 11 petition in this Court, giving rise to In re Hawkeye Entertainment, LLC, case no. 1:19-bk-MT ("**Second BK Case**").

Debtor, simply a holding company, again scheduled no meaningful assets other than the Lease, no secured or priority debt, and the following general unsecured creditors (excluding Smart Capital):

---

[3] First BK Case docket no. 343, filed Jan. 5, 2016.

[4] First BK Case docket no. 351, filed Feb. 25, 2016.

[5] First BK Case docket no. 395.

| Creditor | Basis | Claim Amount |
|---|---|---|
| Ahmed Al-Goud | | $300,000.00 |
| Dentons US LLP | | $114,197.00 |
| Laurentiu Beada | | $175,000.00 |
| Rene Vardapour | | $145,000.00 |
| Robert Guichard | | $27,000.00 |
| Saybian Gourmet Inc. | | $1,587,919.23 |
| Social Entertainment Group | | $265,000.00 |

Debtor's schedules filed in the Second BK Case are attached to the Appendix as collective **Exhibit F**, bates stamp p. 377-83.[6]

While no basis for these general unsecured claims was identified by Debtor, the following observations are clear: (1) most of the general unsecured debt was held by Debtor's insiders (highlighted in gold) - Saybian and Social Entertainment, (2) the same four creditors from the First BK Case (highlighted in grey) were scheduled - Al Goud, Beada, Vardapour, and Guichard, (3) little to no reorganization progress appears to have been made since the First BK Case because the scheduled claim amounts for these four creditors are the same, and (4) it is unclear why Debtor scheduled Vardapour as a creditor since Vardapour accepted equity interests in WERM in exchange for Vardapour's $145,000 claim under the confirmed First BK Plan. Cf Ex. C, bates stamp p. 60-62, and Ex. F, bates stamp p. 382-81; See most recent CA Statement of Information for Social Entertainment Group filed Jan. 31, 2023 attached to the Appendix as **Exhibit V**.

Although Debtor had no employees and no ongoing business operations in that Debtor is simply a holding company, Debtor obtained a Court-approved loan from the Small Business Administration in the amount of $150,000.00 ("**SBA Loan**"), secured by all of Debtor's assets.[7]

By confirmation order entered on August 26, 2021, Debtor's amended plan of

---

[6] Second BK Case docket no. 15, filed Sep. 4, 2019.

[7] Second BK Case docket no. 183, entered Sep. 23, 2020.

1  reorganization ("**Second BK Plan**") attached as Exhibit 1 to its solicitation package

2  ("**Second BK Solicitation Package**") was confirmed.  The Second BK Solicitation

3  Package is attached to the Appendix as **Exhibit G**.[8]

4       Similar to the First BK Plan, under Debtor's Second BK Plan, after the effective date

5  and payment of administrative and priority claims, general unsecured creditors in Class 2

6  were to receive deferred annual payments equal to the present value of their claims.  See

7  Ex. G, bates stamp p. 452-53 (Second disclosure statement), 507 (Second BK Plan).

8       No mention is made in the Second BK Plan why Debtor has not objected to Rene

9  Vardapour's claim in the amount of $145,000 on grounds his claim was extinguished under

10  the First BK Plan in exchange for equity in WERM.

11       Debtor admitted in its second disclosure statement that it filed the First BK Case

12  only in response to Smart Capital serving Debtor with a three-day notice and request for

13  forfeiture of the Lease.  It mentioned no other financial hardship prompting or requiring the

14  filing of the Second BK Case.  See Ex. G, bates stamp p. 440-41.

15       The Second BK Case remains open and pending.

16  **D.    Debtor's Adversary Proceeding Is Dismissed**

17       Approximately one and a half months after the Second BK Plan was confirmed,

18  Debtor initiated an adversary proceeding against Smart Capital and its principal, Mr.

19  Michael S. Chang ("**Mr. Chang**"), giving rise to *Hawkeye Entertainment, et al. v. Michael*

20  *Chang, et al*, adversary no. 1:21-ap-01064-MT ("**Adversary Proceeding**").  In its complaint

21  ("**AP Complaint**"), Debtor alleged various claims for relief arising from several post-

22  petition, landlord-tenant disputes.  The AP Complaint, without exhibits, is attached to the

23  Appendix as **Exhibit H**.[9]

24       Smart Capital successfully moved to dismiss the AP Complaint due to lack of subject

25  matter of jurisdiction and on the grounds of abstention.  In relevant part, Smart Capital

26

27  _____
   [8] Second BK Case docket no. 288, filed Feb. 19, 2021.

28  [9] Adversary Proceeding docket no. 1, filed Sep. 20, 2021.

1    argued these landlord-tenant disputes should be adjudicated by the state court.  The

2    Bankruptcy Court, in its ruling, noted the following:

3        Now that the Assumption Motion is over and the Plan has confirmed, this
4        Court no longer has a reason to preside over what is essentially a landlord
         tenant issue.  Finally, there are concerns this maybe forum shopping and
5        the Defendants have indicated that they will request a jury.  Even if the Court
         had subject matter jurisdiction, abstention would be appropriate here.  Even
6        though this Court is familiar with all the facts surrounding these parties,
         there really is no reason for this case to be in the bankruptcy court.

7

8    <u>See</u> dismissal order and notice of ruling (collectively, "**AP Dismissal Ruling**"), a copy of

9    which is attached to the Appendix as collective **Exhibit I**, bates stamp p. 580.[10]

10       **E.     Smart Capital Discovers Adi McAbian's Fraud Related To Renewal Of**

11              **WERM's CUB**

12       The conditional use permit for the on-site sale of alcoholic beverages on the

13   Premises is in WERM's name ("**CUB**").   <u>See</u> WERM's application for the CUB in 2012

14   ("**CUB PA4**") submitted to the Los Angeles City Planning Department, a copy of which is

15   attached to the Appendix as **Exhibit J**.  The CUB PA4 was submitted by Mr. McAbian in

16   his individual capacity seeking, in part, to increase the number of events that could be held

17   at the Property.  <u>See id.</u>, bates stamp p. 583.

18       Mr. McAbian, under penalty of perjury, executed the last page of CUB PA4 declaring

19   he is either the owner of the Property, leases the entire site, or is the authorized agent or

20   officer of the Property owner.  These statements were unambiguously false. Mr. McAbian

21   does not own the Property, he does not lease the entire site (instead Debtor leases a

22   portion of the Property, the Leased Premises), and he is not the authorized agent or

23   corporate officer of the Property's owner.  <u>See id.</u>, bates stamp p. 583; Decl. of Mr. Chang

24   attached hereto, ¶¶ 24-32.

25       In the summer of 2022, Debtor and WERM approached Smart Capital to execute its

26   CUB renewal application ("**CUB PA5**").  Smart Capital found this odd since Debtor and

27   _____

28   [10] Adversary Proceeding docket nos. 24 and 30, entered Nov. 10, 2021 and Nov. 22, 2021,
     respectively.

WERM had not previously approached Smart Capital for its signature for CUB PA4. This request prompted Smart Capital to begin its investigation into CUB PA5 and, by reason thereof, CUB PA4.

Smart Capital, engaged with several Los Angeles City officials, including but not limited to LA City Planning, LA City BEST unit, the City of Los Angeles Department of Building & Safety, and a third-party CUB expert, and discovered the following:

    1.    Mr. McAbian's false declarations under penalty of perjury in CUB PA4 as discussed above;

    2.    CUB PA5 can only be renewed if CUB PA4 is valid;

    3.    CUB PA5 presented by Debtor and WERM to Smart Capital to sign in 2022 was incomplete and missing vital pages;

    4.    CUB PA4 Master Covenant, recorded in LA County, was also fraudulently signed and notarized by Adi McAbian. The Master Covenant is legally required to only be signed by the building's owner. The fraudulent Master Covenant was then presented to LA City Planning to effectuate the already fraudulent CUB PA4; and

    5.    The CUB renewal prior to CUB PA4 and WERM's liquor licenses were similarly fraudulently obtained by Mr. McAbian and WERM.

<u>See</u> Decl. of M. Chang, ¶¶ 24-32; WERM's License Information from California Dept. of Alcoholic Beverage Control, a copy of which is attached to the Appendix as **Exhibit K**.[11] Accordingly, Smart Capital continues to oppose WERM's renewal of CUB PA5.

**F.**    **The Currently Pending State Court Action**

In a clear example of an ability to protect its rights under the Lease outside of Bankruptcy Court, on August 29, 2022, Debtor and WERM filed a complaint against Smart Capital, Mr. Chang, and a related entity in Los Angeles Superior Court, giving rise to

---

[11] Website accessed on Nov. 28, 2023, at https://www.abc.ca.gov/licensing/license-lookup/single-license/?RPTTYPE=15&DBANAME=Exchange+LA.

*Hawkeye Entertainment, LLC, et al. v. Michael Chang, et al.*, case no. 22STCV28003 ("**State Court Action**").   In this complaint ("**State Court Complaint**"), Debtor alleges various landlord-tenant disputes, including Smart Capital's opposition to WERM's renewal of CUB PA5.  Debtor and WERM seek damages in the amount of $104 Million.  See State Court Complaint, without exhibits, a copy of which is attached to the Appendix as **Exhibit L**.  Smart Capital and its co-defendants deny these meritless allegations, and the State Court Action remains pending.

### G.    The 3-Day Notices

During Smart Capital's investigation into WERM's renewal of CUB PA5, Smart Capital discovered serious operational violations and criminal activities occurred on the Leased Premises in violation of the CUB.  Smart Capital was informed by City Planning and LADBS that Smart Capital, as owner of the Property, may also be liable for CUB violations.  Rightfully concerned, on October 16, 2023, Smart Capital served three 3-Day Notices to Quit (collectively, "**3-Day Notices**") on Debtor and WERM based the ongoing unlawful activity occurring on the Leased Premises, WERM's invalid CUB based on the fraud that occurred during the renewal of CUB PA4, and WERM's invalid liquor licenses based on similar fraudulent activity during the application process.  See the 3-Day Notices attached to the Appendix as collective **Exhibit M**.

