Sandford L. Frey (State Bar No. 117058)
Dennette A. Mulvaney (State Bar No. 133423)
Robyn B. Sokol (State Bar No. 159506)
**LEECH TISHMAN FUSCALDO & LAMPL, INC.**
200 S. Los Robles Avenue, Suite 300
Pasadena, California 91101
Telephone: (626) 796-4000; Facsimile: (626) 795-6321
E-mail: *sfrey@leechtishman.com*
        *dmulvaney@leechtishman.com*
        *rsokol@leechtishman.com*

Reorganization Attorneys for Hawkeye Entertainment, LLC,
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No.: 1:23-bk-11501-MB |
| **HAWKEYE ENTERTAINMENT, LLC,** | Chapter 11 |
| Debtor and Debtor-in-Possession. | **DEBTOR AND DEBTOR IN POSSESSION HAWKEYE ENTERTAINMENT, LLC'S OPPOSITION TO MOTION TO DISMISS THE CHAPTER 11 CASE UNDER 11 U.S.C. § 1112(b)(1)** |
| | *[Declarations of Adi McAbian, Fadi K. Rasheed, and Sandford L. Frey are Filed Contemporaneously in Support of Debtor and Debtor in Possession Hawkeye Entertainment, LLC'S Opposition To Motion To Dismiss The Chapter 11 Case Under 11 U.S.C. §1112(b)(1)]* |
| | *Date:* January 9, 2024<br>*Time:* 1:30 p.m.<br>*Ctrm:* 303 |

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

    A.  Introductory Statement.................................................................................1

    B.  Procedural History .......................................................................................5

II.  RELEVANT FACTS AND EVIDENCE ............................................................7

III.  THE INSTANT MOTION...................................................................................12

IV.  MEMORANDUM OF POINTS AND AUTHORITIES ...................................13

    A.  Legal Standard for Dismissal Under Section 1112(b) of the Bankruptcy Code....13

    B.  Smart Capital Does Not Allege Any of the Enumerated Example of "Cause" to Dismiss the Chapter 11 Case ...............................................................15

    C.  Smart Capital Has Failed to Prove That the Debtor Filed the Chapter 11 Case in Bad Faith ........................................................................................16

        1.  *The Debtor is Not Trying to Abuse the Bankruptcy Process and Invoke the Automatic Stay for Improper Purposes* ...................................18

        2.  *The Debtor Has a Legitimate Reorganization Purpose and Need for Bankruptcy Protection* ...............................................................23

        3.  *Application of the St. Paul Factors Weighs in Favor of the Debtor* ..........26

    D.  Smart Capital Has Failed to Prove that Dismissal is in the Best Interests of the Debtor's Creditors and its Estate ........................................27

V.  CONCLUSION.....................................................................................................29

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Arnold*,
   806 F.2d 937 (9th Cir. 1986) ...............................................................................16

*In re Avalon Hotel Partners, LLC*,
   302 B.R. 377 (Bankr. D. Or. 2003)......................................................................16

*Baroni v. Seror (In re Baroni)*,
   36 F.4th 958 (9th Cir. 2022) ...............................................................................15

*In re Bowers Investment Company, LLC*,
   553 B.R. 762 (Bankr. D. Alaska 2016)................................................................18

*In re Chameleon Sys., Inc.*,
   306 B.R. 666 (N.D. Cal. 2004) ...........................................................................25

*In re Escondido West Travelodge*,
   52 B.R. 276 (S.D. Cal 1985) ...............................................................................25

*Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*,
   886 F.2d 859 (1989)............................................................................................26

*Grimes v. U.S. (In re Grimes)*,
   117 B.R. 531 ......................................................................................................26

*In re Hawkeye*
   49 F.4th 1232 (9th Cir. 2022) .............................................................................23

*In re James Wilson Assocs.*,
   965 F.2d 160 (7th Cir. 1992) ..............................................................................17

*Marsch v. Marsch (In re Marsch)*,
   36 F.3d 825 (9th Cir. 1994) ................................................................................16

*In re Marshall*,
   298 B.R. 670 (Bankr. C. D. Cal. 2003)................................................17, 21, 22, 24

*In re Mense*,
   509 B.R. 269 (Bankr. C.D. Cal. 2014)................................................15, 16, 17

*In re Natco Indus., Inc.*,
   54 B.R. 436 (Bankr. S.D.N.Y. 1985) ..................................................22, 23

*Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*,
   2011 WL 4502102 (B.A.P. 9th Cir. Aug. 26, 2011)............................................19

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

*St. Paul Self Storage Ltd. Partnership v. Port Auth. of the City of St. Paul (In re St. Paul Self Storage Ltd. Partnership)*,
    185 B.R. 580 (B.A.P. 9th Cir. 1995)...................................................................18

*In re Stolrow's, Inc.*,
    84 B.R. 167 (B.A.P. 9th Cir. 1998)...................................................................19

*In re Studio Five Clothing Stores, Inc.*,
    192 B.R. 998 (Bankr. C.D. Cal. 1996).............................................................26

*Sullivan v. Harnisch (In re Sullivan)*,
    522 B.R. 604 (B.A.P. 9th Cir. 2014).................................................15, 22, 27

*In re Windmill Farms, Inc.*,
    841 F.2d 1467 (9th Cir. 1988) ....................................4, 13, 19, 20, 25, 26

**Federal Statutes**

11 U.S.C. § 365...............................................................................3, 4, 5, 13, 23

11 U.S.C. § 365(b)(1)(A)..............................................................................7, 25

11 U.S.C. § 365(b)(1)(B) and (C)......................................................................7

11 U.S.C. § 365(d)(3) and (2).............................................................................7

11 U.S.C. § 1112(b)....................................................................14, 17, 22, 27

**State Statutes**

Cal. Code Civ. Proc. § 1161 .....................................................3, 4, 5, 20, 25

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

iii

By and through this *Debtor and Debtor in Possession Hawkeye Entertainment, LLC's Opposition to Motion to Dismiss the Chapter 11 Case Under 11 U.S.C. § 1112(b)(1)* and the contemporaneously filed Declarations of Adi McAbian ("**McAbian Dec.")**, Fadi K. Rasheed ("**Rasheed Decl.**") and Sandford L. Frey ("**Frey Decl.**"), Hawkeye Entertainment, LLC, debtor and debtor in possession in the above-captioned case ("**Debtor**"), hereby opposes the *Motion to Dismiss the Chapter 11 Case Under 11 U.S.C. § 1112(b)(1)* [Dkt. No. 44] ("**Motion**") filed by Smart Capital Investments I, LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC, Smart Capital Investments IV, LLC, and Smart Capital Investments V, LLC ("**Smart Capital**").  The Motion should be denied in its entirety for the reasons set forth below.

## I.    INTRODUCTION

### A.    Introductory Statement

Accepting Smart Capital's contention that the Chapter 11 Case was allegedly filed in bad faith requires a suspension of disbelief.  Accepting the premises of the Motion requires that the reader ignore, among other <u>facts</u>: (a) the decade long unrelenting, fanatical efforts of Mr. Michael Chang (the principal behind Smart Capital) to wrongfully terminate the Lease (as defined below); (b) the terms of a settlement agreement; (b) the rulings of the Bankruptcy Court, the District Court, the Ninth Circuit Court of Appeals and the California Superior Court; (c) the several reported decisions adverse to Smart Capital; and (d) the findings of those same Court's that Mr. Chang lacked credibility, failed to meet his burden of proof on any of his contentions and recognizing Mr. Chang's crusade to wrongfully terminate the Lease for his own economic gain.

Accepting Smart Capital's suggestion that this is merely a two-party dispute requires that the Court ignore the interests of other creditors (who should have been, but have been prevented from, being paid in full because of the enormous legal expenses that the Debtor has been forced to incur as a result of Mr. Chang's undeterred litigiousness, bad faith appeals, and ceaseless unsupported bad faith default notices) and the interests of the Debtor's equity holders.  Moreover, it requires that the Court ignore that (a) the loss of the sublease (which is inextricably intertwined with the Lease) and the damage that will result if the Lease and a fortiori the Sublease is terminated; (b) the loss of a lucrative operating business; (c) the interests of creditors and equity holders of the sublessee; (d) the

L E E C H   T I S H M A N   F U S C A L D O   &   L A M P L ,   I N C .
2 0 0   S O U T H   L O S   R O B L E S   A V E N U E ,   S U I T E   3 0 0
P A S A D E N A ,   C A L I F O R N I A   9 1 1 0 1
6 2 6 . 7 9 6 . 4 0 0 0

1    loss of the jobs of hundreds of employees of the subtenant; (e) the claims of the sublessee against the

2    Debtor resulting from termination of the sublease; and (f) the public's interest in the maintaining the

3    viability of an entertainment venue that is ranked among the top ten in the world.