### H.    Debtor's Third Bankruptcy Case in 2023

Two days after receiving the 3-Day Notices, on October 18, 2023, Debtor filed its third voluntary chapter 11 petition, giving rise to the instant bankruptcy case ("**Third  BK Case**").  Debtor's third petition and supporting documents (collectively, "**2023 Petition**") are attached to the Appendix as collective **Exhibit N**.[12]

Debtor, a holding company, scheduled no meaningful assets other than the Lease, secured debt in the form of the SBA Loan only, no priority debt, and the following general unsecured creditors (excluding Smart Capital):

---

[12] Third BK Case docket no. 1, filed Oct. 18, 2023.

| Creditor | Basis | Claim Amount |
|---|---|---|
| Ahmed Al-Goud | | $350,000.00 |
| Laurentiu Beada | | $150,000.00 |
| Rene Vardapour | | $70,000.00 |
| Robert Guichard | | $48,000.00 |
| Saybian Gourmet Inc. | | $1,587,919.23 |
| SEG | | $170,000.00 |
| Social Entertainment Group | | $265,000.00 |

Debtor's schedules filed in the Third BK Case ("**2023 Schedules**") are attached to the Appendix as collective **Exhibit O**, bates stamp p. 645-52.[13]

The insider claims (highlighted in gold) again represent the vast majority of the alleged general unsecured debt.  The remaining four general unsecured creditors are the same creditors from the last two bankruptcy cases - including  Vardapour who, based on the First BK Case, should be considered an insider of Debtor as an equity owner in WERM. Debtor again failed to disclose any basis for these claims in the schedules.  Cf Ex. C, bates stamp p. 60-62, Ex. F, bates stamp p. 382-84, Ex. O, bates stamp p. 651-52.

Like its prior two cases, Debtor admits it filed the Third BK Case simply in response to Debtor's receipt of the 3-Day Notices.  See Ex. N, bates stamp p. 627; Debtor's motion to approve stipulation for use of cash collateral is attached to the Appendix as **Exhibit P**, bates stamp p. 679, ¶ 6 (Decl. of Mr. McAbian attached thereto).[14]  No financial distress is described by Debtor as the cause for the instant bankruptcy filing.  See id.

The Third BK Case remains open and pending, along with Debtor's Second BK Case.

I.    **Debtor Continues to Litigate the 3-Day Notices Post-Petition, Thereby Using the Bankruptcy Code For Tactical Advantage**

While filing the Third BK Case to stop Smart Capital from pursuing the 3-Day

---

[13] Third BK Case docket no. 16, filed Nov. 1, 2023.

[14] Third BK Case docket no. 20, filed Nov. 7, 2023.

1  Notices, in contradictory fashion, Debtor continues to litigate the 3-Day Notices within the

2  context of the State Court Action.  On October 19, 2023, just one day after the Third BK

3  Case was filed, Debtor filed an *ex parte* application in the State Court Action ("**Ex Parte**

4  **Application**") seeking a preliminary injunction against Smart Capital relying on, in part, the

5  3-Day Notices.  <u>See</u> Ex Parte Application attached to the Appendix as **<u>Exhibit Q</u>**.  And

6  discovery related to the 3-Day Notices is ongoing in the State Court Action.  <u>See</u> Requests

7  for Admissions dated Oct. 20, 2023 propounded on Smart Capital attached to the Appendix

8  as **<u>Exhibit R</u>**.  Smart Capital and its co-defendants, however, have been prohibited from

9  filing their counterclaims against Debtor due to the automatic stay.

10           **J.**       **<u>Smart Capital Has Not Received Rents For Approximately Eight Out Of</u>**

11                    **<u>The Last 14 Years</u>**

12           Debtor has withheld approximately $2.0 Million in rents during eight out of the last

13  fourteen years, by unilaterally offsetting rents totaling almost $1 Million prior to the First BK

14  Case, and offsetting additional rent against fee orders awarded to Debtor totaling almost

15  $1.0 Million during the Second BK Case.  These fee awards have now been fully paid by

16  Smart Capital through Debtor's impounding of rents.  There is currently one outstanding

17  fee motion pending before the U.S. District Court, and Smart Capital's appeal to the U.S.

18  Circuit Court of Appeal for the Ninth Circuit ("**Ninth Circuit**") of the prior fee awards remains

19  pending.

20

21                                                    **II.**

22           **<u>THE COURT HAS WIDE DISCRETION IN DETERMINING BAD FAITH "CAUSE"</u>**

23                    **<u>FOR DISMISSAL UNDER 11 U.S.C. § 1112(b)(1)</u>**

24           Pursuant to 11 U.S.C. § 1112(b)(1), "on request of a party in interest, and after

25  notice and a hearing, the court shall convert a case under this chapter to a case under

26  chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors

27  and the estate, for cause[.]"  Section 1112(b)(4) lists a non-exhaustive list of factors that

28

constitute "cause."[15]   Courts can consider other factors as they arise, however, and use their equitable powers to reach an appropriate result on a case-by-case basis.   In re Consolidated Pioneer Mortg. Entities, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) (citation omitted).  Lack of good faith in filing a chapter 11 petition establishes "cause" for dismissal or conversion under Section 1112(b).   In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994) (affirming dismissal of chapter 11 case filed by state court judgment debtor solely to avoid posting appeal bond when it had sufficient assets to satisfy the judgment as a "bad faith" filing).  The party seeking dismissal under 11 U.S.C. § 1112(b)(1) has the burden of proving cause by a preponderance of the evidence.   In re Corona Care Convalescent Corp., 527 B.R. 379, 385 (Bankr. C.D. Cal. 2015).  A "bankruptcy court's decision to dismiss a case as a 'bad faith' filing" is reviewed for abuse of discretion.   Marsch, 36 F.3d at 828.

"The existence of good faith depends on an amalgam of factors and not upon a specific fact… The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis."   Marsch, 36 F.3d at 828 (citations omitted).  The good faith inquiry under Section 1112(b) "is essentially directed to two questions: (1) whether the debtor is trying to abuse the bankruptcy process and invoke the automatic stay for improper purposes; and (2) whether the debtor is really in need of reorganization."   In re Marshall, 298 B.R. 670, 681 (Bankr. C.D. Cal. 2003) (citing In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)).

To determine whether a chapter 11 petition was filed in bad faith, courts may consider the following circumstantial factors:

> (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two party dispute capable of prompt adjudication in state court.

---

[15] Unless otherwise stated, all references to "section(s)" are to 11 U.S.C. § 101 et seq., and all references to "rule(s)" are to the Federal Rules of Bankruptcy Procedure, 1001 et seq.

1    In re St. Paul Self Storage Ltd. P'ship, 185 B.R. 580, 582–83 (B.A.P. 9th Cir. 1995) (internal

2    citations omitted) (collectively, "**St. Paul Factor(s)**").  "Generally speaking, when factors

3    such as these indicate that a debtor is unreasonably deterring or harassing creditors rather

4    than attempting a speedy and feasible reorganization, the court may conclude that the

5    petition has been filed in bad faith and dismiss it."  In re Mahmood, 2017 WL 1032569, at

6    *4 (B.A.P. 9th Cir. Mar. 17, 2017).  These factors are similar to the Little Creek factors:

7            Findings of lack of good faith in proceedings based on… 1112(b) have been
             predicated on certain recurring but non-exclusive patterns, and they are
8            based on a conglomerate of factors rather than on any single datum.
             Several, but not all, of the following conditions usually exist.  The debtor has
9            one asset… There are generally no employees except for the principals, little
             or no cash flow, and no available sources of income to sustain a plan of
10           reorganization… Typically, there are only a few, if any, unsecured creditors
             whose claims are relatively small. The property has usually been posted for
11           foreclosure because of arrearages on the debt and the debtor has been
             unsuccessful in defending actions against the foreclosure in state court.
12

13   Matter of Little Creek Dev. Co., 779 F.2d 1068, 1072–73 (5th Cir. 1986) (internal citations

14   omitted).  "In all cases, the analysis is based on the totality of the circumstances, and not

15   a bright line rule."  Marshall, 298 B.R. at 681.

16           "A chapter 11 reorganization case has been filed in bad faith when it is an apparent

17   two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction."  In

18   re Oasis at Wild Horse Ranch, LLC, 2011 WL 4502102, at *10 (B.A.P. 9th Cir. Aug. 26,

19   2011).  "A bankruptcy case is filed in bad faith if it was brought for 'tactical reasons

20   unrelated to reorganization."  In re Moore, 583 B.R. 507, 512 (C.D. Cal. 2018), aff'd sub

21   nom., Moore v. U.S. Trustee for Region 16, 749 Fed.Appx. 621 (9th Cir. 2019) (citing

22   Marsch, 36 F.3d at 828).  "As articulated by the Ninth Circuit… when assessing a debtor's

23   good faith the bankruptcy court 'should examine the debtor's financial status and

24   motives…'"  In re Sullivan, 522 B.R. 604, 615 (B.A.P. 9th Cir. 2014) (citing Arnold, 806 F.2d

25   at 939).

26           "The bankruptcy court did not have to consider all the factors; nor did it have to

27   weigh them equally. A bankruptcy court may find one factor dispositive. Indeed, a

28

1  bankruptcy court may find bad faith even if none of the factors are present." <u>In re Mahmood</u>,

2  2017 WL 1032569, at *4 (B.A.P. 9th Cir. Mar. 17, 2017).

3

4  III.

5  **THE ST. PAUL FACTORS ESTABLISH "BAD FAITH" CAUSE FOR DISMISSAL**

6  **UNDER 11 U.S.C. § 1112(b)**

7  The balance of the St. Paul Factors weigh towards finding the case was filed in bad

8  faith, and that cause therefore exists to dismiss this Third Bankruptcy Case under Section

9  1112(b)(1).