4        If the Court and parties in interest look beyond the hyperbole and unsupportable efforts at

5    character assassination contained in the Motion, there is a material distinction between the pleadings

6    filed by the Debtor and the pleadings filed by Smart Capital.  Whereas the Debtor's pleadings set

7    forth the procedural history and actual findings and rulings of the Bankruptcy Court, the District

8    Court, the Ninth Circuit Court of Appeals and the California Superior Court, the Motion once again

9    spews Mr. Chang's unsupported, fantastical allegations regarding the Debtor's purported non-

10   monetary defaults of the Lease and alleged wrongdoings, which have already been rejected by the

11   trial judge and appeal judges and raise purportedly new contentions that were previously released,

12   adjudicated adversely to Smart Capital or which it failed to raise at trial.  Apart from Mr. Chang's

13   self-appointed quasi-governmental unilateral proclamation, no governmental authority has cited the

14   Debtor for alleged violations of the CUB or the law.  Apart from Mr. Chang's unrelenting reports to,

15   and haranguing of, every governmental and quasi-governmental agency that will give him audience,

16   there is nevertheless no admissible evidence presented in the Motion establishing that the Debtor or

17   its subtenant have been cited for creating a nuisance or for any violations of the CUB or other

18   applicable law by the City, City Planning, the ABC, the Vice Division of the LAPD, the LAPD

19   itself, or any other governmental or quasi-governmental agency.  The reason is that none exist.

20       Furthermore, the notion that the Debtor is forum shopping by filing this Chapter 11 case is

21   without merit and unsupported by the record.  On the contrary, it is Smart Capital that is forum

22   shopping in furtherance of a new strategy and the Motion is concocted to further such new strategy.

23   Based upon history, and no doubt upon legal advice from its counsel, Smart Capital is well aware

24   that this Court will require admissible evidence in furtherance of the Debtor's

25   Assumption Motion (defined below) and that it will require that the parties meet their respective

26   burdens of proof.  Despite its hyperbole, Smart Capital surely does not want that to happen . . .

27   again.  Smart Capital is likewise aware that the District Court, the Ninth Circuit Court of Appeals

28   and the California Superior Court are by now all familiar with Smart Capital and its history of

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

2

1   meritless default notices.  Equally disingenuous is Smart Capital's suggestion that the City is

2   investigating.  This is patently false.  What Smart Capital fails to inform this Court is that after being

3   ordered by the Superior Court to execute and deliver the CUB renewal application, Smart Capital

4   surreptitiously ran to City Planning and in flagrant disregard to the Superior Court's order threatened

5   to sue the City of Los Angeles if it accepted the CUB application.  That failed too, but only after

6   many hours of meetings between the Debtor and City officials and the presentation of the actual

7   records of all the proceedings.

8         Despite Smart Capital's argument that the issues can be litigated in the State Court, it

9   intentionally fails to disclose its efforts to delay and subvert the prosecution of the State Court case

10  through means of failing to respond to discovery, failed Anti-SLAPP motions and meritless appeals

11  which keep getting dismissed.  Smart Capital's tactics of delay, delay, delay in the State Court action

12  deprives the Debtor of a fair and reasonable opportunity to present the evidence to a court and have

13  Smart Capital's contentions adjudicated in the pending Superior Court action in advance of the

14  automatic termination of the right to possession pursuant to California Code of Civil Procedures §

15  1161 and applicable law.  Section 365 affords the Debtor the opportunity and ability to have those

16  issues reasonably and fairly presented to this Court.[1]  Conversely, it is not unduly prejudicial to

17  Smart Capital (except to the extent it foils Smart Capital's strategic plan to summarily terminate the

18  Lease) as Smart Capital will likewise be afforded a full and fair opportunity to present evidence to

19  this Court in support of its contentions.

20        What Smart Capital also fails to reveal to this Court is its newest tactic.  Smart Capital has

21  retained an experienced unlawful detainer lawyer.  Smart Capital contends that it did not file an

22  unlawful detainer action.  Yet, notably it does not state that it will not.  Despite the obfuscatory

---

[1] Even the intentional timing of the service of the Motion reveals Smart Capital's hidden agenda to deprive the Debtor of a full and fair opportunity to defend itself.  This Chapter 11 was filed over two months ago.  Yet, no dismissal motion was filed until December 19, 2023.  During the Case Management Conference held by this Court on November 28, 2023,  Smart Capital informed the Court of its intention to file its motion to dismiss.  Nevertheless, Smart Capital intentionally delayed filing the Motion so that the Debtor's opposition was due the day after the Christmas holiday.  In sharp contrast, the Debtor initially intended to delay the filing of assumption motion until after the new year out of courtesy to opposing counsel and its staff, and it made the decision to file the assumption motion only after Smart Capital filed its Motion so that the matters could be heard contemporaneously.

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

4862-1429-0072, v. 1

1   language of the Motion, there is no doubt that Smart Capital will file the unlawful detainer action

2   (which can easily be confirmed if the Debtor is permitted an opportunity to conduct discovery).  By

3   avoiding an evidentiary hearing on assumption before this Court and delaying the State Court Action

4   indefinitely with its Anti-SLAPP motions, meritless appeals and refusal to respond to discovery,

5   Smart Capital intends to terminate the right to possession and proceed summarily with eviction in

6   the unlawful detainer court (giving the Debtor only five days to respond and lay out a decade long

7   history) seeking an adjudication in a court unfamiliar with the history in the hope that the unlawful

8   detainer court will summarily buy into Smart Capital's allegations set forth in the Three-Day

9   Notices.

10       Absent the Chapter 11 case, the Debtor is powerless to prevent it.  After over a decade of

11  litigation and after years of rulings in the Debtor's favor, it is unjust and unfair to permit Smart

12  Capital to unilaterally terminate the Debtor's and the subtenant's right to possession, evade the

13  Debtor's rights under Section 365, and circumvent a reasonable and fair opportunity to present the

14  facts, thereby affording Smart Capital the ability to again present the same meritless claims and

15  contention that have been the subject of a prior settlement and trial in an unlawful detainer court

16  completely unfamiliar with the background.

17       Moreover, despite Smart Capital's protestations to the contrary, the effect of the Three-Day

18  Notices under *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988) and California Code

19  of Civil Procedures § 1161 is material and prejudicial to the Debtor and the subtenant, and the

20  termination of the right to possession upon expiration of the three days without bankruptcy will have

21  a materially adverse effect upon the renewal of the CUB, and Smart Capital well knows it.  The State

22  Court Action was initiated by the Debtor in response to Smart Capital's wrongful refusal to execute

23  the CUB application after nearly a year of delays on the part of Smart Capital.  Due to the nature of

24  unlawful detainer proceedings, it will proceed to summary adjudication long before trial on the State

25  Court Action and it will be before an entirely new Judge completely unfamiliar with the history, and

26  Smart Capital well knows that too.

27       This Court can hear and determine the matter and related issues.  This Chapter 11 case is the

28  only viable means of affording the Debtor a full and fair opportunity to present its case and compel

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

4

1    Smart Capital to put forth evidence to prove its contentions without substantial prejudice to the

2    Debtor's rights.  On balance, proceeding in this Court will not be unduly prejudicial to Smart Capital

3    because Smart Capital will have a full and fair opportunity to present the evidence in support of the

4    contentions that the Debtor is purportedly in default under the Lease.

5        Furthermore, when it comes to alleged non-monetary defaults, there is a material difference

6    between the legal requirements for assumption under Bankruptcy Code § 365 and California Code of

7    Civil Procedures § 1161 as a debtor can cure (or not cure, if uncurable), assure and compensate.

8    That is not the case in State Court.  The legal distinction was recognized and noted by the 9th Circuit

9    Court of Appeals in the previously reported decision involving the very same parties before the

10   Court on this Motion.  For Smart Capital to suggest otherwise is patently misleading.

11       Smart Capital has abused the judicial process and misused the judicial system.  It has lost a

12   trial and pursued several appeals, each of which it has lost.  An affirmative injunction was obtained

13   to force Mr. Chang to execute the CUB (as defined below), then Smart Capital filed an appeal that

14   was dismissed.  Smart Capital is continually filing vague and conflicting Three-Day Notices,

15   including allegations that span the same time as the previous Chapter 11 and prior motion to assume.

16   Smart Capital has failed to adequately disclose information in the Three-Day Notices regarding the

17   alleged nuisance.  When the Debtor propounded and served discovery in the State Court Action

18   (discussed below) on the five Smart Capital entities, three refused to respond at all, and two

19   responded only with blanket objections.  When Smart Capital is called to account, it filed an Anti-

20   SLAPP motion which was denied in part, and then files an appeal from the order, blocking

21   discovery.  Demonstrating that the appeal is nothing more than a ruse to delay the Debtor for

22   strategic reasons, the appeal has been dismissed twice for failure to comply with the rules.

23       **B.    Procedural History**

24       This case arises from a prolonged contentious relationship between the Debtor and its various

25   landlords, beginning with  Pax American Development, LLC ("**Pax**"), then New Vision Horizon,

26   LLC ("**New Horizon**"), and ultimately Smart Capital.[2]  In particular, Michael Chang, acting first

27   through New Vision and then through Smart Capital, has been engaged in a relentless campaign to

28

_____

[2] Pax, New Horizon, and Smart Capital are sometimes generically referred to as "**Landlord**."

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

4862-1429-0072, v. 1

1  wrongfully terminate the Debtor's Lease, a concerted effort that has persisted now for over a decade,

2  forcing two prior Chapter 11 filings by the Debtor to preserve the Lease, and costing the Debtor and

3  its subtenant, W.E.R.M. Investments, LLC ("**WERM**"), millions of dollars in professional fees and

4  costs, which has in turn delayed payments to the Debtor's creditors.