10  **A.      The Third BK Case Is Essentially A Two-Party Dispute Capable Of**

11  **Prompt Adjudication In State Court**

12  Given the importance of the fifth St. Paul Factor to the facts of this case, it is

13  considered here first.   The fifth St. Paul Factor is whether the bankruptcy case "is

14  essentially a two party dispute capable of prompt adjudication in state court." <u>St. Paul</u>, 185

15  B.R. at 582-83.

16  **1.      Debor Admitted the Third BK Case Is a Two-Party Dispute**

17  Debtor has consistently admitted over the last ten years that it files bankruptcy cases

18  solely in response to two-party disputes between itself and its landlords.

19  Debtor conceded it filed its First BK Case only as a result of New Vision serving

20  Debtor with a five-day notice and request for forfeiture of the Lease.  Debtor mentioned no

21  other financial hardship prompting or requiring the filing of the First BK Case.  <u>See</u> Ex. D,

22  bates stamp p. 124; Ex. P, bates stamp p. 679, ¶ 6 (McAbian Decl.).

23  Debtor similarly confessed it filed its Second BK Case only as the result of Smart

24  Capital serving Debtor with a three-day notice and request for forfeiture of the Lease.  It

25  mentioned no other financial hardship prompting or requiring the filing of the Second BK

26  Case.  <u>See</u> Ex. G, bates stamp p. 440-41; Ex. P, bates stamp p. 679, ¶ 6 (McAbian Decl.).

27  And again Debtor acknowledges it filed the Third BK Case to thwart Smart Capital

28  from pursuing its claims after service of the 3-Day Notices on Debtor.  <u>See</u> Ex. N, bates

1  stamp p. 627; Debtor's Chapter 11 Status Report attached to the Appendix as **Exhibit U**,

2  bates stamp p. 926.[16]  No other financial distress is described by Debtor as the cause for

3  the instant bankruptcy filing.  See id.; Ex. U, bates stamp p. 927 ("The *sole problem the*

4  *Debtor has* is the never-ending interferences by Smart Capital with the business operations

5  of Hawkeye and its subtenant Exchange LA and repeated attempts to terminate the Lease

6  to the detriment of Hawkeye.") (emphasis added).

7      These admissions by Debtor, under penalty of perjury, in its pleadings and

8  declarations in this Third BK Case are **conclusive and binding on Debtor** as follows:

9      The Ninth Circuit has held that, at the discretion of the court, statements of
   fact made in a brief filed in the same case may be considered judicial
10     admissions binding on the party who made them. *American Title Ins. Co. v.*
   *Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988). Similarly, declarations
11     under penalty of perjury can constitute judicial admissions…Judicial
   admissions are conclusively binding on the party who made them.

12

13  In re Paris, 568 B.R. 810, 820 (Bankr. C.D. Cal. 2017) (citations omitted); Hon. Barry

14  Russell, *Bankruptcy Evidence Manual,* § 801:22, at 1507–08 (West 2008 ed.) (citations

15  omitted) ("Judicial admissions must be distinguished from ordinary evidentiary admissions.

16  A judicial admission is binding upon the party making it; it may not be controverted at trial

17  or on appeal.").

18     The sole reason Debtor filed its Third BK Case is to gain advantage in a two-party

19  dispute between itself and Smart Capital.   This fact is beyond dispute as a judicial

20  admission.

21      **2.     The State Court Can Adjudicate The 3-Day Notices Where Debtor**

22           **Will Suffer No Prejudice Because Its Maintains Its Rights And**

23           **Remedies**

24     "Courts that find bad faith based on two-party disputes do so where 'it is an apparent

25  two-party dispute *that can be resolved outside of the Bankruptcy Court's jurisdiction.' "* In

26  re Sullivan, 522 B.R. 604, 616 (B.A.P. 9th Cir. 2014) (citations omitted) (emphasis in

27

---
28  [16] Third BK Case docket no. 28, filed Nov. 14, 2023

1  original).   Here, the disputes between Debtor and Smart Capital arising under the 3-Day

2  Notices can be promptly resolved outside the Court's jurisdiction in state court.

3      "The Unlawful Detainer Act governs the procedure for landlords and tenants to

4  resolve disputes about who has the right to possess real property… Given the need for

5  quick, peaceful resolutions of unlawful detainer actions, the statutory procedures must be

6  strictly adhered to, including the stringent requirements for service, notice, and filing

7  deadlines." <u>Stancil v. Superior Ct.</u>, 11 Cal. 5th 381, 394–95 (2021) (citations omitted).  "A

8  cause of action for unlawful detainer is a summary proceeding designed to provide an

9  expeditious remedy to recover possession of real property…Due to the summary nature of

10  the proceeding, strict compliance with the statutory requirements is a prerequisite to a

11  landlord's recovery of possession." <u>Frazier v. Superior Ct. of Los Angeles Cnty.</u>, 86 Cal.

12  App. 5th Supp. 1 (Cal. App. Dep't Super. Ct. 2022) (citations omitted). "An unlawful detainer

13  action (CCP § 1161 et seq.) affords landlords a speedy 'summary eviction' remedy. Indeed,

14  it is virtually the fastest civil trial proceeding."  A. Procedural Overview, <u>Cal. Prac. Guide</u>

15  <u>Landlord-Tenant</u>, Ch. 8-A.  A tenant facing lawful eviction is given ample opportunity to

16  answer and defend against an unlawful detainer complaint:

17      These are the basic procedural steps to effect a lawful eviction by way of
    unlawful detainer:  [1] Notice of termination…[2] Filing and service of the
18      unlawful detainer complaint… [3] Defendant response (or default)…[4]
    Request for trial setting…[5] Trial and judgment for possession…[6]
19      Issuance of writ of possession…[7] Actual eviction pursuant to writ of
    possession.
20

21  A. Procedural Overview, <u>Cal. Prac. Guide Landlord-Tenant</u>, Ch. 8-A.

22      In an effort to try to explain away its pattern of filing bankruptcies due to pending

23  two-party disputes, Debtor represents, based on the Ninth Circuit's <u>In re Windmill Farms</u>

24  case, it filed its Third BK Case to avoid forfeiture of the Lease:

25      Pursuant to the landmark case of In re Windmill Farms, Inc., 841 F.2d 1467
    (9th Cir. 1988) ("Windmill Farms") and its progeny and California Code of
26      Civil Procedure § 1161, Hawkeye's right to possession will terminate
    once upon expiration of the three days set forth in its Three-Day Notices,
27      all three of which declare a forfeiture.

28

1    <u>See</u> Ex. N, bates stamp p. 627.  Such argument, however, misstates the law and fails to

2    explain why this two-party, landlord-tenant dispute could not be adjudicated in state court.

3    As a preliminary matter, <u>In re Windmill Farms, Inc.</u>, 841 F.2d 1467, 1470 (9th Cir.

4    1988), is not directly on point since it addresses lease assumption under 11 U.S.C. § 365(a)

5    [not at issue in this Motion] and unlawful detainers under Code of Civil Procedure § 1161(2)

6    - in this case, the Three-Day Notices were served under Code of Civil Procedure § 1161(4).

7    <u>See</u> Ex. M.  In any event, to the extent applicable, <u>Windmill Farms</u> does not stand for the

8    proposition for which Debtor proffers it.  Contrary to Debtor's statement above, <u>Windmill</u>

9    <u>Farms</u> did not hold that a tenant's right to possession terminates upon expiration of the

10   three days set forth in a three-day notice.  Rather, the Ninth Circuit held:

11   > Under California law a lease terminates for nonpayment of rent a*t least by*
12   > *the time the lessor files an unlawful detainer action*, provided that a proper
> three-days' notice to pay rent or quit has been given, and the lessee has
13   > failed to pay the rent in default within the three-day period, and further
> provided that the lessor's notice contained an election to declare the lease
14   > forfeited.

15   <u>Windmill Farms</u>, 841 F.2d at 1471 (emphasis added).   Debtor's alleged urgency to file the
16
     Third BK Case before the expiration of the three-day period in the 3-Day Notices is
17
     erroneously based on a misunderstanding of the holding in <u>Windmill Farms</u>.  Here, no
18
     unlawful detainer complaint had yet been filed.
19
20   Moreover, it not a foregone conclusion that upon expiration of the three day period

21   initiated by the 3-Day Notices, Debtor has irrevocably forfeited the Lease and possession.

22   As discussed, under California law, Smart Capital is still required to file its unlawful detainer

23   complaint and prove its case in state court.  "[S]ervice of the three-day notice is merely an

24   element of an unlawful detainer cause of action that must be alleged and proven for the

25   landlord to acquire possession.").  <u>Borsuk v. App. Div. of Superior Ct.</u>, 242 Cal. App. 4th

26   607, 612–13 (2015) (citations omitted).  The Ninth Circuit also recognized this procedural

27   requirement:

28   > If the tenant should prevail in the unlawful detainer proceeding, this does
> not mean that the landlord did not terminate the lease in advance of the

1    judgment. Rather, the judgment in favor of the tenant is a judicial
2    determination that the termination was improper. *A prevailing tenant who
     has remained in possession retains his leasehold estate* and may have an
3    action for damages for the lessor's breach of the covenants of quiet
     enjoyment and possession.

4

5    Windmill Farms, 841 F.2d at 1471 (emphasis added).  Debtor could therefore prevail in
6    an unlawful proceeding and retain its leasehold interest in the Leased Premises.