5      The Debtor's current Chapter 11 Case, necessitated by Smart Capital's most recent effort to

6  wrongfully terminate the Lease, was not filed in bad faith, but as a necessary response to Smart

7  Capital's ongoing improper attempts to immediately terminate the Debtor's right to possession of the

8  Leased Premises, which have seriously jeopardized the Debtor's ability to, among other things,

9  renew the CUB License that is necessary to WERM's ability to operate Exchange LA pursuant to the

10  terms of the Sublease, jeopardizing the viability of both the Debtor's and WERM's operations as a

11  whole, to the severe detriment of the Debtor's and WERM's creditors and other parties in interest.

12      The sole basis for the Motion is Smart Capital's unsupported and incorrect contention that

13  the current Chapter 11 case was filed in "bad faith."  It was not.  As explained in nearly every

14  pleading filed with this Court to date, the Debtor made the very difficult decision to file for

15  Bankruptcy protection to prevent the termination of the right to possession under the *Lease*

16  *Agreement*, dated July 27, 2009, ("**2009 Lease**") as modified by the *First Amendment to Lease*

17  *Agreement*, dated August 19, 2014 ("**First Amendment**"), and any and all options and extensions

18  thereunder and related thereto ("**Options**" and together with the 2009 Lease and First Amendment,

19  the "**Lease**"), between (i) Smart Capital, as successor-in-interest to New Horizon (successor-in-

20  interest to PAX) and (ii) the Debtor for the premises described in the Lease on the real property

21  located at 618 South Spring Street, Los Angeles, California ("**Premises**") (the whole of which is

22  sometimes referred to as the "**Building**").  The Premises is located in the twelve-floor Building

23  (excluding the basement) on Spring Street. [The Building, excluding the Premises used by the

24  Debtor, is hereafter referred to as the "**Tower**"].

25      Not only is the Debtor's case filed in good faith, but dismissal is not in the best interest of

26  creditors.

27      To the extent that this Court does not deny the Motion in its entirety, the Debtor requests an

28  evidentiary hearing.  Mr. Chang is the only witness providing substantive (albeit inaccurate and

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

6

1  often contradictory testimony to prior statements he has made under oath).  The Debtor should be

2  given an opportunity to cross-examine Mr. Chang regarding the testimony he has provided in

3  support of the Motion.

4  **II.    RELEVANT FACTS AND EVIDENCE**

5       A detailed background of the extensive history regarding the Lease and the efforts of Mr.

6  Chang to improperly terminate the lease which lead to the filing of the Debtor's Chapter 11 Case and

7  two prior bankruptcy cases is set forth in the *Notice of Motion and Motion of Hawkeye*

8  *Entertainment, LLC, Debtor and Debtor-in-Possession for an Order (1) Authorizing the Assumption*

9  *of Non-Residential Real Property Lease and Sublease, and (2) Determining the Debtor and*

10  *Sublessor not to be in Breach or Default, Thereby Deeming Them in Compliance with 11 U.S.C. §*

11  *365(b)(1)(A) and Excusing the Debtor from Any Additional Compliance with 11 U.S.C. §*

12  *365(b)(1)(B) and (C); or Alternatively, Extending the Time Period Within Which the Debtor May*

13  *Assume or Reject Unexpired Non-Residential Leases and Executory Contracts* [Dkt. No. 52]

14  ("**Assumption Motion**"), the *Notice of Motion and Motion of Hawkeye Entertainment, LLC, Debtor*

15  *and Debtor-in-Possession for an (1) Order Deeming Debtor in Compliance with 11 U.S.C.*

16  *§ 365(d)(3) and (2) Authorizing the Debtor to Pay All Monetary Obligations Pursuant to the Lease*

17  *into the Rental Trust Account* [Dkt. No. 57] ("**Lease Compliance Motion**"),[3] the Frey Decl.,

18  McAbian Dec. and Rasheed Decl.  Rather than repeat the extensive background in its entirety here,

19  in the interest of brevity, the Debtor incorporates by reference the entirety of the "Preliminary

20  Statement and Relief Requested" and "Statement of Facts" that are set forth in the Assumption

21  Motion and the Lease Compliance Motion.[4]

22       With respect to the present Motion, this Chapter 11 Case was precipitated by the service of

23  three (3) Three-Day Notices on the Debtor on October 16, 2023 by Smart Capital, each of which is

24  defective and each of which makes allegations regarding purported non-monetary breaches of the

25  Lease that are patently and provably false.  Among other things, one of the Three-Day Notices

---

27       [3] The hearings on the Assumption Motion and the Lease Compliance Motion are scheduled for hearing on the same date and time as that Motion.

28       [4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Frey Decl., McAbian Dec., Assumption Motion, and the Lease Compliance Motion.

4862-1429-0072, v. 1

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

alleges that alcohol is being served illegally on the Leased Premises based on allegations of fraud in obtaining the Original CUB in 2013.  Despite Mr. Chang's continual efforts to insert himself into the role of a self-appointed regulatory agency, the City, not Smart Capital, is responsible for the issuance of the CUB.  Notably, however, Smart Capital has no basis upon which to raise such a claim based on, among other things, the mutual releases of claims in the New Vision Settlement Documents wherein the parties, among other things, resolved all disputes between them, the 2009 Lease was reaffirmed and ratified, WERM was approved as the Sublessee and the parties entered into the First Amendment.  McAbian Dec., ¶¶ 15-17, 38, 39.  Furthermore, the statements in the Motion and testimony by Mr. Chang that he recently discovered this alleged fraud are false.  Rasheed Decl. These alleged bad acts with respect to the CUB have been raised previously by Mr. Chang and have been released or found not to exist at all.  McAbian Dec., ¶¶ 15-17, 38, 39, Rasheed Decl.

Moreover, Smart Capital's August 5 2019 Default Letter and indeed almost the entirety of the five-day trial before the Honorable Maureen Tighe on the Debtor's motion to assume the Lease in the Second Chapter 11 case centered on alleged defaults under the CUB including the purported improper execution of the CUB.  McAbian Dec., ¶¶ 18-24, 39, Rasheed Decl.  Additionally, the City of Los Angeles Planning Commission, the only party with standing to raise such issues, has never raised this issue.  McAbian Dec., ¶ 39.  Inasmuch as the City issued the CUB, Smart Capital has no standing to unilaterally declare the CUB to be invalid, and it is certainly no basis for suddenly unilaterally asserting a forfeiture of the Lease.  Smart Capital only raised this bogus accusation in response to its failed attempts to block the filing of the application for renewal of the CUB.

Pursuant to the Three-Day Notices, each of which declares a forfeiture, the Debtor's right to possession of the Leased Premises could terminate under applicable law upon the expiration of just three days.  The timing of the Three-Day Notices was not coincidental, as Smart Capital knows that the Debtor is in the process of renewing its CUB for the Leased Premises.  The Three-Day Notices were issued in flagrant bad faith and for the improper purpose of wrongfully terminating the Lease and causing a denial of the CUB, thereby achieving indirectly that which it has been unable to achieve directly for over a decade, despite the rulings and warnings of the Ninth Circuit and the California Superior Court.

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

The Three-Day Notices are just another ruse concocted by Mr. Chang and Smart Capital to improperly terminate the Lease in a fashion that will irreparably harm the Debtor, WERM, the creditors of both the Debtor and WERM and the more than one-hundred (100) employees of WERM, and others before the Debtor can obtain an anti-forfeiture ruling in its favor that will again demonstrate that the claimed non-monetary defaults are utterly without merit.

Specifically, Smart Capital has manipulated the Three-Day Notices to ensure that the Debtor's right to possession under the Lease is deemed terminated as of the time of the CUB renewal hearing, with the resulting risk that the CUB would likely not be renewed or would at the very least be deferred given the state of uncertainty over the Debtor's right to possession. Without the CUB renewal, Exchange LA would be unable to operate. Even when the Debtor ultimately succeeds in an unlawful detainer proceeding, it would need to reapply for the CUB, a process that, unlike a renewal, takes many years. With Exchange LA shuttered during this period, the Debtor's primary assets would be stripped of their value.

The Debtor's most valuable assets are the Lease and the Sublease, and the Debtor's successful reorganization is wholly dependent on its ability to assume the Lease and Sublease for the Leased Premises. McAbian Dec., ¶¶ 5, 23, 38, 40, 41. The Debtor filed its Chapter 11 Case on the Petition Date to stay the imminent termination of its rights to occupy the Premises and to protect its valuable assets for the benefit of its creditors, its equity holders, WERM (its subtenant, which, if the Lease is terminated, will undoubtedly assert claims against the Debtor under the Sublease), and WERM's creditors, hundreds of employees, and numerous patrons that enjoy the benefits of Exchange LA.

Exchange LA is a popular and highly successful entertainment venue that has been operating, and continues to operate successfully, from the Leased Premises. McAbian Dec., ¶¶ 5-7, 25, 42. WERM books the Leased Premises for music events, private parties, corporate events, live entertainment, fashion shows, and more. McAbian Dec., ¶¶ 5-7, 25. In connection with its business operations, Exchange LA regularly employs approximately fifty to seventy regular employees and independent contractors, as well as approximately twenty security guards, six valet attendants, and thirty marketing teams members (which varies depending on the event). McAbian Dec., ¶ 7.