7    Even at the expiration of the 3-Day Notices period, Smart Capital could not
8    unilaterally take possession of the Premises - an unlawful detainer judgment declaring the
9    lease forfeited is needed, *plus the issuance of a writ of possession.*  Code of Civil Proc. §
10   1174; Four Seas Inv. Corp. v. Int'l Hotel Tenants' Assn., 81 Cal. App. 3d 604, 612 (Ct. App.
11   1978) ("It is not true that a tenant who unlawfully detains becomes a mere trespasser: to
12   the contrary, a tenant is entitled to peaceful possession until the detainer action culminates
13   in a judgment of forfeiture."); Bedi v. McMullan, 160 Cal. App. 3d 272, 276 (Ct. App. 1984)
14   ("Regardless of who has the right to possession, orderly procedure and preservation of the
15   peace require that the actual possession shall not be disturbed except by legal process…
16   A valid writ of execution is the ultimate indispensable element of the legal process by which
17   a party entitled to possession of the property acquires possession.") (citations omitted);
18   Glass v. Najafi, 78 Cal. App. 4th 45, 48–49 (2000) ("The statutes defining forcible entry
19   (Code Civ. Proc., § 1159) and forcible detainer (Code Civ. Proc., § 1160) reflect a policy,
20   with deep roots in English law, barring the use of forceful self-help to enforce a right to
21   possession of real property and requiring instead the use of judicial process to gain
22   possession.") (internal citations omitted). A. Self-Help Prohibited, Cal. Prac. Guide
23   Landlord-Tenant, Ch. 7-A.

24   Pointedly, Debtor provides this Court with seven pages of why it believes it will
25   prevail on the merits of the 3-Day Notices, thereby demonstrating Debtor understands
26   Smart Capital must still prove its case in state court, including the sufficiency of the 3-Day
27   Notices.  See Ex. N, bates stamp p. 628-33.

28   And even if Smart Capital carries its burden in its unlawful detainer case and the

1   Lease is terminated, as the Ninth Circuit recognized, Debtor may still remain in possession

2   of the Premises if it can satisfy the elements of relief from forfeiture under Code of Civil

3   Procedure § 1179.  See Windmill Farms, 841 F.2d at 1471-72 ("On remand the bankruptcy

4   court should determine whether the lease, if validly terminated by Vanderpark, could have

5   been saved from forfeiture by application of California Code of Civil Procedure section

6   1179[.]").

7        Finally, Debtor's own actions in the State Court Action undermine its alleged

8   urgency in having to file the Third BK Case.  Within days of being served the 3-Day Notices,

9   Debtor filed the Ex Parte Application in the State Court Action seeking a preliminary

10  injunction against Smart Capital, based in part, on the 3-Day Notices.  See Ex. Q, bates

11  stamp p. 732-35.  This rapid action is tacit recognition by Debtor that the state court can

12  properly adjudicate the 3-Day Notices.

13       In sum, the Court should look beyond the false dichotomy presented by Debtor to

14  rationalize its Third BK Case filing.  Debtor was never in a situation where it had no choice

15  but to file for bankruptcy protection, for a third time, or forever lose its interest in the Lease.

16  Debtor maintains all of its rights and remedies - the very same recognized by the Ninth

17  Circuit in Windmill Farms - to defend against any future unlawful detainer complaint.  Its

18  strategic decision to avoid the state court where it will suffer no prejudice is the hallmark of

19  a bad faith filing.  Courts that find bad faith based on two-party disputes do so where " 'it is

20  an apparent two-party dispute *that can be resolved outside of the Bankruptcy Court's*

21  *jurisdiction.' "* Sullivan, 522 B.R. at 616 (emphasis in original).

22       **B.    Debtor Essentially Has Only One Asset**

23       The first St. Paul Factor is whether "the debtor has only one asset."  St. Paul, 185

24  B.R. at 582-83.  In In re Mahmood, 2017 WL 1032569, * 8 (B.A.P. 9th Cir. Mar. 17, 2017),

25  the Ninth Circuit Appellate Panel affirmed the bankruptcy court's dismissal of a chapter 11

26  case under Section 1112(b)(1) for "bad faith".  The BAP found the bankruptcy court had

27  not abused its discretion by finding the case was "*essentially* a one-asset case."  Id. at 6

28  (emphasis added).  In making this finding, the bankruptcy court acknowledged there was

1 more than one asset scheduled, but the other assets were of de minimis value. Id. The

2 BAP rejected the debtor's argument that, in determining bad faith under the St. Paul

3 Factors, the bankruptcy court should have only looked at the objective number of assets,

4 i.e., quantity over quality. See id. In affirming the bankruptcy court's finding the dismissed

5 case was "essentially a one-asset case," the BAP ruled the court had not abused its

6 discretion in concluding the debtor's other assets were "negligible." Id.

7    Similarly, here, Debtor, as simply a holding company, has essentially one asset -

8 the Lease. All of the other scheduled assets arise from the Lease. See Ex. O, p. 645-48.

9 Debtor also admits that its most valuable asset is the Lease. See Ex. P, bates stamp p.

10 679, ¶ 4 (McAbian Decl.). The Court should therefore find this St. Paul Factor weighs in

11 favor of dismissal.

12    **C.    Debtor Has No Ongoing Business To Reorganize**

13    The second St. Paul factor is whether Debtor has an ongoing business to

14 reorganize. Here, Debtor has admitted it is simply a holding company for the Lease with

15 no employees. Its operating expenses do not include payroll. The entity with the actual,

16 ongoing business is WERM, who operates a nightclub on the Leased Premises but who

17 itself is not in bankruptcy. See Ex. P, bates stamp p. 679, ¶ 4-5, p. 681, ¶ 10, 712 (McAbian

18 Decl.); Ex. U, bates stamp p. 950. This factor also weighs in favor of granting this Motion.

19    **D.    Debtor's Unsecured Creditors Are Minimal and Insiders**

20    The third St. Paul Factor is whether "there are any unsecured creditors[.]" St. Paul,

21 185 B.R. at 582-83. Aside from Smart Capital, Debtor scheduled a total of seven

22 unsecured creditors in the 2023 Schedules. See Ex. O, bates stamp p. 651-52. Four of

23 those creditors (Saybian, SEG, Social Entertainment, and Vardapour) are insiders of

24 Debtor, leaving only a minimal three non-insider creditors. Accordingly, this third St. Paul

25 Factor weighs in favor of dismissal.

26    **E.    Debtor Has Made No Progress On Either of Its Two Prior Plans of**

27        **Reorganization**

28    The fourth St. Paul Factor is whether "the debtor has any cash flow or sources of

1   income to sustain a plan of reorganization to make adequate protection payments[.]"  <u>St.</u>

2   <u>Paul</u>, 185 B.R. at 582-83.    Debtor's cash flow is insufficient to sustain a plan of

3   reorganization.  Debtor has two prior confirmed plans, the most recent being the Second

4   BK Plan.  To date, however, Debtor has made no progress towards satisfaction of its

5   obligations under the Second BK Plan because the very same general unsecured creditors

6   (Al Goud, Beada, Vardapour, Guichard) are general unsecured creditors in this Third BK

7   Case with the exact same claim amounts.  In other words, since confirmation of the Second

8   BK Plan on August 26, 2021, Debtor has made no progress in over two years, thereby

9   making it evident Debtor cannot sustain a plan of reorganization.  In sum, the balance of

10  this last factor, and the other St. Paul Factors, weigh in favor of granting dismissal for bad

11  faith.

12

13                                              **IV.**

14          **ADDITIONAL GROUNDS EXIST FOR FINDING "BAD FAITH" CAUSE**

15                       **TO DISMISS THIS THIRD BK CASE**

16      **A.      <u>Debtor Is Using the Third BK Case A Bad Faith Litigation Tactic</u>**

17          Additional evidence of Debtor's bad faith filing is its use of this bankruptcy as a

18  litigation tactic.  "A bankruptcy case is filed in bad faith if it was brought for 'tactical reasons

19  unrelated to reorganization."  <u>Moore</u>, 583 B.R. 507 at 512.  As discussed above, Debtor

20  admits it filed this bankruptcy prior to the expiration of the compliance period solely to

21  prevent Smart Capital from pursuing its 3-Day Notices, i.e., to prevent Smart Capital from

22  proceeding forward with its nonbankruptcy state law matter.  As discussed above, Debtor

23  retains all its rights and remedies in state court to defend against the 3-Day Notices, and

24  Debtor has confidently told this Court the allegations in the 3-Day Notices are frivolous.

25  <u>See</u> Ex. N, bates stamp p. 628-33.  In an obvious contradiction and in undermining its

26  position, however, Debtor also proclaims it could not go before the state court and defend

27  against the "frivolous" 3-Day Notices.  Debtor is thus "speaking out both sides of its mouth."

28  Such gamesmanship by Debtor should not be tolerated by this Court.  Debtor's blatant

1    attempt to have it both ways demonstrates its misuse of the Third BK Case as a litigation

2    tactic.

3         Debtor's misuse of the Third BK Case is further evident by its use of the automatic

4    stay to gain a tactical advantage in the State Court Action.  Smart Capital is currently stayed

5    from pursuing the 3-Day Notices and any affirmative counterclaims against Debtor; yet,

6    Debtor is actively litigating the very same 3-Day Notices in the State Court Action.  For

7    example, Debtor, through WERM, voluntarily propounded discovery regarding the 3-Day

8    Notices on Smart Capital after the Petition Date and is paying for such discovery with estate

9    funds.  <u>See</u> Ex. R, bates stamp p. 740-864; Debtor's Professional Fee Statements for

10    October and November 2023 attached to the Appendix as **<u>Exhibit S and T</u>**, bates stamp

11    871 (i.e., 10/20/23) and 897-98, respectively.[17]

12         Moreover, and even more blatant, is Debtor's admission that it filed the Third BK

13    Case for the benefit of a third-party.  In the 2023 Petition, Debtor states, again under

14    penalty of perjury, it filed the Third BK Case to gain an advantage in an upcoming CUB

15    hearing.  <u>See</u> Ex. N, bates stamp 627.  And Debtor provides the Court with a "parade of

16    horribles" that would occur if an unfavorable CUB hearing were to occur.  **But the CUB is**

17    **not in Debtor's name nor is its scheduled as property of the estate.**    WERM, the

18    actual entity with employees and dance club business, is the holder of the CUB.  Debtor is

19    simply a shell holding company.  True to form, Debtor is intentionally blurring the activities

20    of Debtor and WERM together.  The effect of the 3-Day Notices on WERM or its business

21    operations should not be considered by the Court in deciding whether to dismiss the Third

22    BK Case for bad faith because WERM is not the party in bankruptcy.  Even more damaging

23    for Debtor, however, is that this is a judicial admission by Debtor that it filed its Third BK

24    Case to intentionally benefit WERM and help WERM gain a tactical advantage in its CUB

25    litigation.  Such misuse of the Bankruptcy Code as a litigation tactic is improper.  This factor

26    weighs in favor of granting the relief Smart Capital seeks.