9

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

Literally thousands of people wait in line to pass the rigorous security clearance to enter a venue that features some of the most sought-after DJs and producers in the world, as evidenced by the fact that Exchange LA is ranked in the top 10 entertainment venues in the world.  McAbian Dec., ¶ 7.

To preserve the Lease and Sublease from termination, the Debtor was once again forced by Smart Capital's questionable litigation tactics to file for relief under Chapter 11.  It is apparent that Smart Capital intends to continue its endless pattern of manufacturing alleged defaults in a blatant attempt to terminate the Lease and Sublease so that it can reap the benefit of the substantial improvements that have been made by the Debtor and WERM to the Property, as well as the upswing in the local real estate market, by either leasing the Premises for substantially more than the rent provided for in the Lease or selling the Property for a considerable windfall.

Since the Petition Date, the Debtor has timely filed his Schedules of Assets and Liabilities ("**Schedules**") and Statement of Financial Affairs ("**SOFA**") [Dkt. No. 16], attended an Initial Debtor Interview ("**IDI**") with the Office of the United States Trustee on November 9, 2023, attended the meeting of creditors conducted on November 14, 2023 [Dkt. No. 4], complied with the Office of the United States Trustee's reporting requirements and all orders of this Court.  McAbian Dec., ¶ 44.  In addition, the Debtor is maintaining appropriate insurance and has not made any unauthorized use of cash collateral.  *Id.*

The Debtor has also, contrary to Smart Capital's misleading suggestions, continued to tender rent payments to Smart Capital since the Petition Date.  Smart Capital alludes to monetary defaults, despite the fact that none exist or have been raised in the Three-Day Notices, by asserting broadly that "Smart Capital Has Not Received Rents for Approximately Eight Out Of The Last 14 Years." *See* Motion at p. 36:18-19.  At best this is a gross misrepresentation in the Motion and the declaration of Mr. Chang.  The admitted fact that the Debtor was *offsetting* rents against other *obligations owed by the Landlord* (*id.* at 36:20-23), does not mean that the Debtor did not make the requisite rent payments.  Those offsets were entirely proper, and Court sanctioned.

In the Debtor's first Chapter 11 case, the Debtor properly setoff rent against obligations that were the responsibility of the Landlord under the Lease.  McAbian Dec., ¶ 17.  And in the Second Chapter 11 case, the Debtor paid rent on a monthly basis into the Rental Trust Account pursuant to

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

1  orders from Judge Tighe[5] and the District Court which were and are to be used to satisfy the

2  substantial attorneys' fee awards in the Debtor's favor as a result of Smart Capital's unsuccessful

3  previous attempts to oppose assumption of the Lease and appeals of such ruling.  Moreover, since

4  the Petition Date, the Debtor has tendered timely rent payments to Smart Capital, which Smart

5  Capital has refused to deposit, with exception of a single check in the amount of $14,256.34.

6  McAbian Dec., ¶ 43.

7        It is the Debtor's intention to file a plan of reorganization as soon as reasonably practical.

8  McAbian Dec., ¶ 45.  Barring any unforeseen claims, the Debtor intends for such plan to provide for

9  a 100% distribution to creditors conditioned upon assumption of the Lease and the Sublease.  *Id.*

10        Finally, buried in a Declaration attached to the Motion, Mr. Chang accuses the Debtor,

11  through its principal of "abusing legal actions with the intent of gaining control of this Property.

12  Motion, pp. 37:2-3, 16-17, Chang Decl., ¶ 42.  Nothing could be farther from the truth.  The Tower

13  that comprises the unleased portion of the Property is commonly referred to as the "Tower of Terror"

14  by counsel for the Debtor and the Debtor because it is in decrepit condition, hazardous, and unsafe.

15  McAbian Dec., ¶ 46; Frey Dec., ¶ 20.  There are exposed pipes, human waste in the bathrooms that

16  has been there for years, and non-functioning fire alarms on at least two floors (5 and 7).  McAbian

17  Dec., ¶¶ 46-47.  As a result, no Certificate of Occupancy has been issued for the Tower.  *Id.*  Neither

18  the Debtor nor its principal have any intention or desire of gaining control of the Property.  *Id.*  All

19  the Debtor and WERM and their principals desire is to enjoy the use and occupancy of the Premises

20  for their intended purposes for the agreed upon term of the Lease sans Mr. Chang's relentless

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

---

22  [5] The Stay Order provided, among other things:

23  **ORDERED** that (a) payment of the Rental Obligations into the Rental Trust
    Account as provided in this Order shall be full and complete compliance with the
24  Debtor's monetary obligations under the lease; (b) that notwithstanding any
    provision of the Lease to the contrary, timely payment of the Rental Obligations into
25  the Rental Trust Account shall not be grounds for default under the Lease; and (c)
    provided payment of the Rental Obligations has been made by the Debtor into the
26  Rental Trust Account, the Landlord shall be precluded from declaring a default or
    event of default under the Lease arising from, or related to, such Rental Obligations.

27

28  Stay Order at p. 4:1-7.

1    harassment and bogus and meritless default notices.

2    ## III.    THE INSTANT MOTION

3     Just two months into this case, and contemporaneously with the Debtor's filing of the

4    Assumption Motion and the Lease Compliance Motion, Smart Capital has filed the instant Motion,

5    seeking dismissal of the Debtor's Chapter 11 Case on the sole grounds that it was allegedly filed in

6    bad faith.  In support of its position, Smart Capital asserts that the Chapter 11 Case is essentially a

7    two-party dispute between the Debtor and Smart Capital that can be promptly adjudicated in state

8    court, the Debtor essentially has only one asset, the Debtor has no ongoing business to reorganize,

9    the Debtor has few non-insider unsecured creditors, and the Debtor has insufficient cash flow to

10    fulfill a plan of reorganization.  Motion at pp. 13:7-20:11.  Smart Capital further asserts that the

11    Chapter 11 Case is nothing more than a bad faith litigation tactic, that the Debtor is guilty of forum

12    shopping, and that this Court should further find bad faith from the fact that the Debtor has filed

13    multiple Chapter 11 cases and currently has two such cases pending.  *Id.* at pp. 20:17- 23:13.

14    Finally, Smart Capital asserts that dismissal of the Chapter 11 Case is in the best interest of the

15    Debtor's creditors and its estate "because the instant filing is a bad faith filing."  *Id.* at p. 23:22-23.

16    Smart Capital again notes that the Lease is the Debtor's principal asset and suggests that creditors

17    will not be harmed if the case is dismissed.  *Id.* at p. 23:23-26.  It finally asserts that the impact on

18    WERM is irrelevant because WERM itself is not in bankruptcy, ignoring the fact that WERM, as the

19    subtenant of the Leased Premises, is directly impacted by Smart Capital's actions and is clearly a

20    party in interest with respect to any matters impacting the Lease.  *Id.* at p. 23:27-28.

21     Contrary to Smart Capital's misleading and self-serving assertions, however, the Debtor did

22    not file the Chapter 11 Case in bad faith and is not seeking to abuse the bankruptcy process, or to

23    unreasonably harass Smart Capital or to forum shop.  Rather, the Debtor has a legitimate need to

24    reorganize by assuming the Lease and Sublease, as well as the good faith intention to move forward

25    with the management of its affairs and assets to ensure the Debtor's continuing operations and

26    provide full payment on all allowed claims, a result that is expressly contemplated by and permitted

27    by the Bankruptcy Code.  As discussed below, only through a bankruptcy case may the Debtor

28    protect the Lease and Sublease because the Bankruptcy Code, unlike California state law, will

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

1  provide the Debtor the opportunity to "cure" any purported defaults to the extent defaults are proven

2  to exist before the Lease and Sublease are automatically terminated with the running of the three

3  days from the 3-Day Notices. *See In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988)

4  (Once the three-days have run from the issuance of the 3-day Notice, the lease is terminated.).

5      Further, Smart Capital asserts that this is merely a two-party dispute, knowing full well that

6  during the trial and through the plan confirmation process, the Bankruptcy Court found that the

7  Debtor had legitimate creditors with allowed claims and already rejected the contention that this was

8  merely a two-party dispute.  It is not.  There exist several creditors, equity holders and third parties

9  that are directly impacted by the Lease and Sublease.  Income of the Debtor is derived from income

10  from the Sublease which is, in turn, derived from income from operations of Exchange LA operated

11  by the related entity, WERM, which has numerous employees that depend on the operations and

12  numerous creditors.  The Bankruptcy Code, and in particular 11 U.S.C. §365, provide a way to

13  protect the Lease and Sublease for the benefit of all creditors and interested parties while allowing

14  Smart Capital through the Lease Assumption Motion to substantiate and prove its purported

15  "nuisance" violations against the Debtor.  The 3-Day Notices are defective, and despite formal and

16  informal requests that Smart Capital provide evidence to support the 3-Day Notices, to date only

17  blanket objections to discovery requests have been provided and no details regarding the alleged

18  non-monetary defaults have been provided by Smart Capital.  The Debtor's bankruptcy case will

19  allow Smart Capital to demonstrate the merits of the 3-Day Notices while protecting the Lease from

20  automatic termination.