27

28    ───────────────
[17] Third BK Case docket nos. 38-39, filed Dec. 14, 2023.

**B.**    **Debtor Is Using The Third BK Case For Forum Shopping**

Closely related to Debtor's misuse of the Bankruptcy Code as a litigation tactic is Debtor's forum shopping.  "[T]wo party disputes in state court… should be resolved through the normal litigation process in those forums, and that it is bad faith to file bankruptcy instead of continuing with the normal litigation process in the nonbankruptcy forums."  In re Silberkraus, 253 B.R. 890, 906 (Bankr. C.D. Cal. 2000), subsequently aff'd, 336 F.3d 864 (9th Cir. 2003).    Instead of allowing the 3-Day Notices to proceed to adjudication before the state court specialized in landlord-tenant disputes, Debtor engages in forum shopping by filing this Third BK Case.  Again, because Debtor retains its rights and remedies to defend itself in unlawful detainer court, the filing of the Third BK Case could only be construed as forum shopping, especially when Debtor continues to prosecute its State Court Complaint and litigate over the very same 3-Day Notices that allegedly "forced" Debtor to file the instant case.  Even the prior Bankruptcy Court, in its ruling to dismiss the AP Complaint by Debtor, raised its "concerns" that Debtor was forum shopping. See Ex. I, bates stamp p. 580 (AP Dismissal Ruling).

**C.**    **Debtor's Bad Faith Is Evident By Its Serial Repeat Filing & Having Two Active Bankruptcy Cases Pending At The Same Time**

"Typical bad faith two-party dispute cases may involve…repeat filers[.]" Sullivan, 522 B.R. at 616.  In In re Jartran, Inc., 886 F.2d 859, 868-69 (7th Cir. 1989), the Seven Circuit found that filing a second chapter 11 case while the first chapter 11 case with a confirmed plan remains open is permissible if the second chapter 11 case "has a purpose entirely distinct from that of the first petition (liquidation)." In re Jartran, Inc., 886 F.2d 859, 869 (7th Cir. 1989).  "The *Jartran* decisions teach us that where the Chapter 11 plan proposed in a second Chapter 11 case is not a reorganizing plan, and thus provides for a necessary liquidation of the business, the second case has not been filed for an improper purpose, and does not have to be dismissed." In re Studio Five Clothing Stores Inc., 192 B.R. 998, 1004 (Bankr. C.D. Cal. 1996) (analyzing Jartran).

This is Debtor's third bankruptcy case filed in the short span of 10 years.  And if the

1    Court considers the Adversary Proceeding, this would constitute Debtor's fourth attempt to

2    improperly adjudicate landlord-tenant issues in Bankruptcy Code rather than state court.

3    Debtor admits in its status report it intends to propose yet another plan of reorganization.

4    <u>See</u> Ex. U, bates stamp p. 927, ln. 3-5.  Relying on <u>Jartran</u>, the Court should find this serial

5    filing to be bad faith because Debtor is not intending to propose a liquidation plan.  The

6    Third BK Case does not have a purpose entirely distinct from the Second BK Case, or the

7    First BK Case.  The common thread of these three serial filings is to invoke the automatic

8    stay to thwart litigation from moving forward in state court.  Like the Bankruptcy Court in

9    the now dismissed Adversary Proceeding, this Court should find, "Even though this Court

10   is familiar with all the facts surrounding these parties, there really is no reason for this case

11   to be in the bankruptcy court."  <u>See</u>  Ex. I, bates stamp p. 580 (AP Dismissal Ruling); B.

12   Case Dismissal, <u>Cal. Prac. Guide Bankruptcy</u>, Ch. 5(II)-B ("Bad faith may also be found

13   where a Chapter 11 debtor has filed serial or concurrent bankruptcy cases.").

14

15                                                    **V.**

16   **DISMISSAL OF THE THIRD BK CASE IS IN THE BEST INTEREST OF THE ESTATE**

17          Upon finding "cause" under Section 1112(b), a bankruptcy court must determine the

18   following, "(1) decide whether dismissal, conversion, or the appointment of a trustee or

19   examiner is in the best interests of creditors and the estate; and (2) identify whether there

20   are unusual circumstances that establish that dismissal or conversion is not in the best

21   interests of creditors and the estate. "  <u>In re Sullivan</u>, 522 B.R. 604, 612 (B.A.P. 9th Cir.

22   2014).  In this case, dismissal is in the best interest of the creditors and the Estate because

23   the instant filing is a bad faith filing.  Other than the Lease, there are no other assets for a

24   chapter 7 trustee to administer.  Because Debtor was not in any financial distress prior to

25   the filing, and has not described any arrearages or defaults owed, the creditors will not be

26   harmed if they are returned to their pre-bankruptcy state with their prepetition rights intact.

27   And the effect of dismissal on WERM or its dance operations should not be considered

28   either because WERM is not the party in bankruptcy.  Similarly, because Debtor retains all

1  of its rights and remedies to defend itself against the 3-Day Notices in state court, the Court

2  does not need to decide the merits of this ongoing two-party, landlord-tenant dispute.

3       Dismissal will send the clear message to Debtor that future misuse of the bankruptcy

4  process to gain tactical advantages in litigation with Smart Capital will not be tolerated.

5  Otherwise, Debtor will be incentivized (as it currently is) to improperly invoke the

6  Bankruptcy Code and the automatic stay if future two-party, landlord-tenant disputes arise.

7

8  **VI.**

9  **<u>CONCLUSION</u>**

10       The Court is given broad discretion to determine "cause" under Section 1112(b).

11  Given the unique facts of this case, such cause exists here.  The St. Paul Factors weigh in

12  favor of dismissal.  The merits of this ongoing landlord-tenant dispute arising under state

13  law should be resolved in the state court specialized to adjudicate landlord-tenant disputes

14  arising under state law.  Debtor has admitted this Third BK Case was solely filed as the

15  result of its two-party dispute with Smart Capital.  Accordingly, there are ample grounds for

16  the Court to find bad faith cause for dismissal under Section 1112(b) under the unique

17  circumstances of this case.

18

19  DATED:  December 19, 2023     Respectfully submitted,

20       **GREENSPOON MARDER LLP**

21

22       By:      */s/ Steve Burnell*

23       Alan G. Tippie

24       Steve Burnell

     Attorneys for Smart Capital

25

26

27

28

1

## REQUEST FOR JUDICIAL NOTICE

2          Pursuant to Federal Rule of Bankruptcy Procedure 201, Smart Capital hereby

3   requests the Court to take judicial of the below records filed in this Court and in the State

4   Court Action.[18]  See FRE 201(c)(1) and (d) ("The court may take judicial notice on its

5   own…at any stage of the proceeding."); In re Blumer, 95 B.R. 143, 146 (BAP 9th Cir. 1988)

6   ("It is well established that a court may take judicial notice of its own records…").  True and

7   correct copies of these records are attached as exhibits to the Appendix separately filed in

8   support of the Motion.

9   **Exhibit C:**   Debtor's schedules filed on October 29, 2023 in the First BK Case,

10                docket no. 25.

11   **Exhibit D:**   Debtor's First BK Solicitation Package filed on Jan. 5, 2016 in the First

12                BK Case, docket no. 343.

13   **Exhibit E:**   Debtor's Analysis of Ballots filed on Feb. 25, 2016 in the First BK

14                Case, docket no. 351.

15   **Exhibit F:**   Debtor's schedules filed on Sep. 4, 2019 in the Second BK Case,

16                docket no. 15.

17   **Exhibit G:**   Debtor's Second BK Solicitation Package filed on Feb. 19, 2021 in the

18                Second BK Case, docket no. 288.

19   **Exhibit H:**   The AP Complaint, without exhibits, filed by Debtor on Sep. 20, 2021

20                in the Adversary Proceeding, docket no. 1.

21   **Exhibit I:**   The AP Dismissal Ruling, docket nos. 24 and 30, entered on Nov. 10,

22                2021 and Nov. 22, 2021, respectively, in the Adversary Proceeding.

23   **Exhibit K:**   WERM's License Information downloaded from the California

24                Department of Alcoholic Beverage Control's website, accessed

25                on Nov. 28, 2023, at https://www.abc.ca.gov/licensing/license-

26                lookup/single-license/?RPTTYPE=15&DBANAME=Exchange+LA.

27

---

28   [18] Unless otherwise defined herein, capitalized terms shall have the same meaning as in the foregoing
     Motion and Memorandum of Points and Authorities.

1    **Exhibit L:**   The State Court Complaint, without exhibits, filed on August 29, 2022

2    in the State Court Action before the Los Angeles Superior Court.

3    **Exhibit N:**   The 2023 Petition filed on Oct. 18, 2023 in the Third BK Case, docket

4    no. 1.

5    **Exhibit O:**   Debtor's 2023 Schedules filed on Nov. 1, 2023 in the Third BK Case,

6    docket no. 16.

7    **Exhibit P:**   Debtor's motion to approve stipulation for use of cash collateral

8    attached filed on Nov. 7, 2023 in the Third Bk Case, docket no. 20.

9    **Exhibit Q:**   The Ex Parte Application filed on Oct. 19, 2023 in the State Court.

10   **Exhibit S:**   Professional Monthly Fee Statement for Oct. 2023 filed Dec. 14,

11   2023 in the Third BK Case, docket no. 38.

12   **Exhibit T:**   Professional Monthly Fee Statement for Nov. 2023 filed Dec. 14,

13   2023 in the Third BK Case, docket no. 39.