21      Accordingly, because cause does not exist for dismissal of the Chapter 11 Case, and because

22  dismissal would not be in the best interest of the Debtor's creditors and its estate, the Motion must

23  be denied.

24  **IV.    MEMORANDUM OF POINTS AND AUTHORITIES**

25      **A.    Legal Standard for Dismissal Under Section 1112(b) of the Bankruptcy Code**

26      Smart Capital seeks dismissal of the Chapter 11 Case pursuant to Section 1112(b)(1) of the

27  Bankruptcy Code, which provides as follows:

28      Except as provided in paragraph (2) and subsection (c), on request of a party in
       interest, and after notice and a hearing, the court shall convert a case under this

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).  "Cause" for purposes of Section 1112(b)(1) includes:

(A)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B)    gross mismanagement of the estate;

(C)    failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D)    unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E)    failure to comply with an order of the court;

(F)    unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G)    failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H)    failure timely to provide information or attend meetings reasonable requested by the United States trustee (or the bankruptcy administrator, if any);

(I)    failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J)    failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K)    failure to pay any fees or charges required under chapter 123 of title 28;

(L)    revocation of an order of confirmation under section 1144;

(M)    inability to effectuate substantial consummation of a confirmed plan;

(N)    material default by the debtor with respect to a confirmed plan;

(O)    termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P)    failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11. U.S.C. § 1112(b)(4).

"The movant bears the burden of establishing by a preponderance of the evidence that cause

14

exists." *Sullivan v. Harnisch (In re Sullivan),* 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014).  *See also*

*Baroni v. Seror (In re Baroni),* 36 F.4th 958, 966 (9th Cir. 2022) ("We take this opportunity to . . .

establish that the party seeking relief under Section 1112(b)(1) has the initial burden of persuasion to

establish that cause exists for granting such relief.").  "Establishing cause is not definitive, of course,

because the statute makes clear that ***even where cause is established, the bankruptcy court must
still consider the best interests of creditors and the estate***.  It is also well established that bankruptcy

courts have ***broad discretion*** in deciding whether to grant relief under Section 1121(b)(1), ***even
where cause is established***." *In re Baroni,* 36 F.4th at 966 (citations omitted) (emphasis added).  *See
also In re Sullivan,* 522 B.R. at 612 ("If cause is established, the decision whether to convert or

dismiss the case falls within the sound discretion of the court."); *In re Mense,* 509 B.R. 269, 277

(Bankr. C.D. Cal. 2014) ("If cause is established, the court has ***discretion*** to dismiss the case ***if*** to do

so would serve the best interest of creditors and the estate.") (emphasis added).

**B.      Smart Capital Does Not Allege Any of the Enumerated Example of "Cause" to
Dismiss the Chapter 11 Case**

It is noteworthy that Smart Capital does not cite to a single one of the sixteen enumerated

examples of "cause" set forth in Section 1112(b)(4), instead generally alleging that the Debtor's case

should be dismissed due to its alleged "bad faith," based on the so-called "St. Paul Factors,"

discussed below.  *See* Motion at pp. 10:27-11:2, 11:20-12:2, 13:4-5.  Smart Capital's failure to cite

to any of the statutory examples of "cause" is notable because, in fact, **none** of the listed factors

apply in this case.

Specifically, Smart Capital has not pointed to and indeed cannot identify any "substantial or

continuing loss to or diminution of the estate" or the "absence of a reasonable likelihood of

rehabilitation" (Section 1112(b)(4)(A)).  To the contrary, the Debtor has recently filed both the

Assumption Motion and the Lease Compliance Motion to expeditiously resolve its issues with Smart

Capital's wrongful attempts to terminate the Lease.  Moreover, the Debtor intends to file a plan of

reorganization as soon as reasonably practical, within the initial exclusivity period, which it expects

to provide for a 100% distribution to creditors conditioned upon assumption of the Lease and the

Sublease.  McAbian Dec., ¶ 45.

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

Nor are there any allegations of mismanagement of the estate or failure to comply with any order of this Court in the Chapter 11 Case (Section 1112(b)(4)(B)). The Debtor is maintaining appropriate insurance (Section 1112(b)(4)(C)) and has not made any unauthorized use of cash collateral (Section 1112(b)(4)(D)). McAbian Dec., ¶ 44. The Debtor has timely filed his Schedules and SOFA (Section 1112(b)(4)(F)), attended an IDI (Section 1112(b)(4)(H)) and attended its 341 meeting (Section 1112(b)(4)(G). *Id.* Many of the other factors for establishing "cause" for appointment of a trustee are events that it is too early in the case to address, such as the a payment of post-petition taxes and fees (Sections 1112(b)(4)(I) and (K)), filing of a disclosure statement and obtaining confirmation of a plan (Section 1112(B)(4)(J)), and consummation and compliance with a confirmed plan (Sections 1112(b)(4)(L) through (O)).

Once again, Smart Capital does not, and cannot, point to any of these factors in support of its Motion, instead relying solely on allegations that the Chapter 11 Case was filed in bad faith. However, Smart Capital's allegations regarding bad faith misconstrue and oversimplify the Debtor's reasons for filing the Chapter 11 Case and fail to establish the necessary cause to dismiss the case.

## C. Smart Capital Has Failed to Prove That the Debtor Filed the Chapter 11 Case in Bad Faith

Where a motion to dismiss is predicated on bad faith, "[t]he moving party has the initial burden of making a *prima facie* case to support its allegations of bad faith." *In re Mense*, 509 B.R. at 277 (quoting *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 384 (Bankr. D. Or. 2003)) "Once such a showing has been made, the burden shifts to the debtor to establish that its chapter 11 case was filed in good faith." *Id.*

"The existence of good faith depends on an ***amalgam of factors*** and ***not upon a specific fact***." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (quoting *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986) (emphasis added). "The test is whether a debtor is attempting to ***unreasonably deter and harass creditors*** or attempting to effect a speedy, efficient reorganization on a feasible basis." *Id.* (emphasis added). "Good faith is lacking only when the debtor's actions are a ***clear abuse of the bankruptcy process***." *In re Marshall,* 298 B.R. 670, 680-81 (Bankr. C. D. Cal. 2003) ("*Marshall I*"), *aff'd sub nom. Marshall v. Marshall (In re Marshall)* ("*Marshall II*"), 403

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

B.R. 668 (C.D. Cal. 2009), *aff'd*, 721 F.3d 1032 (2013) ("*Marshall III*") (emphasis added).  *See also In re Mense*, 509 B.R. at 277 ("In finding a lack of good faith, courts have emphasized an ***intent to abuse the judicial proces***s and the purposes of the reorganization provisions . . . [p]articularly when there is *no realistic possibility of an effective reorganization* and it is evident that the debtor seeks *merely to delay or frustrate the legitimate efforts of secured creditors* to enforce their rights.") (emphasis added).

The Debtor has no improper purpose in filing the Chapter 11 Case, either to harass or delay Smart Capital or otherwise to abuse the judicial process; rather, it wishes to reorganize as quickly and efficiently as possible and to satisfy the allowed claims of its creditors in full, a goal which Smart Capital wishes to thwart because it frustrates Smart Capital's overriding goal of regaining sole access to the Leased Property and the Building.  Here, Smart Capital is not a creditor of the Debtor and never was a creditor of the Debtor.

"Although case law enumerates specific 'causes' for which a case may be dismissed under § 1112(b), the good faith inquiry is essentially directed to two questions: (1) whether the debtor is trying to ***abuse the bankruptcy process*** and invoke the automatic stay for *improper purposes*; and (2) whether the debtor is really in need of reorganization." *Marshall I,* 298 B.R. at 681.  "***It is not bad faith to seek to gain an advantage for declaring bankruptcy – why else would one declare it?***" *Id.* (quoting *In re James Wilson Assocs*., 965 F.2d 160, 170 (7th Cir. 1992)) (emphasis added).  Reorganization under Chapter 11 provides strategic advantages that a debtor is entitled to take advantage of when it files a case in good faith.  As herein, the Bankruptcy Code provides the Debtor with important advantages with respect to the Lease that are not available in state court.

While giving brief deference to the foregoing principles, Smart Capital proceeds to place undue reliance on the so-called "St. Paul Factors," arguing that those factors weigh in favor of dismissal in this case.  The St. Paul Factors, however, are ***not*** dispositive and are ***not*** intended to be applied in a purely mechanical fashion.  Rather, the *St. Paul Case* stands for no more than the proposition that, when considering whether a petition has been filed in bad faith, courts weigh a ***variety of*** circumstantial ***factors***, ***such as*** whether:

(1)    the debtor has only one asset;

(2)     the debtor has an ongoing business to reorganize;

(3)     there are any unsecured creditors;

(4)     the debtor has any cash flow or sources of income to sustain a plan of reorganization or two make adequate protection payments; and

(5)     the case is essentially a two party dispute capable of prompt adjudication in state court.