14   **Exhibit U:**   Chapter 11 Status Report filed Nov. 14, 2023 in the Third BK

15   Case, docket no. 28.

16   **Exhibit V:**   CA Statement of Information for Social Entertainment Group,

17   filed Jan. 31, 2023

18

19   DATED:  December 19, 2023          Respectfully submitted,

20                                      **GREENSPOON MARDER LLP**

21

22                                      By:   _____*/s/ Steve Burnell*_____

23                                            Alan G. Tippie
                                             Steve Burnell
24                                           Attorneys for Smart Capital

25

26

27

28

### DECLARATION OF MICHAEL S. CHANG

I, Michael S. Chang, declare and state that:

1.      I am an individual over the age of (18) eighteen years old.  The matters stated herein are true and correct and within my personal knowledge.  If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2.      I am the manager of Smart Capital Investments I, LLC, a California limited liability company, Smart Capital Investments II, LLC, a California limited liability company, Smart Capital Investments III, LLC, a California limited liability company, Smart Capital Investments IV, LLC, a California limited liability company, and Smart Capital Investments V, LLC, a California limited liability company (collectively, "**Smart Capital**").  I submit this declaration solely in my capacity as manager of Smart Capital.

3.      I make and execute this declaration in support of the foregoing *Motion To Dismiss Chapter 11 Case Under 11 U.S.C. § 1112(b)(1)* ("**Motion**").  Unless otherwise defined herein, all capitalized terms have the same meaning given to them in the Motion or the supporting Memorandum of Points and Authorities.

4.      Smart Capital is the owner of certain real property located at 618 S. Spring Street,· Los Angeles, California 90014 ("**Property**").  The Property consists of a twelve-story building commonly known as the Pacific Stock Exchange Building.

#### Original Lease

5.      In 2009, Debtor and an unrelated third-party landlord entered into that certain Lease Agreement dated July 17, 2009 ("**Lease Agreement**") to lease the first 4 floors ("**Leased Premises**") of the Property.   Debtor subleased the Leased Premises ("**Sublease**") to W.E.R.M. Investments, LLC ("**WERM**") who operates a dance club and event venue on the Leased Premises, known as "Exchange LA."  The Lease Agreement was later amended via three written "Amendments to Lease" respectively dated August 5, 2009, August 17, 2009, and September 16, 2009 ("**Alleged Amendments**").  New Vision Horizon, LLC ("**New Vision**"), via foreclosure, subsequently acquired the interests of the

1   prior unrelated landlord under the Lease Agreement and Alleged Amendments.   New

2   Vision thereby became the successor landlord under the Lease Agreement.

3          **Debtor's First Bankruptcy Case in 2013**

4          6.       Landlord-tenant disputes arose between Debtor and New Vision regarding

5   the lease terms.   Debtor alleged that New Vision, in part, breached the Lease Agreement

6   and Alleged Amendments by failing to pay for certain improvements to the Leased

7   Premises.   Based on these alleged defaults, Debtor withheld rents from approximately

8   2009 to 2013, totaling $945,224.78.   Debtor then filed two lawsuits against New Vision in

9   Los Angeles Superior Court, case nos. BC464610 (filed in 2011) and BC 515124 (filed in

10  2013), while continuing to withholds rents.   Upon receiving New Vision's Notice of Default

11  dated September 20, 2013 ("**2013 Default Letter**") for failure to pay $945,224.78 of rents,

12  Debtor filed its first voluntary bankruptcy case.   <u>See</u> true and correct copy of 2013 Default

13  Letter attached to the separately filed *Appendix of Exhibits In Support Of Motion To Dismiss*

14  *Chapter 11 Case Under 11 U.S.C. § 1112(b)(1)* ("**Appendix**") as **<u>Exhibit A</u>**.

15         7.       On September 30, 2013, Debtor filed its first voluntary chapter 11 petition in

16  this Court, giving rise to *In re Hawkeye Entertainment, LLC*, case no. 1:13-bk-16307-MT

17  ("**First BK Case**").   The Court approved a global settlement resolving the then-pending

18  disputes related to the Lease Agreement between Debtor and New Vision.   As part of the

19  settlement, in relevant part, the Alleged Amendments to the Lease Agreement were voided,

20  and Debtor and New Vision entered into the First Amendment to the Lease Agreement

21  dated August 19, 2014 ("**First Amendment**") (Lease Agreement and First Amendment,

22  collectively, "**Lease**").   A true and correct copy of the Lease is attached to the Appendix as

23  **<u>Exhibit B</u>**.

24         8.       Debtor's schedules in the First BK Case reveal no meaningful assets other

25  than the Lease, no secured or priority unsecured debt, and the following general unsecured

26  creditors (excluding New Vision):

27

28

| Creditor | Basis | Claim Amount |
|---|---|---|
| Ahmed Al-Goud | Loan | $300,000.00 |
| E & A Mechanical Inc. | Trade Debt | $120,000.00 |
| G & A Fire Protection Corp | Trade Debt | $23,000.00 |
| Jasper Watt | Trade Debt | $185,000.00 |
| Laurentiu Badea | Loan | $175,000.00 |
| McKenna Long & Aldridge | Legal Services | $75,000.00 |
| Rene Vardapour | Loan | $145,000.00 |
| Robert Guichard | Consulting Services | $27,000.00 |
| Saybian Gourmet Inc. | Loan Capital Advance | Unknown |

See true and correct copy of Debtor's schedules filed in the First BK Case are attached to the Appendix as collective **Exhibit C**, bates stamp p. 54-62.  Saybian Gourmet Inc. (highlighted in gold) is an insider of Debtor - with Mr. Adi McAbian ("**Mr. McAbian**") being the principal of both entities.  See Ex. C, bates stamp p. 47-50, 72.  So, as far back as 2009, Debtor has been nothing more than a holding company for the Lease.  See Ex. C, bates stamp p. 71, Sec. 18.

9.    By confirmation order entered on June 20, 2016, Debtor's plan of reorganization ("**First BK Plan**") attached as Exhibit D to its solicitation package ("**First BK Solicitation Package**") was confirmed.  See true and correct copy of Debtor's First BK Solicitation Package is attached to the Appendix as **Exhibit D**.

10.    Under Debtor's First BK Plan, after the effective date and payment of administrative and priority claims, general unsecured creditors classified in Class 1 were to receive deferred monthly payments equal to the present value of their claims.  Class 2 consisted of the general unsecured creditors receiving equity interests in WERM in exchange for their claims.  Based on the Ballot Analysis filed by Debtor, creditors Jasper Watt and Rene Vardapour elected treatment under Class 2 and received equity interests in WERM upon the effective date of the First BK Plan.  See Debtor's Analysis of Ballots, a true and correct copy of which is attached to the Appendix as **Exhibit E**, bates stamp p. 370-71; Ex. D, bates stamp p. 341-42 (First BK Plan).

11.    Debtor admitted in its disclosure statement that it filed the First BK Case only

SB 55828576v8

as a result of New Vision serving Debtor with a five-day notice and request for forfeiture of the Lease.  Debtor mentioned no other financial hardship prompting or requiring the filing of the First BK Case.  See Ex. D, bates stamp p. 124.

12.    The First BK Case was closed and a final decree was issued on April 28, 2017.

**Debtor's Second Bankruptcy Case in 2019**

13.    On August 21, 2023, Debtor filed its second voluntary chapter 11 petition in this Court, giving rise to *In re Hawkeye Entertainment, LLC*, case no. 1:19-bk-MT ("**Second BK Case**").

14.    Debtor, simply a holding company, again scheduled no meaningful assets other than the Lease, no secured or priority debt, and the following general unsecured creditors (excluding Smart Capital):

| Creditor | Basis | Claim Amount |
|---|---|---|
| Ahmed Al-Goud | | $300,000.00 |
| Dentons US LLP | | $114,197.00 |
| Laurentiu Beada | | $175,000.00 |
| Rene Vardapour | | $145,000.00 |
| Robert Guichard | | $27,000.00 |
| Saybian Gourmet Inc. | | $1,587,919.23 |
| Social Entertainment Group | | $265,000.00 |

See true and correct copy of Debtor's schedules filed in the Second BK Case are attached to the Appendix as collective **Exhibit F**, bates stamp p. 377-83.

15.    While no basis for these general unsecured claims was identified by Debtor, the following observations are clear: (1) most of the general unsecured debt was held by Debtor's insiders (highlighted in gold) - Saybian and Social Entertainment, (2) the same four creditors from the First BK Case (highlighted in grey) were scheduled - Al Goud, Beada, Vardapour, and Guichard, (3) little to no reorganization progress appears to have been made since the First BK Case because the scheduled claim amounts for these four creditors are the same, and (4) it is unclear why Debtor scheduled Vardapour as a creditor

1   since Vardapour accepted equity interests in WERM in exchange for Vardapour's $145,000

2   claim under the confirmed First BK Plan.  Cf Ex. C, bates stamp p. 60-62, and Ex. F, bates

3   stamp p. 382-81; See true and correct copy of most recent CA Statement of Information

4   for Social Entertainment Group filed Jan. 31, 2023 attached to the Appendix as **Exhibit V**.

5          16.    Although Debtor had no employees and no ongoing business operations in

6   that Debtor is simply a holding company, Debtor obtained a Court-approved loan from the

7   Small Business Administration in the amount of $150,000.00 ("**SBA Loan**"), secured by all

8   of Debtor's assets.

9          17.    By confirmation order entered on August 26, 2021, Debtor's amended plan

10  of reorganization ("**Second BK Plan**") attached as Exhibit 1 to its solicitation package

11  ("**Second BK Solicitation Package**") was confirmed.  See true and correct copy of the

12  Second BK Solicitation Package is attached to the Appendix as **Exhibit G**.

13         18.    Similar to the First BK Plan, under Debtor's Second BK Plan, after the

14  effective date and payment of administrative and priority claims, general unsecured

15  creditors in Class 2 were to receive deferred annual payments equal to the present value

16  of their claims.  See Ex. G, bates stamp p. 452-53 (Second disclosure statement), 507

17  (Second BK Plan).

18         19.    No mention is made in the Second BK Plan why Debtor has not objected to

19  Rene Vardapour's claim in the amount of $145,000 on grounds his claim was extinguished

20  under the First BK Plan in exchange for equity in WERM.