*St. Paul Self Storage Ltd. Partnership v. Port Auth. of the City of St. Paul (In re St. Paul Self Storage Ltd. Partnership)*, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995) (emphasis added).  "***Generally speaking***, **when factors such as these indicate** that **a debtor is unreasonably deterring or harassing <u>creditors</u> rather than attempting a speedy and feasible reorganization**, the court **may** conclude that the petition has been filed in bad faith and dismiss it."  *Id.* at 583 (emphasis added).  Thus, while factors such as those cited in the *St. Paul* decision <u>may</u> be relevant in a particular case, they are only relevant to the extent that they help to answer the larger questions of whether a debtor is somehow trying to abuse the bankruptcy process by using it for an improper purpose or whether the debtor has a legitimate need for bankruptcy protection.  Consideration of those primary questions weighs against a finding of bad faith in this case.

### 1.     The Debtor is Not Trying to Abuse the Bankruptcy Process and Invoke the Automatic Stay for Improper Purposes

Smart Capital makes much ado about the Debtor's purpose in filing the Chapter 11 Case, repeatedly criticizing the timing of the filing in relation to its pending attempts to wrongfully terminate the Debtor's rights to remain in possession of the Leased Premises, arguing that Smart Capital's ongoing campaign to wrongfully terminate the Lease is merely a "two-party dispute" that can be promptly resolved in state court.

First, the mere fact that a bankruptcy is filed to prevent an eviction, wrongful or otherwise, is not *per se* evidence of bad faith. *Cf. In re Bowers Investment Company, LLC*, 553 B.R. 762, 770 (Bankr. D. Alaska 2016) ("[N]either the filing of two successive bankruptcies, nor filing bankruptcy to prevent foreclosure, is per se evidence of bad faith. Indeed, to make such a finding would be at odds with the directive that courts look at the totality of circumstances in determining bad faith.").

Nor is Smart Capital's allegation that this is "essentially a two-party dispute" accurate.

18

1   WERM, as the Debtor's subtenant and the operator of Exchange LA, is clearly an interested party, as

2   it has a contractual right to possession of the Leased Premises that is also being directly impacted by

3   Smart Capital's wrongful actions.  Moreover, although the Debtor only employs a few people to

4   assist with its operations, WERM employs over one hundred individuals to run Exchange LA, and

5   their livelihoods are being threatened by Smart Capital's threatened eviction.  In addition, the

6   Debtor's creditors and interest holders will suffer tremendously if the case is dismissed.

7          Even if this Court accepts Smart Capital's characterization of the Debtor's Chapter 11 case as

8   essentially a two-party dispute, that factor is not dispositive.  "Petitions in bankruptcy arising out of

9   a two-party dispute do not per se constitute a bad-faith filing by the debtors."  *In re Sullivan*, 522

10  B.R. at 616 (quoting *In re Stolrow's, Inc.*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1998).  "Courts that find

11  bad faith based on two-party disputes do so where 'it is an apparent two-party dispute *that can be*

12  *resolved outside of the Bankruptcy Court's jurisdiction*."  *Id.* (quoting *Oasis at Wild Horse Ranch,*

13  *LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*, 2011 WL 4502102, at *10 (B.A.P. 9th Cir.

14  Aug. 26, 2011) (emphasis in *In re Sullivan*).  Contrary to Smart Capital's assertions, the state court

15  does **not** in fact provide an adequate procedure for resolving Smart Capital's latest wrongful eviction

16  attempt in a prompt or timely manner, before irreparable harm could be done to the Debtor, WERM,

17  and other parties in interest.

18         The Ninth Circuit specifically had the occasion to review California's unlawful detainer

19  statutes "to determine when a lessee's right to possession is terminated in these circumstances."

20  *Vanderpark Properties, Inc.  v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1470 (9th

21  Cir. 1988).  Although that case involved an allegation of monetary instead of nonmonetary defaults,

22  the court found that "***upon expiration of three days after the lessor has given the lessee the***

23  ***[required] notice***," if the lessee has failed to cure the default, "the ***lessor has terminated the lessee's***

24  ***right to possession*.**  *Id.* (emphasis added).  The lessor must then rely on the statute "to regain actual

25  possession of the premises," and "if the lessor stated a forfeiture election in his notice to the lessee,

26  the lessor is also entitled to a judicial declaration of forfeiture of the lease."  *Id.*  "**In an ensuing**

27  **unlawful detainer proceeding, the court does not decide whether the lessor has terminated the**

28  **lease.  That has already occurred.**  Instead, the court decides whether the termination was proper

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

19

and if it was, the court grants the lessor a judgment for possession of the property." *Id.* (emphasis

added).  "If the tenant should prevail in the unlawful detainer proceeding, this does not mean that the

landlord did not terminate the lease in advance of the judgment.  Rather, the judgment in favor of the

tenant is a judicial determination that the termination was improper.  A prevailing tenant who has

remained in possession retains his leasehold estate and may have an action for damages for the

lessor's breach of the covenants of quiet enjoyment and possession." *Id.*

Accordingly, the Ninth Circuit held that "under California law a lease terminates for

nonpayment of rent at least by the time the lessor files an unlawful detainer action, provided that a

proper three-days' notice to pay rent or quit has been given, and the lessee has failed to pay the rent

in default within the three-day period, and further provided that the lessor's notice contained an

election to declare the lease forfeited. *Id.* at 1471.  Although the language "at least by the time the

lessor files an unlawful detainer action" allows for the *possibility* that a lease may terminate at some

undefined point after the expiration of a three-day notice, this timing is not made clear, and a prudent

tenant seeking to avoid lease termination would need to take action before the three-day notice

expires, knowing that its landlord could commence an unlawful detainer action immediately

thereafter.

Furthermore, California Code of Civil Procedure ("**CCP**") § 1161 provides in pertinent part

as follows:

> A tenant of real property, for a term less than life, or the executor or administrator of
> the tenant's estate heretofore qualified and now acting or hereafter to be qualified and
> act, is guilty of unlawful detainer:
>
> . . . .
>
> 3.  When the **tenant continues in possession, in person or by subtenant,
> after a neglect or failure to perform other conditions or covenants** of the
> lease or agreement under which the property is held, including any covenant
> not to assign or sublet, than the one for the payment of rent, **and three days'
> notice,** excluding Saturdays and Sundays and other judicial holidays, in
> writing, requiring the performance of those conditions or covenants, or the
> possession of the property, shall have been served upon the tenant, and if there
> is a subtenant in actual occupation of the premises, also, upon the subtenant. . .

Based on the foregoing, Smart Capital's issuance of the three Three-Day Notices on October

16, 2023 meant that, absent cure by the Debtor, the Debtor's right to possession of the Premises

could very well terminate on or immediately after October 19, 2023, and the Debtor would then have

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

4862-1429-0072, v. 1

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

1  to rely on the unlawful detainer statutes to "regain actual possession" of the Premises and to avoid a

2  judicial declaration of forfeiture as expressly sought by Smart Capital.  Although the unlawful

3  detainer statutes provide an expedited remedy for landlords, the process of obtaining a judgment that

4  the termination by Smart Capital was improper, avoiding a judicial declaration of forfeiture, and

5  regaining the right to possession of the Premises takes time − time that the Debtor did not have and

6  does not have with the looming CUB renewal hearing.  And if the Debtor had allowed those three

7  days to pass, resulting in the potential termination the Lease, either on October 19, 2023 or when

8  Smart Capital filed an unlawful detainer complaint at any time thereafter, Smart Capital would no

9  doubt have opposed the CUB Renewal on the grounds that the Debtor did not have rights to the

10  Premises, based on the termination that would have occurred and would still be in legal limbo.  It

11  does not matter that Smart Capital may not yet have prosecuted its unlawful detainer action to

12  judgment or obtained a writ of possession; the mere fact that the Debtor's continued rights to occupy

13  the Premises are unresolved are enough to prevent or at the very least delay the CUB renewal, during

14  which time WERM would be forced to close Exchange LA.  By the time the Debtor would be able to

15  defend the unlawful detainer action, oppose the requested forfeiture, and seek other appropriate

16  relief under the unlawful detainer statutes, it might be too late to revive the business, leading to the

17  Debtor's potential financial ruin.

18  As already noted, the existence or non-existence of good faith is based upon "an *amalgam of*

19  *factors* and *not upon a specific fact.*"  *Marshall III*, 721 F.3d at 1048.  Moreover, an entity's desire

20  to seek the protections afforded by the Bankruptcy Code is not, in and of itself, an improper purpose.

21  "It is well recognized that the automatic stay under § 362, activated upon filing a bankruptcy petition

22  (with some exceptions not applicable here), is intended to provide debtors in bankruptcy with a

23  breathing spell from their creditors' collection actions.  And it is not unusual to encounter a chapter

24  11 case filed 'because of the crushing weight of a judgment.'  If, however, a debtor seeks to use a

25  chapter 11 filing to 'unreasonably deter and harass creditors,' such a filing lacks good faith."  *In re*

26  *Sullivan*, 522 B.R. at 614-15 (citing *Marshall I*, 298 B.R. at 683, and *In re Marsch*, 36 F.3d at 828.