21         20.    Debtor admitted in its second disclosure statement that it filed the First BK

22  Case only in response to Smart Capital serving Debtor with a three-day notice and request

23  for forfeiture of the Lease.  It mentioned no other financial hardship prompting or requiring

24  the filing of the Second BK Case.  See Ex. G, bates stamp p. 440-41.

25         21.    The Second BK Case remains open and pending.

26         **Debtor's Adversary Proceeding Is Dismissed**

27         22.    Approximately one and a half months after the Second BK Plan was

28  confirmed, Debtor initiated an adversary proceeding against Smart Capital and myself, as

its principal of Smart Capital, giving rise to *Hawkeye Entertainment, et al. v. Michael Chang, et al*, adversary no. 1:21-ap-01064-MT ("**Adversary Proceeding**").  In its complaint ("**AP Complaint**"), Debtor alleged various claims for relief arising from several post-petition, landlord-tenant disputes.  The AP Complaint, without exhibits, is attached to the Appendix as **Exhibit H**.

23.    Smart Capital successfully moved to dismiss the AP Complaint due to lack of subject matter of jurisdiction and on the grounds of abstention.  In relevant part, Smart Capital argued these landlord-tenant disputes should be adjudicated by the state court.  The Bankruptcy Court, in its ruling, noted the following:

> Now that the Assumption Motion is over and the Plan has confirmed, this Court no longer has a reason to preside over what is essentially a landlord tenant issue.  Finally, there are concerns this maybe forum shopping and the Defendants have indicated that they will request a jury.  Even if the Court had subject matter jurisdiction, abstention would be appropriate here.  Even though this Court is familiar with all the facts surrounding these parties, there really is no reason for this case to be in the bankruptcy court.

See dismissal order and notice of ruling (collectively, "**AP Dismissal Ruling**"), a true and correct copy of which is attached to the Appendix as collective **Exhibit I**, bates stamp p. 580.

**Smart Capital Discovers Adi McAbian's Fraud Related To Renewal Of WERM's CUB**

24.    During the summer of 2022, Smart Capital was approached by Debtor and W.E.R.M. and asked to sign a Conditional Use Permit ("**CUB**") renewal application. I found it perplexing that my approval and signature were requested, as this had never been the case before. I was unfamiliar with CUBs and their renewal process, prompting me to initiate thorough research into these matters, which have taken quite a long time.

25.    In that process, Smart Capital has engaged with several Los Angeles City officials, including but not limited to LA City Planning, LA City BEST unit, the City of Los Angeles Department of Building & Safety (LADBS), and a third-party CUB expert, leading to the following discoveries over the next year:

  a. The renewal application requested by Debtor and WERM pertained to CUB PA5, which was contingent on a valid CUB PA4.

  b. The renewal application Debtor and WERM asked me to sign was incomplete and missing vital pages.

  c. It became evident that all CUBs require the signature of both the Applicant and the Owner of the building.

  d. This revelation prompted me to question how WERM had acquired the current CUB PA4 in 2013. Why was my signature and approval not requested before?

26. After finally receiving and examining City Planning records, it came to light that the CUB PA4 application and Master Covenant contained fraudulent information and signatures.

27. The CUB PA4 application was submitted by Mr. McAbian, one of the owners and managers of Hawkeye and WERM. Mr. McAbian falsely signed and notarized the document, knowingly providing incorrect information about the building's owner- asserting it was PAX America while being aware of the (then) correct owner, New Vision.

28. Mr. McAbian also falsely claimed to be the building's owner or the lessee of the entire Property, despite only leasing a portion of the building. His meritless lawsuit at the time even acknowledged that his lease was limited to a portion of the building.

29. The CUB PA4 Master Covenant, recorded in LA County, was also fraudulently signed and notarized by Adi McAbian. The Master Covenant is legally required to only be signed by the building's owner. The fraudulent Master Covenant was then presented back to LA City Planning to effectuate the already fraudulent CUB PA4.

30. To give relevant background, during my due diligence period, I also discovered that CUB PA3 and their ABC license prior to my ownership were obtained through fraud by the same individual, Adi McAbian.

31. In addition to the fraudulent CUB renewal, Debtor and WERM are currently engaged in serious operational violations and criminal activities as part of a pattern and

1  practice in violation of the terms of the CUB. According to City Planning and LADBS,

2  violation enforcement on the CUB is primarily directed at the owner because the CUB runs

3  with the land, not the applicant.

4       32.     Despite these violations being solely committed by Debtor and WERM, I am

5  concerned about Smart Capital sharing liability for their actions as the owner. They

6  continue to conceal their operations and interfere with security cameras placed in common

7  areas, which Smart Capital, as the Landlord, has the sole right to install.

8             **The Currently Pending State Court Action**

9       33.     In a clear example of an ability to protect its rights under the Lease outside

10  of Bankruptcy Court, on August 29, 2022, Debtor and WERM filed a complaint against

11  Smart Capital, myself in my personal capacity, and a related entity in Los Angeles Superior

12  Court, giving rise to *Hawkeye Entertainment, LLC, et al. v. Michael Chang, et al.*, case no.

13  22STCV28003 ("**State Court Action**").   In this complaint ("**State Court Complaint**"),

14  Debtor alleges various landlord-tenant disputes, including Smart Capital's opposition to

15  WERM's  renewal of CUB PA5.  Debtor and WERM seek damages in the amount of $104

16  Million.  See State Court Complaint, without exhibits, a true and correct copy of which is

17  attached to the Appendix as **Exhibit L**.  Smart Capital and its co-defendants deny these

18  meritless allegations, and the State Court Action remains pending.

19             **The 3-Day Notices**

20       34.     During Smart Capital's investigation into WERM's renewal of CUB PA5,

21  Smart Capital discovered serious operational violations and criminal activities occurred on

22  the Leased Premises in violation of the CUB.  Smart Capital was informed by City Planning

23  and LADBS that Smart Capital, as owner of the Property, may also be liable for CUB

24  violations.  Rightfully concerned, on October 16, 2023, Smart Capital served three 3-Day

25  Notices to Quit (collectively, "**3-Day Notices**") on Debtor and WERM based the ongoing

26  unlawful activity occurring on the Leased Premises, WERM's invalid CUB based on the

27  fraud that occurred during the renewal of CUB PA4, and WERM's invalid liquor licenses

28  based on similar fraudulent activity during the application process.  See true and correct

copy of the 3-Day Notices attached to the Appendix as collective **Exhibit M**.

**Debtor's Third Bankruptcy Case in 2023**

35.     Two days after receiving the 3-Day Notices, on October 18, 2023, Debtor filed its third voluntary chapter 11 petition, giving rise to the instant bankruptcy case ("**Third BK Case**").  See true and correct copy of Debtor's third petition and supporting documents (collectively, "**2023 Petition**") are attached to the Appendix as collective **Exhibit N**.

36.     Debtor, a holding company, scheduled no meaningful assets other than the Lease, secured debt in the form of the SBA Loan only, no priority debt, and the following general unsecured creditors (excluding Smart Capital):

| Creditor | Basis | Claim Amount |
|---|---|---|
| Ahmed Al-Goud | | $350,000.00 |
| Laurentiu Beada | | $150,000.00 |
| Rene Vardapour | | $70,000.00 |
| Robert Guichard | | $48,000.00 |
| Saybian Gourmet Inc. | | $1,587,919.23 |
| SEG | | $170,000.00 |
| Social Entertainment Group | | $265,000.00 |

See true and correct copy of Debtor's schedules filed in the Third BK Case ("**2023 Schedules**") are attached to the Appendix as collective **Exhibit O**, bates stamp p. 645-52.

37.     The insider claims (highlighted in gold) again represent the vast majority of the alleged general unsecured debt.  The remaining four general unsecured creditors are the same creditors from the last two bankruptcy cases - including  Vardapour who, based on the First BK Case, should be considered an insider of Debtor as an equity owner in WERM.  Debtor again failed to disclose any basis for these claims in the schedules.  Cf Ex. C, bates stamp p. 60-62, Ex. F, bates stamp p. 382-84, Ex. O, bates stamp p. 651-52.

38.     Like its prior two cases, Debtor admits it filed the Third BK Case simply in response to Debtor's receipt of the 3-Day Notices.  See Ex. N, bates stamp p. 627; True and correct copy of Debtor's motion to approve stipulation for use of cash collateral is attached to the Appendix as **Exhibit P**, bates stamp p. 679, ¶ 6 (Decl. of Mr. McAbian

1    attached thereto).  No financial distress is described by Debtor as the cause for the instant

2    bankruptcy filing.  See id.

3        39.    The Third BK Case remains open and pending, along with Debtor's Second

4    BK Case.

5    **Debtor Continues to Litigate the 3-Day Notices Post-Petition, Thereby Using**

6    **the Bankruptcy Code For Tactical Advantage**

7        40.    While filing the Third BK Case to stop Smart Capital from pursuing the 3-Day

8    Notices, in contradictory fashion, Debtor continues to litigate the 3-Day Notices within the

9    context of the State Court Action.  On October 19, 2023, just one day after the Third BK

10   Case was filed, Debtor filed an *ex parte* application in the State Court Action ("**Ex Parte**

11   **Application**") seeking a preliminary injunction against Smart Capital relying on, in part, the

12   3-Day Notices.  See true and correct copy of Ex Parte Application attached to the Appendix

13   as **Exhibit Q**.  And discovery related to the 3-Day Notices is ongoing in the State Court

14   Action.  See true and correct copy of Requests for Admissions dated Oct. 20, 2023

15   propounded on Smart Capital attached to the Appendix as **Exhibit R**.  Smart Capital and

16   its co-defendants, however, have been prohibited from filing their counterclaims against

17   Debtor due to the automatic stay.

18   **Smart Capital Has Not Received Rents For Approximately Eight Out Of The**

19   **Last 14 Years**

20       41.    Debtor has withheld approximately $2.0 Million in rents during eight out of the

21   last fourteen years, by unilaterally offsetting rents totaling almost $1 Million prior to the First

22   BK Case, and offsetting additional rent against fee orders awarded to Debtor totaling

23   almost $1.0 Million during the Second BK Case.  These fee awards have now been fully

24   paid by Smart Capital through Debtor's impounding of rents.  There is currently one

25   outstanding fee motion pending before the U.S. District Court, and Smart Capital's appeal

26   to the U.S. Circuit Court of Appeal for the Ninth Circuit ("**Ninth Circuit**") of the prior fee

27   awards remains pending.