27  Thus, even where a bankruptcy is filed to stop collection or eviction efforts, a court must find that

28  such motive is *unreasonable or intended to harass* the non-debtor litigant.  *Id.* at 615 ("The

1    bankruptcy court made no finding that stopping Appellees' collection efforts was unreasonable or

2    was intended to harass Appellees, however, and we find no support in the record for such

3    inferences.").  Here, the bankruptcy case was not filed to prevent collection on a judgment or harass

4    Smart Capital or Mr. Chang.  Rather it was filed to protect the Lease and Sublease and ensure the

5    continued operations of the Debtor and WERM.  The rights of Smart Capital and Chang are not

6    prejudiced at all by the filing.  The merits of the 3-Day Notices (of which there are none) may be

7    adjudicated in a timely fashion through the Assumption Motion.  Moreover, Smart Capital is not a

8    creditor of the Debtor, just an opportunistic and litigious landlord looking to improperly terminate

9    the Lease and Sublease by any means including but not limited filing defective and false 3-Day

10   Notices.

11        "Filing a chapter 11 case because of the crushing weight of a judgment is not unusual. In all

12   such cases, the debtor seeks to delay creditor action by filing a bankruptcy petition. Indeed, the

13   express purpose of the automatic stay under §362 is to delay creditor action by filing a bankruptcy

14   petition. The issue of . . . cause under §1112(b) does not arise unless a debtor seeks *unreasonably* to

15   deter or hinder creditors through abuse of the bankruptcy process." *Marshall I,* 298 B.R. at 683

16   (emphasis in original).  "***Giving debtors the opportunity to reorganize in response to impending***

17   ***financial distress is the purpose of chapter 11.*** The fact that this financial distress was brought on

18   by litigation rather than borrowing is not dispositive." *Marshall II*, 403 B.R. at 691 (emphasis

19   added).

20        The case of *In re Sullivan* is instructive.  In that case, creditors of the debtor "commenced

21   aggressive collection efforts, freezing or levying against bank and brokerage accounts," while the

22   debtor "continued to incur substantial legal fees," rendering him insolvent.  522 B.R. at 615.

23   Similarly, in this case, Smart Capital and its predecessors, led by Mr. Chang, have engaged in an

24   over ten-year campaign to evict the Debtor from the Leased Premises, presumably in an effort to get

25   out from a below-market Lease and re-lease the Premises to one or more third parties at higher rates.

26   Smart Capital's wrongful efforts have been acknowledged by the Ninth Circuit Court of Appeals,

27   which aptly stated:

28        . . . . Rather, it seems that requiring further assurances would serve only to assist
          Smart Capital **in its attempts to avoid continuance of an under-market lease**.  But
          this is not a right or benefit afforded under section 365. *See In re Natco Indus., Inc.,*

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985) (While section 365 provides "protection from having to be saddled with a debtor that may continue to default and return to bankruptcy," **it does not allow a landlord to "improve its position" by "escap[ing] the bargain it made" in pursuit of an opportunity to "rent the premises to others at a higher" amount.). Smart Capital made the deal it made with Hawkeye. And while it is entitled to assurance that Hawkeye will comply with the terms of that deal, it is not entitled to use section 365(b)(1) as a means to get out of a bad deal so that it can make a better one**.

*In re Hawkeye* 49 F.4th 1232, 1240-1241 (9th Cir. 2022) (emphasis added).

Such efforts have caused the Debtor to spend millions of dollars in legal fees, a portion of which they have been able to recover as the prevailing party under the Lease, but only by incurring additional legal fees to obtain reimbursement. Under these circumstances, it is reasonable for the Debtor to seek the breathing spell provided by the Bankruptcy Code to avoid an imminent wrongful eviction that it might not be able to undo in time to allow for the uninterrupted operation of Exchange LA, its sole subtenant and source of revenue. The fact complained of by Smart Capital – that the Lease is essentially the Debtor's only asset – actually weighs *against* dismissal, because by threatening this asset, Smart Capital is threatening the financial viability of the Debtor as a whole, impairing its ability to reorganize by trying to prevent the Lease from being assumed and enforced on a going-forward basis.

## 2. *The Debtor Has a Legitimate Reorganization Purpose and Need for Bankruptcy Protection*

In addition to the lack of an improper motive in this case, the Debtor has a legitimate need for reorganization and for bankruptcy protection, which was caused by Smart Capital's relentless efforts to get out of the Lease. In the face of baseless Three-Day Notices threatening the Debtor's right to continue in possession of the Premises, the Debtor's primary source of income, the Debtor properly elected to proceed under a statutory scheme that was specifically enacted to address the very situations of providing it with a "breathing spell" in which the Debtor might retain control of its primary assets, resolve the questionable and defective Three-Day Notices and provide a fair and equitable distribution to creditors. *See, e.g., In re Sullivan*, 522 B.R. at 616 (finding that debtor's filing of a bankruptcy petition "not only appropriately provided Debtor a breathing spell, it laid the groundwork for another key goal underlying the bankruptcy process, leveling the playing field for other creditors of the estate").

L E E C H   T I S H M A N   F U S C A L D O   &   L A M P L ,   I N C .
200 South Los Robles Avenue, Suite 300
Pasadena, California 91101
626.796.4000

The Debtor filed the Chapter 11 Case for the very necessary and legitimate purpose of preventing an automatic lease termination and the imminent unlawful detainer action against it so that it could address the merits of the Three-Day Notices through the Assumption Motion, assume the Lease and Sublease, and move forward under the Lease and Sublease to generate rental income that can be used to satisfy the claims of allowed creditors.  The Debtor can only accomplish this through the Bankruptcy Code.  *See Marshall I*, 298 B.R. at 683-84 (finding no bad faith where pending and prospective litigation "certainly gave the debtors cause for grave financial concern," and holding that it was reasonable for the debtors to file "immediately before a judgment enforcement hearing that threatened to dissipate most or all of their assets").

Smart Capital falsely claims that the Debtor is not suffering any financial hardship and has no need for reorganization, but it ignores the substantial financial burden, in the form of millions of dollars in legal fees, which has been placed on the Debtor as a result of Smart Capital's relentless yet ultimately unsuccessful eviction attempts.  The Debtor has a very real need to put an end to this vexatious litigation, and to focus on allowing WERM to operate its business under the Sublease without interference so that it, in turn, can satisfy its rent obligations to the Debtor.  Contrary to Smart Capital's assertions, WERM is absolutely relevant to the Chapter 11 Case, as it has common interests with the Debtor in the Leased Property that are being affected by Smart Capital's wrongful actions and the rents that it pays to the Debtor under the Sublease are the Debtor's primary source of revenue.  To that end, Smart Capital's contention that WERM is irrelevant is contradicted by Smart Capital's own Three-Day Notices, which included the Debtor **and** WERM.  Without the CUB renewal, WERM cannot keep the doors of Exchange LA open, and without customers, WERM will not be able to pay its obligations to its creditors, including the Debtor, which will put the Debtor in immediate financial peril.

The filing of the Chapter 11 Case provides the Debtor with a single forum in which it can address all claims against it, including the frivolous Three-Day Notices which will be addressed through the Assumption Motion, while maintaining ownership of its primary asset and ensuring an ongoing source of revenue.  Smart Capital's repeated aggressive and unjustified attempts to dispossess the Debtor from Leased Premises do not offer a comprehensive solution for the Debtor

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

that considers the respective interests of <u>all</u> parties in interest, instead furthering only Smart Capital's own economic interests, without regard to who else might be harmed in the process.

Unlike C.C.P. § 1161, Bankruptcy Code § 365(b)(1)(A) provides that if the tenant or subtenant "cures, or provides adequate assurance that [it] … nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph." 11 U.S.C. § 365(b)(1)(A).

As stated in *In re Escondido West Travelodge,* 52 B.R. 276 (S.D. Cal 1985) and quoted by the Ninth Circuit in *In Windmill Farms, Inc.*:

> It is possible to define termination in such a way that events sufficient to constitute termination of a lease occur long before a court determines that the termination is valid under state law.

*Id.* at 1472 (quoting *In re Escondido West Travelodge,* 52 B.R. at 379). After the three-days' notice period has expired, if the lessee has failed to cure the default, the lessee from that point forward is unlawfully detaining the premises if he remains in possession. *See* C.C.P. § 1161, *e.g. Id.* "**Because [lessee's] detention is 'unlawful,' [lessee] has lost [its] right to possession.** [Lessee's] right to possession has been 'terminated by the lessor because of a breach of the lease [and] the lease terminates.' Cal.Civ.Code § 1174(a). **In an ensuing unlawful detainer proceeding, the court does not decide whether the lessor terminated the lease. That has already occurred.**" *In re Windmill Farms, Inc.*, 841 F.2d at 1471 (emphasis added).

The filing of the Chapter 11 Case was not an attempt at improper forum shopping or interfering with Smart Capital's rights, but was, instead, a choice of a more appropriate alternative to accomplish those goals in the context of a broader plan that considers not only Smart Capital's interest, but those of the Debtor's creditors and parties in interest, which includes WERM. *See, e.g., In re Chameleon Sys., Inc.*, 306 B.R. 666, 671 (N.D. Cal. 2004) ("The intent of the Code was to provide rules of fairness and equity to govern, adjust, and balance . . . conflicting rights; to permit

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

25

1    the debtor's continued use, enjoyment and exploitation of property and assets essential to

2    rehabilitation, but *on terms which protect the rights of others*.") (emphasis added).