28

**RELEVANT HISTORY:**

42.     It is my belief that Debtor is actively engaged in a campaign to financially distress me in an attempt to secure control of the Property. Over the last 12 years, Debtor has consistently initiated meritless and fraudulent legal actions to evade rent payments. This persistent course of action has enabled them to effectively evade rent payments for more than eight years.

43.     Debtor has been using various identities and entities to play different roles in front of various parties, including the previous nightclub owner, former property owner, city and state authorities, and new property owners like Smart Capital.

44.     Until 2019, the landlord bore these circumstances. However, they have continually harassed and attempted to put Smart Capital in financial distress at every opportunity. For over eight years, they have used deceit and fraudulent practices to avoid paying rent, pushing Smart Capital to the brink of bankruptcy. Moreover, despite their CUB permit expiring in March this year, they continue to operate illegally. Their third bankruptcy will enable the continuation of these illicit operations.

45.     Adi McAbian and his father, William McAbian, have an extensive history of abusing legal actions with the intent of gaining control of this Property. Their history is marked by multiple instances of meritless and fraudulent legal actions dating back to 2009 when the property was owned by PAX America and extending to the present, with their actions directed against Smart Capital.  This has consisted of, but not limited to over 10 meritless legal actions and 3 bankruptcies while boasting about their success and financial influence over the City of LA.

46.     In contrast, Smart Capital's recent actions as a property owner have been limited to serving the 3-Day Notices, which were necessitated by the lack of transparency on the part of Debtor regarding their operations.  Debtor and WERM continue to brazenly violate the Lease, including such inexplicable actions as covering the cameras in the common areas.  Smart Capital's objective was and has been to ensure compliance with CUB/ABC/Insurance regulations and protect against violations of policies and laws.

47.    Despite the challenges faced over the past 15 years, including economic hardships and the loss of businesses or properties by the original business owner, Consolidated Entertainers Group, LLC, the former property owner, PAX America, and Smart Capital as the current property owner, have consistently acted in a lawful and transparent manner.

48.    The criminal nature of Debtor's activities was exposed during the renewal process of CUB PA4 and other licenses, revealing fraudulent lease agreements and false claims for the CUB. Such actions are unequivocally criminal in nature, and irrespective of any private agreements reached with the parties involved, these actions constitute forgery and fraud.  Their actions have compromised the integrity of government agencies and the legal system.   They undermine the competency, time, and limited resources these agencies have.

49.    In light of these developments, Smart Capital earnestly requests the Court to consider all of these factors and dismiss this bankruptcy case.  Smart Capital should be allowed its "day in court" with the state court given the opportunity to rule on the merits of Smart Capital's 3-Day Notices, and any other landlord-tenant disputes between Debtor and Smart Capital.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2023.

SIGNATURE TO FOLLOW
Michael S. Chang

1

## **DECLARATION OF STEVE BURNELL**

2       I, Steve Burnell, hereby declare:

3       1.       I am an individual over the age of (18) eighteen years old.  The matters stated

4   herein are true and correct and within my personal knowledge due to my personal

5   involvement in this case and my review of the files and court records.  If called to testify as

6   a witness in this matter, I could and would competently testify under oath to the truth of the

7   statements set forth herein.

8       2.       I am an attorney at Greenspoon Marder LLP, counsel to Smart Capital

9   Investments I, LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC,

10  Smart Capital Investments IV, LLC, and Smart Capital Investments V, LLC (collectively,

11  "**Smart Capital**").

12      3.       I make this declaration in support of the foregoing *Motion To Dismiss Chapter*

13  *11 Case Under 11 U.S.C. § 1112(b)(1)* ("**Motion**").  Unless otherwise defined herein, all

14  capitalized terms have the same meaning given to them in the Motion or the supporting

15  Memorandum of Points and Authorities.

16      4.       A true and correct copy of Debtor's schedules filed on October 29, 2023 in

17  the First BK Case, docket no. 25, are attached to the Appendix as collective **Exhibit C**.

18      5.       A true and correct copy of Debtor's First BK Solicitation Package filed on Jan.

19  5, 2016 in the First BK Case, docket no. 343, is attached to the Appendix as **Exhibit D**.

20      6.       A true and correct copy of Debtor's Analysis of Ballots filed on Feb. 25, 2016

21  in the First BK Case, docket no. 351, is attached to the Appendix as **Exhibit E**.

22      7.       A true and correct copy of Debtor's schedules filed on Sep. 4, 2019 in the

23  Second BK Case, docket no. 15, are attached to the Appendix as collective **Exhibit F**.

24      8.       A true and correct copy of Debtor's Second BK Solicitation Package filed on

25  Feb. 19, 2021 in the Second BK Case, docket no. 288, is attached hereto as **Exhibit G**.

26      9.       A true and correct copy of the AP Complaint, without exhibits, filed by Debtor

27  on Sep. 20, 2021 in the Adversary Proceeding, docket no. 1, is attached to the Appendix

28  as **Exhibit H**.

10.    A true and correct copy of the AP Dismissal Ruling, docket nos. 24 and 30, entered on Nov. 10, 2021 and Nov. 22, 2021, respectively, in the Adversary Proceeding are attached to the Appendix as collective **Exhibit I**.

11.    A true and correct copy of WERM's License Information downloaded from the California Department of Alcoholic Beverage Control's website, accessed by me on Nov. 28, 2023, at https://www.abc.ca.gov/licensing/license-lookup/single-license/?RPTTYPE=15&DBANAME=Exchange+LA, is attached hereto as **Exhibit K**.

12.    A true and correct copy of the State Court Complaint, without exhibits, filed on August 29, 2022 in the State Court Action before the Los Angeles Superior Court is attached to the Appendix as **Exhibit L**.

13.    A true and correct copy of the 2023 Petition filed on Oct. 18, 2023 in the Third BK Case, docket no. 1, is attached to the Appendix as collective **Exhibit N**.

14.    A true and correct copy of Debtor's schedules filed on Nov. 1, 2023 in the Third BK Case, docket no. 16, are attached to the Appendix as collective **Exhibit O**.

15.    A true and correct copy of Debtor's motion to approve stipulation for use of cash collateral attached filed on Nov. 7, 2023 in the Third Bk Case, docket no. 20, is attached to the Appendix as **Exhibit P**.

16.    A true and correct copy of the Ex Parte Application filed on Oct. 19, 2023 in the State Court Action is attached to the Appendix as **Exhibit Q**.

17.    A true and correct copy of WERM's Requests for Admissions to Smart Capital dated Oct. 20, 2023 in the State Court Action are attached to the Appendix as **Exhibit R**.

18.    A true and correct copy of Professional Monthly Fee Statement for Oct. 2023 filed Dec. 14, 2023 in the Third BK Case, docket no. 38, is attached to the Appendix as **Exhibit S**.

19.    A true and correct copy of Professional Monthly Fee Statement for Oct. 2023 filed Dec. 14, 2023 in the Third BK Case, docket no. 38, is attached to the Appendix as **Exhibit T**.

20.    A true and correct copy of Debtor's Chapter 11 Status Report filed Nov. 14,

1 | 2023 in the Third BK Case, docket no. 28, is attached to the Appendix as **Exhibit U**.

2 |         21.     A true and correct copy of CA Statement of Information for Social

3 | Entertainment Group, filed Jan. 31, 2023, which I downloaded from the CA Secretary of

4 | State's website at https://bizfileonline.sos.ca.gov/search/business on Dec. 18, 2023, is

5 | attached to the Appendix as **Exhibit V**.

6 |         22.     I attend Debtor's meeting of creditors conducted on November 14, 2023 by

7 | the U.S. Trustee's Office.   In that meeting, Debtor, through its counsel, stated that

8 | scheduled general unsecured creditors "SEG" and "Social Entertainment Group" were the

9 | same entity.

10 |

11 |         I declare under penalty of perjury that the foregoing is true and correct.

12 |         Executed on December 19, 2023.

13 |

14 |                                          _/s/ Steve Burnell_____
                                             Steve Burnell

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*):  MOTION TO DISMISS THE CHAPTER 11 CASE UNDER 11 U.S.C. § 1112(b)(1)  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  December 19, 2023  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Steve Burnell on behalf of Interested Party Courtesy NEF
Steve.Burnell@gmlaw.com,
sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com

Russell Clementson on behalf of U.S. Trustee United States Trustee (SV)
russell.clementson@usdoj.gov

Sandford L. Frey on behalf of Debtor Hawkeye Entertainment, LLC
sfrey@leechtishman.com,
lmoya@leechtishman.com;dmulvaney@leechtishman.com;rsokol@leechtishman.com;kgutierrez@leechtishman.com;NArango@LeechTishman.com

Robyn B Sokol on behalf of Debtor Hawkeye Entertainment, LLC
rsokol@leechtishman.com,
rsokol@leechtishman.com;lmoya@leechtishman.com;dmulvaney@leechtishman.com;kgutierrez@leechtishman.com;NArango@LeechTishman.com

Alan G Tippie on behalf of Interested Party Courtesy NEF
Alan.Tippie@gmlaw.com,
atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  December 19, 2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Debtor**
Hawkeye Entertainment, LLC
Attn: Adi McAbian, Pres. Of Saybian Gourmet, Inc.
14242 Ventura Boulevard, # 210
Sherman Oaks, CA 91423

The Honorable Martin R. Barash
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 342
Woodland Hills, CA 91367

☐ Service information continued on attached page.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 19, 2023 | Denise Walker | */s/ Denise Walker* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**