3         Finally, the fact that the Debtor has filed multiple Chapter 11 cases and that two are currently

4    pending, does not require a finding of bad faith. "[T]here is no provision in the Bankruptcy Code or

5    Rules which expressly prohibits having two bankruptcy cases open at the same time." *In re Studio*

6    *Five Clothing Stores, Inc.*, 192 B.R. 998, 1000 (Bankr. C.D. Cal. 1996). "[A] debtor who has been

7    granted a discharge under one chapter under Title 11 may file a subsequent petition under another

8    chapter even though the first case remains open, as long as the debtor meets the requirements for

9    filing the second petition." *Grimes v. U.S. (In re Grimes)*, 117 B.R. 531, 536 (B.A.P. 9th Cir. 1990.

10   The Bankruptcy Appellate Panel for the Ninth Circuit has rejected a *per se* rule of bad faith based on

11   back-to-back filings in favor of a "totality of the circumstances on a case-by-case basis" approach,

12   which is consistent with the "amalgam of facts" approach already discussed above. *In re Studio Five*

13   *Clothing Stores*, 192 B.R. at 1006. *See also Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886

14   F.2d 859, 869-70 (1989) ("[T]here is no prohibition of serial good faith Chapter 11 filings in the

15   Code – indeed, there is not even a time limit on successive filings parallel to that imposed on

16   individuals or family farmers. Once a bankruptcy plan is effectuated, all indications from the Code

17   would incline us to treat the reorganized entity as we would any other company.") (citations

18   omitted). Furthermore, the only reason the prior case remains open was in response to Judge Tighe's

19   express desire not to close it until all the appellate rights were exhausted. As a result of the filing of

20   this case, the prior proceeding can now be closed.

21         **3.    *Application of the St. Paul Factors Weighs in Favor of the Debtor***

22         Application of the St. Paul Factors to the facts of this case does not support a finding that the

23   case was filed in bad faith. While the Debtor's assets consist of the Lease and Sublease, the Debtor

24   has an ongoing business to reorganize, has unsecured creditors, has cash flow and a source of

25   income from its business operations and the case is not essentially a two-party dispute capable of

26   prompt adjudication in state court. The Three-Day Notices cannot be promptly adjudicated in state

27   court. Rather an unlawful detainer action will need to be brought and opposed and thereafter, if the

28   Debtor demonstrates that no defaults existed under the Lease, the Debtor will need to regain

4862-1429-0072, v. 1

1    possession and may seek damages.  Regardless, the damage to the Debtor will already have occurred

2    because the Lease will have been terminated and the CUB renewal delayed to the detriment of the

3    Debtor, its creditors and all interested parties including the Debtor's interest holders, WERM and

4    WERM's employees.

5        Based on the foregoing, Smart Capital has failed to meet its burden of establishing cause to

6    dismiss the Debtor's bankruptcy case, and the Motion should be denied.

7    **D.    Smart Capital Has Failed to Prove that Dismissal is in the Best Interests of the**

8    **Debtor's Creditors and its Estate**

9        Dismissal does not turn on the existence of "cause" alone.  Rather, in considering a motion to

10   dismiss pursuant to Section 1112(b)(1), a bankruptcy court has "an ***independent obligation*** under

11   § 1112 to consider what would happen to ***all creditors*** on dismissal and, in light of its analysis,

12   whether dismissal or conversion would be in the best interest of all creditors, not just the largest and

13   most vocal creditor."  *In re Sullivan*, 522 B.R. at 613 (emphasis added).  "When determining the best

14   interest of the creditors under § 1112(b), the Code's fundamental policy of achieving equality among

15   creditors must be a factor considered, 'and it is not served by merely tallying the votes of the

16   unsecured creditors and yielding to the majority interest."  *Id.*

17       Smart Capital makes only a very conclusory assertion that dismissal of the Chapter 11 Case

18   is in the best interest of the Debtor's creditors and its estate because it has been filed in bad faith

19   improperly conflating the two separate inquiries required by Section 1112(b)(1) into just one.  *See*

20   Motion at p. 23:22-23.  While Smart Capital also contends that the Lease is the only asset to

21   administer, and that the Debtor is not in financial distress, concluding that "creditors will not be

22   harmed" if the Chapter 11 Case is dismissed, it does not explain why this is in the "best interests" of

23   the Debtor's creditors and its estate.  *Id.* at p. 23:23-26.  And, once again, Smart Capital discounts

24   the relevance of WERM to this case, asserting that it should not be considered in this analysis.  *Id.* at

25   p. 23:27-28.  Based on these few facts, and the fact that Smart Capital wants to "send a clear

26   message" to the Debtor, Smart Capital has failed to meet its burden of setting forth facts

27   demonstrating that dismissal is in the best interests of the Debtors' creditors and the estate in this

28   case.

4862-1429-0072, v. 1

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

In fact, the totality of the circumstances supports allowing the Chapter 11 Case to continue. Notably, Smart Capital, who is not a creditor of the Debtor's estate, is the only party in interest to take the position that the Chapter 11 Case should be dismissed. While Smart Capital undoubtedly believes that it is in *Smart Capital's best interest* to dismiss the case, it does not, and cannot, purport to speak for the Debtor's creditors, equity holders and other parties in interest in this case, including WERM. Rather than put forth a single reason why dismissal of the Debtor's case is in the best interest of creditors, Smart Capital argues the legitimacy of the Debtor's creditors – an issue that was resolved previously at the trial to assume the Lease and plan confirmation. Frey Decl. ¶ 7 and Rasheed Decl.

It is not in the best interest of WERM, the Debtor's creditors, the Debtor, the interest holders of the Debtor or employees of WERM for the Debtor's case to be dismissed. It is not in the best interests of WERM for the case to be dismissed, for the reasons already discussed at length above. And WERM, as the party to an executory Sublease with the Debtor, is absolutely a party in interest in the Chapter 11 Case, both legally and as a practical matter. If the Lease is not assumed (which can only be done through Bankruptcy), WERM will lose its rights under the sublease and will not be able to operate its business. This will result in numerous employees losing their jobs, no business operations so no money to pay creditors and a very large indemnification claim against the Debtor.

The Debtor's estate will benefit from the assumption and reaffirmation of the Lease and Sublease, the prompt resolution of Smart Capital's latest eviction campaign, and a plan that affords the Debtor with sufficient future revenue to meet its financial obligations to its creditors. Given the complete lack of any grounds for dismissal including "bad faith," the Motion should be denied, and the Debtor should be provided an opportunity to assume the Lease and Sublease and proceed with its reorganization. Smart Capital will suffer absolutely no prejudice by allowing this Court rather to determine the merits of Smart Capital's 3-Day Notices.[6]

Smart Capital has failed to satisfy its burden of establishing that dismissal of the Chapter 11

---

[6] Contrary to the contentions of Smart Capital, it is Smart Capital and not the Debtor that is forum shopping. By issuing the frivolous Three-Day Notices, if the case is dismissed, Smart Capital will pursue its unlawful detainer action against a UD Court that is unfamiliar with the long history of this case and the perpetual shenanigans of Smart Capital and Mr. Chang to improperly terminate the Lease and Sublease and take control of the Premises.

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

28

1  Case is in the best interest of the Debtor's creditors and its estate.  Thus, the Motion should be

2  dismissed in its entirety.

3  **V.      CONCLUSION**

4          For the reasons set forth herein, the Debtor respectfully requests that the Court deny the

5  Motion in its entirety.  To the extent that the Court is not inclined to deny the Motion, the Debtor

6  requests an evidentiary hearing so that those offering testimony in support of the Motion may be

7  cross-examined and related discovery may be completed.

8

9  DATED:  December 26, 2023              LEECH TISHMAN FUSCALDO & LAMPL, INC.

10                                       By: /s/ Sandford L. Frey

11                                       Sandford L. Frey
                                         Reorganization Attorneys for Hawkeye Entertainment,
12                                       LLC, Debtor and Debtor-in-Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **200 South Los Robles Avenue, Suite 300 Pasadena, California 91101**.

A true and correct copy of the foregoing document entitled (*specify*) **DEBTOR AND DEBTOR IN POSSESSION HAWKEYE ENTERTAINMENT, LLC'S OPPOSITION TO MOTION TO DISMISS THE CHAPTER 11 CASE UNDER 11 U.S.C. § 1112(b)(1)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **December 26, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Steve Burnell**    Steve.Burnell@gmlaw.com,
  sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com

- **Russell Clementson**    russell.clementson@usdoj.gov

- **Sandford L. Frey**    sfrey@leechtishman.com,
  lmoya@leechtishman.com;dmulvaney@leechtishman.com;rsokol@leechtishman.com;kgutierrez@leechtishman.com;NArango@LeechTishman.com

- **Robyn B Sokol**    rsokol@leechtishman.com,
  rsokol@leechtishman.com;lmoya@leechtishman.com;dmulvaney@leechtishman.com;kgutierrez@leechtishman.com;NArango@LeechTishman.com

- **Alan G Tippie**    Alan.Tippie@gmlaw.com,
  atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com

- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

☐  Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On **December 26, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☐  Service information continued on attached page

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **(date)**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 26, 2023 | Lydia Moya | /s/ Lydia Moya |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4873-9101-5310, v. 1