1  Alan G. Tippie (CA Bar No. 89587)
       alan.tippie@gmlaw.com
2  Steve Burnell (CA Bar No. 286557)
       steve.burnell@gmlaw.com
3  **GREENSPOON MARDER LLP**
   1875 Century Park East, Suite 1900
4  Los Angeles, CA 90067
   Telephone: 213.626.2311
5  Facsimile: 954.771.9264

6  Attorneys for Smart Capital Investments I,
   LLC, Smart Capital Investments II, LLC,
7  Smart Capital Investments III, LLC, Smart
   Capital Investments IV, LLC, and Smart
8  Capital Investments V, LLC

9  **UNITED STATES BANKRUPTCY COURT**

10  **CENTRAL DISTRICT OF CALIFORNIA**

11  **SAN FERNANDO VALLEY DIVISION**

12  In re                                    **Case No. 1:23-bk-11501-MB**

13  HAWKEYE ENTERTAINMENT, LLC,              **Chapter 11**

14        Debtor.                            **SMART CAPITAL'S REPLY TO DEBTOR'S OPPOSITION TO MOTION TO DISMISS THE CHAPTER 11 CASE UNDER 11 U.S.C. § 1112(b)(1)**

15

16                                           [Related to Docket no. 44]

17                                           **Hearing Information:**
18                                           Date:  January 9, 2024
                                             Time:  1:30 p.m.
19                                           Place: Courtroom 303
                                                    21041 Burbank Boulevard
20                                                  Woodland Hills, CA 91367

21

22

23

24

25

26

27

28

SB 56418869v2

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................... 1

II. THE APPLICABLE LEGAL STANDARD ................................................................ 2

III. THE TOTALITY OF THE FOLLOWING FACTORS, INCLUDING THE ST. PAUL FACTORS, WEIGH IN FAVOR OF DISMISSAL ......................................... 3

    A.     "Bad Faith" Is Alone Sufficient "Cause" For Dismissal Of This Case ............ 3

    B.     No Creditor Has Opposed The Motion Thereby Consenting To The Relief Requested ................................................................................. 4

    C.     Smart Capital's Concerns That It May Be Jointly Liable For Any Violations Of Applicable Law Are Well-Founded ......................................... 4

    D.     Time Has Proven The Falsity Of Debtor's "Emergency" Bankruptcy Filing- Why Hasn't The "Imminent" or "Looming" CUB Hearing Been Conducted Yet? ............................................................................................. 5

    E.     Debtor Is Not In Need Of Reorganization Because It Is a Shell Company With No Employees Or Operating Business .............................. 6

    F.     Debtor's Judicial Admissions That The Third BK Case Was Filed Due To A Two-Party Dispute ........................................................................ 6

    G.     Debtor Has Admitted Its Forum Shopping ...................................................... 7

    H.     To Gain A Tactical Advantage, Debtor Continues To Intentionally Misrepresent Debtor and WERM's Activities And Asset ............................ 8

    I.     Mr. McAbian Admits His Actual Knowledge That He Should Not Have Signed CUB PA4 ................................................................................... 9

    J.     Debtor's Citation To *In re Bowers Investment Company* Provides Good Distinctions To A "Good Faith" Bankruptcy Filing. .......................... 10

    K.     Only The State Court Can Provide The Single Forum To Resolve All Of The Pending Disputes Between Debtor and Smart Capital ................... 11

    L.     Debtor's Request That The Court Consider The Interests Of Third Parties Is Legally Incorrect ............................................................................. 12

    M.     Smart Capital Is A Creditor ................................................................................. 12

    N.     The New Vision Settlement Documents Have No Applicability Here & Were Rejected By Operation of Law ............................................................... 13

    O.     Smart Capital Reserves Its Arguments Regarding Defaults To Adjudication In The State Court ................................................................... 14

IV. CONCLUSION ......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

In re Arnold,
    806 F.2d 937 (9th Cir. 1986) ................................................................................... 2

In re Bowers Investment Company, LLC,
    553 B.R. 762 (Bankr. D. Alaska 2016) ............................................................. 10, 11

In re Hawkeye Ent., LLC,
    49 F.4th 1232 (9th Cir. 2022) ................................................................................ 14

In re Marsch,
    36 F.3d 825 (9th Cir. 1994) .................................................................................. 2, 3

In re Marshall,
    298 B.R. 670 (Bankr. C.D. Cal. 2003) .................................................................... 2

In re Oasis at Wild Horse Ranch, LLC,
    2011 WL 4502102, at *10 (B.A.P. 9th Cir. Aug. 26, 2011) .................................... 3

In re Silberkraus,
    253 B.R. 890 (Bankr. C.D. Cal. 2000) .................................................................... 7

In re St. Paul Self Storage Ltd. P'ship,
    185 B.R. 580 (B.A.P. 9th Cir. 1995) ....................................................................... 3

In re Sullivan,
    522 B.R. 604 (B.A.P. 9th Cir. 2014) ................................................................... 3, 5

**STATUTES**

11 U.S.C. § 101(10) ....................................................................................................... 12

11 U.S.C. § 101(5) ......................................................................................................... 12

11 U.S.C. § 1112(b) ......................................................................................................... 2

11 U.S.C. § 1112(b)(1) ........................................................................................... 2, 3, 12

11 U.S.C. § 1112(b)(4) ............................................................................................. 3, 10

11 U.S.C. § 365(b)(1) .................................................................................................... 14

11 U.S.C. § 365(d)(2) .................................................................................................... 13

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, DEBTOR HAWKEYE ENTERTAINMENT, LLC, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

Smart Capital Investments I, LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC, Smart Capital Investments IV, LLC, and Smart Capital Investments V, LLC (collectively, "**Smart Capital**") hereby reply ("**Reply**") to the opposition ("**Opposition**") [docket no. 72] filed by Hawkeye Entertainment LLC, the debtor in possession herein ("**Debtor**"), to Smart Capital's *Motion To Dismiss The Chapter 11 Case Under 11 U.S.C. § 1112(b)(1)* ("**Motion**") [Docket no. 44] as follows:

## I.

## INTRODUCTION[1]

Smart Capital has demonstrated that "bad faith" cause exists to dismiss this Third BK Case under 11 U.S.C. § 1112. No creditor has opposed the Motion. While no single factor is controlling, the existence of several factors in this case, including the St. Paul Factors, warrant dismissal of this case.

Bad faith has been found in cases in which two-party disputes can be resolved outside the Bankruptcy Court's jurisdiction. Here, time has proven the falsity of the central lynchpin in Debtor's argument- that it lacked sufficient time to adjudicate the merits of the 3-Day Notices prior to the "imminent" or "looming" hearing on WERM's CUB renewal. It's been 2.5 months since the October 18, 2023 petition date and still no CUB renewal hearing has been conducted. Debtor provided no explanation in its Opposition to address this glaring defect in its argument.

This lack of explanation demonstrates the bad faith litigation tactic and forum shopping behind the filing of this Third BK Case. There is no reason why the merits of this ongoing, landlord-tenant dispute should not be adjudicated in state court. There will be no prejudice to Debtor in state court where it will enjoy all of its rights and remedies to defend

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning given to them in the Motion or supporting Memorandum of Points and Authorities attached to the Motion.

against the 3-Day Notices.  There is simply no legitimate reorganization purpose behind this Third BK Case.  Debtor has not described any defaults, arrearages, or any other financial hardships in its Opposition which prompted Debtor's "emergency" filing of its Third BK Case- other than its dispute with Smart Capital.  And under the current, operative Second BK Plan, Debtor has already reorganized the very same debt it wants to re-reorganize in this Third BK Case.  Because there is no legitimate bankruptcy purpose here, the only conclusion that can be drawn is that Debtor, a shell holding company with no operating business or employees, filed this instant case to deter, delay, and harass Smart Capital's efforts to adjudicate the merits of its 3-Day Notices in state court.

## II.

## **THE APPLICABLE LEGAL STANDARD**

Pursuant to 11 U.S.C. § 1112(b)(1), "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause[.]"  Lack of good faith in filing a chapter 11 petition establishes "cause" for dismissal or conversion under Section 1112(b).  In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994).  A "bankruptcy court's decision to dismiss a case as a 'bad faith' filing" is reviewed for abuse of discretion.  Marsch, 36 F.3d at 828.

"The existence of good faith depends on an amalgam of factors and not upon a specific fact… The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis."  Marsch, 36 F.3d at 828 (citations omitted).  The good faith inquiry under Section 1112(b) "is essentially directed to two questions: (1) whether the debtor is trying to abuse the bankruptcy process and invoke the automatic stay for improper purposes; and (2) whether the debtor is really in need of reorganization."  In re Marshall, 298 B.R. 670, 681 (Bankr. C.D. Cal. 2003) (citing In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)).

To determine whether a chapter 11 petition was filed in bad faith, courts may consider the following circumstantial factors:

> (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two party dispute capable of prompt adjudication in state court.

In re St. Paul Self Storage Ltd. P'ship, 185 B.R. 580, 582–83 (B.A.P. 9th Cir. 1995) (internal citations omitted) (collectively, "**St. Paul Factor(s)**").

"A chapter 11 reorganization case has been filed in bad faith when it is an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." In re Oasis at Wild Horse Ranch, LLC, 2011 WL 4502102, at *10 (B.A.P. 9th Cir. Aug. 26, 2011). "As articulated by the Ninth Circuit… when assessing a debtor's good faith the bankruptcy court 'should examine the debtor's financial status and motives…'" In re Sullivan, 522 B.R. 604, 615 (B.A.P. 9th Cir. 2014) (citing Arnold, 806 F.2d at 939).

"The bankruptcy court did not have to consider all the factors; nor did it have to weigh them equally. A bankruptcy court may find one factor dispositive. Indeed, a bankruptcy court may find bad faith even if none of the factors are present." In re Mahmood, 2017 WL 1032569, at *4 (B.A.P. 9th Cir. Mar. 17, 2017). That a debtor is in compliance with bankruptcy reporting requirements does not rebut indicia of bad faith. Id. at 5.

### III.
### THE TOTALITY OF THE FOLLOWING FACTORS, INCLUDING THE ST. PAUL FACTORS, WEIGH IN FAVOR OF DISMISSAL

**A.    "Bad Faith" Is Alone Sufficient "Cause" For Dismissal Of This Case**

As a preliminary matter, for reasons that are not quite clear, Debtor makes it a point to argue in the Opposition that Smart Capital is not seeking dismissal under any of the enumerated examples of "cause" under 11 U.S.C. § 1112(b)(4). See Opp'n p. 15:13-16:14. That is correct. As explicitly explained in the Motion, under the unique facts of this case, including three voluntary chapter 11 filings within ten years, dismissal of this Third BK Case is warranted due to Debtor's bad faith in filing the instant case. As the Ninth Circuit has held, bad faith alone is sufficient cause under 11 U.S.C. § 1112(b)(1) for dismissal of a chapter 11 bankruptcy case. In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994). While it is

unclear why Debtor is arguing the obvious, Smart Capital hereby confirms that it is not using a "shotgun approach" in seeking the appropriate dismissal relief. Dismissal as a bad faith filing is the appropriate, applicable grounds for dismissing this Third BK Case.

### B. No Creditor Has Opposed The Motion Thereby Consenting To The Relief Requested

No creditors- secured or unsecured- have filed opposition to the Motion. Under the Local Bankruptcy Rules, their lack of opposition should be deemed to be consent to the relief requested in the Motion. See LBR 9013-1(h).

The creditors' consent to dismissal is unsurprising. Unlike other chapter 11 cases in which there has only been one bankruptcy filing, the creditors in this case already enjoy the protections and rights afforded to them under the Second BK Plan confirmed during Debtor's Second BK Case. Thus, these creditors will not be left to "fend for themselves" once this case is dismissed; their repayment treatment is already detailed in the Second BK Plan. And Debtor has not described any default under the Second BK Plan. Dismissal is also in the best interest of the estate because additional administrative fees will not be incurred going through the charade of confirming yet a third "copy and paste" chapter 11 plan that will repay general unsecured creditors 100% through periodic distributions- just like their plan treatment in the prior two confirmed plans. See Appendix, Ex. D, bates stamp p. 341 (First BK Plan), Ex. G, p. 507 (Second BK Plan).

### C. Smart Capital's Concerns That It May Be Jointly Liable For Any Violations Of Applicable Law Are Well-Founded

While Debtor goes through great lengths to paint Smart Capital as a "greedy" landlord who simply wants to terminate an "under market" commercial lease, Debtor makes no mention of Smart Capital's legitimate concerns that Smart Capital may be held jointly liable for any ongoing violations of applicable laws occurring on the Leased Premises. See Mot., p. 33-34, ¶¶31-32 (M. Chang Decl.). Debtor's supporting exhibits, nonetheless, confirm that Smart Capital's concerns are well-found. As the Los Angeles Superior Court ruled when it granted Debtor's preliminary injunction motion:

> Defendants [i.e. Smart Capital] contend that once a CUB is issued, the property owner is required to sign and record a Master Covenant and Agreement…that covenants the property will abide by all the conditions of the CUB…Defendants note that, should Plaintiffs [i.e., Debtor and WERM] be found in violation of the CUB, Defendants may be liable, typically for an automatic fee of approximately $50,000… **As to the point regarding financial exposure, Defendants' argument is well-taken.** Accordingly…the Court will order a substantial undertaking… in case Plaintiffs are found in violation of the CUB permit, and the Court determines the preliminary injunction was wrongfully granted.

Declaration of Fadi K. Rasheed [Docket no. 74], Ex. H, p. 8 thereto (LASC Ruling Issued Dec. 14, 2022) (emphasis added).  Thus, there appears to be no dispute that Smart Capital, as potentially being jointly liable, holds valid concerns in stopping any ongoing violations of applicable law occurring on the Leased Premises.

## D. Time Has Proven The Falsity Of Debtor's "Emergency" Bankruptcy Filing- Why Hasn't The "Imminent" or "Looming" CUB Hearing Been Conducted Yet?

"Courts that find bad faith based on two-party disputes do so where 'it is an apparent two-party dispute *that can be resolved outside of the Bankruptcy Court's jurisdiction.'* " In re Sullivan, 522 B.R. 604, 616 (B.A.P. 9th Cir. 2014) (citations omitted) (emphasis in original).  The central lynchpin to Debtor's explanation for filing this Third BK Case is that Debtor did not have sufficient time to adjudicate the merits of the 3-Day Notices prior to the "imminent" or "looming" CUB hearing:

> Hawkeye's CUB renewal hearing is **imminent**…It is not feasible for Hawkeye to obtain an anti-forfeiture ruling in its favor in time for the expedited CUB hearing.

Appendix, Ex. N, bates stamp p. 627 (Debtor's sworn statements in its Petition) (emphasis added).

> Although the unlawful detainer statutes provide an expedited remedy for landlords, the process of obtaining a judgment that the termination by Smart Capital was improper, avoiding a judicial declaration of forfeiture, and regaining the right to possession of the Premises takes time- time that the Debtor did not have and does not have with the **looming** CUB renewal hearing.

Opp'n p. 21:2-6 (emphasis added).

It's been approximately 2.5 months since the October 18, 2023 petition date and this "imminent" or "looming" CUB hearing has yet to be conducted. Given the opportunity to present any evidence in its Opposition of when this CUB hearing will be held, Debtor has failed to provide any. Debtor's argument that the merits of the 3-Day Notice could not be timely adjudicated prior to this CUB hearing that has no set date is simply not credible.

### E. Debtor Is Not In Need Of Reorganization Because It Is a Shell Company With No Employees Or Operating Business

Debtor states that this Third BK Case was not filed for an improper purpose because Debtor "wishes to reorganize as quickly and efficiently as possible and to satisfy the allowed claims of its creditors in full[.] Opp'n p. 7-9. Yet, Debtor fails to mention any debt in need of reorganization in its Opposition. Debtor is simply a shell holding company for the Lease with no employees. Its operating expenses do not include payroll. The entity with the actual, ongoing business is WERM, who operates a nightclub on the Leased Premises but who itself is not in bankruptcy. See Ex. P, bates stamp p. 679, ¶ 4-5, p. 681, ¶ 10, 712 (McAbian Decl.); Ex. U, bates stamp p. 950 (Chapter 11 Status Report). Other than its dispute with Smart Capital, Debtor has described no financial hardships or any default under the current, operative confirmed Second BK Plan.

In a transparent attempt to manufacture financial hardship, Debtor cries that it has incurred millions in legal fees litigating against Smart Capital. Opp'n p. 24:10-23. Debtor has incurred these fees voluntarily by filing three voluntary chapter 11 petitions. In any event, no outstanding amounts owed to any law firm were scheduled in Debtor's 2023 Schedules. Accordingly, this manufactured financial hardship rings hollow along with Debtor's argument that it is seeking to "reorganize" its non-existent operating business.

### F. Debtor's Judicial Admissions That The Third BK Case Was Filed Due To A Two-Party Dispute

Debtor argues that its Third BK Case filing was not the result of a two-party dispute between it and Smart Capital. See Opp'n 1:21-22. Unfortunately for Debtor, the records

of Debtor's judicial admissions is clear. In Debtor's own words:

> So, why is Hawkeye here again? That is because Smart Capital continues to serve fraudulent notices of default at strategic moments in furtherance of its efforts to terminate the Lease.

Appendix, Ex. N, bates stamp p. 624 (2023 Petition).

> The **sole problem the Debtor has** is the never-ending interferences by Smart Capital with the business operations of Hawkeye and its subtenant Exchange LA and repeated attempts to terminate the Lease to the detriment of Hawkeye.

Appendix, Ex. U, bates stamp p. 927 (Chapter 11 Status Report) (emphasis added).

> To preserve the Lease and Sublease from termination, the Debtor was once again **forced by Smart Capital's** questionable litigation tactics to file for relief under Chapter 11.

Opp'n, p. 10:4-5 (emphasis added). Under Ninth Circuit authority, these judicial admissions are conclusive and binding on Debtor. See Mot. p. 14. The "sole problem" that "forced" Debtor to file its Third BK Case was its dispute with Smart Capital. To date, Debtor has described no dispute with any other creditor in its Opposition or other pleadings filed in this case.

### G. Debtor Has Admitted Its Forum Shopping

Debtor has admitted that it filed this Third BK Case simply as forum shopping because Debtor feels that it cannot adequately "lay out a decade long history" of the dispute between Debtor and Smart Capital [i.e., a two-party dispute], and the state court will be "unfamiliar" with that history while adjudicating the merits of the 3-Day Notices in the unlawful detainer court. See Opp'n p. 4:6-9. Debtor simply disliking the unlawful detainer court procedures, or feeling that it can gain a tactical advantage in Bankruptcy Court, are admissions of Debtor's bad faith forum shopping. "[T]wo party disputes in state court… should be resolved through the normal litigation process in those forums, and that it is bad faith to file bankruptcy instead of continuing with the normal litigation process in the nonbankruptcy forums." In re Silberkraus, 253 B.R. 890, 906 (Bankr. C.D. Cal. 2000), subsequently aff'd, 336 F.3d 864 (9th Cir. 2003).

Debtor is presenting a false dichotomy to this Court that it no choice but to file for

bankruptcy or forever lose its leasehold interests in the Lease. Because Smart Capital must still prove its allegations in the 3-Day Notices in state court at trial, Debtor's false dichotomy is unpersuasive. See Mot. p. 15-18. Smart Capital can obtain possession of the Leased Premises only if it succeeds at trial, i.e., Debtor remains in possession until then. Debtor retains all of its rights and remedies to defend against the 3-Day Notices in state court.

### H. To Gain A Tactical Advantage, Debtor Continues To Intentionally Misrepresent Debtor and WERM's Activities And Asset

The following statements in the Opposition, and supporting declaration, demonstrate Debtor's continued egregious intentional misrepresentations to this Court concerning Debtor (and the estate's) assets. Debtor and WERM are separate legal entities. WERM is not in bankruptcy. Exchange LA and the CUB are not property of the estate. WERM is the sole entity that operates Exchange LA, and WERM is the holder of the CUB. Debtor is simply a shell holding entity. Yet, in an effort to defeat the Motion, Debtor continues to intentionally misrepresent Debtor's activities and assets by blurring Debtor and WERM together:

> Without the CUB renewal, Exchange LA would be unable to operate. Even when the Debtor ultimately succeeds in an unlawful detainer proceeding, it would need to reapply for the CUB, a process that, unlike a renewal, takes many years. **With Exchange LA shuttered during this period, the Debtor's primary assets would be stripped of their value.**

Opp'n 9:9-13 (emphasis added).

> The **Debtor/WERM** uses the Property as permitted in the Lease, primarily for the operation of Exchange LA, a night club and entertainment venue. The sale of alcoholic beverages is an integral part of the **Debtor's/WERM's operations** and use of the Property and is acknowledged in the Lease both through the description of use and requirements for liquor liability related insurance. To sell alcoholic beverages at the Property, the **Debtor/WERM obtained a CUB permit from the City**. The CUB needed to be renewed and the application needed to be filed prior to March 12, 2023 to avoid expiration while the renewal process took place. To renew the CUB, the **Debtor/WERM** needs to file an application with the City of Los Angeles.

McAbian Decl. [Docket no. 73], p. 8:8-9 (emphasis added).

A further example of Debtor's intentional use of this Third BK Case and automatic stay for its litigation advantage, through WERM, Debtor continues to actively litigate the merits of the very same 3-Day Notices that Debtor does not want Smart Capital to litigate in the unlawful detainer court. See Mot. p. 21; Appendix, Ex. R, bates stamp p. 740-864.

**I.    Mr. McAbian Admits His Actual Knowledge That He Should Not Have Signed CUB PA4**

Mr. McAbian declaration has proven the merits of Smart Capital's allegations in the 3-Day Notices regarding the CUB. By way of brief summary, Smart Capital alleges that the CUB that expired in March 2023 cannot be renewed (and therefore WERM is operating without a valid CUB) because WERM and/or Mr. McAbian committed fraud during the CUB PA4 application process. A copy of the CUB renewal application form in question is located at Appendix Ex. J, bates stamp p. 582-83.

Mr. McAbian has now admitted in his most recent declaration that he knew he was not the correct party to sign the prior CUB renewal, CUB PA4. As explained by Mr. McAbian's own words, "However, the CUB application **must be signed by Smart Capital** as the property owner unless the subject Lease is for the entire Property." McAbian Decl. 8:7-9 (emphasis added). Yet, Mr. McAbian himself signed the prior CUB PA4 when he was neither the owner of the Property nor leased the entire Property. See Appendix, Ex J, bates stamp p. 583.

Apparently recognizing that his intentional actions have not been discovered, Mr. McAbian offers the following feeble explanation: "Whether the Lease covers the entire Building is a debatable point because to the best of the Debtor's knowledge and belief, the only space in the Building that can be legally occupied is covered by the Lease." McAbian Decl. p. 8, n. 2.

Unfortunately for Debtor, there is no "debatable point" here for the following two reasons. First, by its own admission, Debtor knows that it did not lease the "entire building."

It leased the first four floors of a twelve-story building. McAbian Decl. p. 2, ¶ 4. Second, Debtor is trying to makeup and read words into the text of the application form for CUB PA4 that do not exist. The CUB application form does not state that it must be signed by the property owner "or lessee if entire [legally occupiable space] is leased." The language in the form is clear- the affidavit must be signed by the property owner or "lessee if entire site is leased[.]" See Appendix, Ex. J, bates stamp p. 583.

Thankfully for this Court, the consequences of these now-admitted intentional actions by Mr. McAbian do not have to decided here. The proper court to rule on these state law issues is the state court.

### J. Debtor's Citation To *In re Bowers Investment Company* Provides Good Distinctions To A "Good Faith" Bankruptcy Filing.

In an effort to explain its serial bankruptcy filings, Debtor cites *In re Bowers Investment Company, LLC*, 553 B.R. 762, 770 (Bankr. D. Alaska 2016) (converting chapter 11 case to chapter 7 on 11 U.S.C. § 1112(b)(4) grounds) for the following proposition: "Neither the filing of two successive bankruptcies, nor filing bankruptcy to prevent foreclosure, is per se evidence of bad faith. Indeed, to make such a finding would be at odds with directives that courts look at the totality of the circumstances in determining bad faith." Unlike Debtor in the instant case, however, the debtor in Bowers: (1) only filed two bankruptcies, (2) filed the second bankruptcy as a result of the problems with its bankruptcy counsel during the first case, (3) owned several commercial properties with a value of $4.4 Million, (4) experienced real financial distress when it lost one of its major tenants, and (5) became delinquent thereby leading to nonjudicial foreclosure proceedings. Id. at 764-65.

The Bowers bankruptcy court found that the second bankruptcy case filed by the Bowers debtor had legitimate bankruptcy purpose and that "all parties generally recognized that this debtor was a good candidate for reorganization[.]" Id. at 771. The bankruptcy court cautioned, however, that:

> This is not to say that successive bankruptcy filings timed to prevent foreclosure should not be closely scrutinized. However, the court must evaluate the entirety of the debtor's circumstances to determine whether it

> has filed chapter 11 for a legitimate purpose, e.g., to attempt to reorganize a valid business, or primarily for the improper purpose of delaying foreclosure or harassing creditors.

Id. at 770.

Unlike the debtor in Bowers, Debtor here: (1) has filed more voluntary bankruptcies, (2) is a shell holding company for the Lease, essentially only having one asset, (3) has admitted that it suffered no financial distress requiring the filing of the Third BK Case other than its dispute with Smart Capital over the 3-Day Notices, (4) has no valid business to reorganize, and (5) has admitted to filing this case for the improper purpose of delaying state court adjudication of the 3-Day Notices.  The Court should therefore closely scrutinize Debtor's third successive bankruptcy filing.

**K.     Only The State Court Can Provide The Single Forum To Resolve All Of The Pending Disputes Between Debtor and Smart Capital**

Debtor argues that that the Third BK Case provides a single forum to litigate all issues "The filing of the Chapter 11 Case provides the Debtor with a single forum in which it can address all claims against it, including the frivolous Three-Day Notices which will be addressed through the Assumption Motion, while maintaining ownership of its primary asset and ensuring an ongoing source of revenue." Opp'n p. 24:24-27.  This is patently false.  First, there is already the State Court Action currently pending in the Los Angeles Superior Court, which Debtor itself initiated.  Neither this Third BK Case, nor any lease assumption motion, will resolve all the claims pending in the State Court Action.  Second, the State Court Action includes parties that are not subject to the Court's jurisdiction because they are not debtors in this bankruptcy case, including WERM, Mr. McAbian, personally, and other co-defendants, Michael S. Chang personally and Top Properties, Inc. Third, to the extent Smart Capital demonstrates the merits of its allegations regarding the CUB and liquor licenses, it is currently unclear whether this Court may terminate or revoke licenses issued by governmental agencies who themselves are not before the Court.  On the other hand, the state court, a court of general jurisdiction- may exert jurisdiction over

all parties and make any resulting rulings as necessary.

### L. Debtor's Request That The Court Consider The Interests Of Third Parties Is Legally Incorrect

Debtor argues that the Court should consider the interests of Debtor's equity holders, WERM, employees of WERM, and club patrons when ruling on the Motion. Opp'n 12:17-20, 19:1-6, 27:23-25. The plain language of the Bankruptcy Code is clear and unambiguous. If cause is found, only the best interests of creditors and the estate should be considered. "[T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, **whichever is in the best interest of creditors and the estate**, for cause[.]" 11 U.S.C. § 1112(b)(1) (emphasis added). As discussed above in Section B, dismissal of this Third BK Case is in the best interests of the creditors and the bankruptcy estate.

### M. Smart Capital Is A Creditor

Debtor argues that Smart Capital is not, and never has been, a creditor. See Opp'n 17:11-12 ("Here, Smart Capital is not a creditor of the Debtor and never was a creditor of the Debtor."), 22:7-8 ("Moreover, Smart Capital is not a creditor of the Debtor…"). The Bankruptcy Code defines a "creditor" as an entity holding a prepetition "claim," which is broadly defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5) and (10). Debtor previously scheduled Smart Capital as a creditor on Schedule F in its first and second bankruptcy cases. See Appendix, Ex. C, bates stamp p. 61 (First BK Schedules), p. 383 (Second BK Schedules). While Debtor appears to be using a new litigation tactic of intentionally omitting Smart Capital from its schedules in this Third BK Case, based on the prepetition disputes between Debtor and Smart Capital, including the 3-Day Notices, the State Court Action, and Smart Capital's potential claims against Debtor arising from Smart Capital's joint liability for any ongoing violations of applicable law on the Leased Premises, Smart Capital clearly is, and has been, a creditor.

It's perplexing that Debtor has chosen to remain silent and provide no explanation for why it scheduled Rene Vardapour as a "creditor" when it is beyond dispute that Rene Vardapour accepted equity interests in WERM in exchange for Vardapour's claim under the confirmed First BK Plan. See Mot. 3:4-12 and 4:10-19. As such, Vardapour appears to be an insider of Debtor. Debtor's failure to address this issue raises the specter that it was intentional and perhaps to manufacture a creditor body.

### N. The New Vision Settlement Documents Have No Applicability Here & Were Rejected By Operation of Law

It is quite perplexing why Debtor believes the New Vision Settlement Documents (as defined in the Opposition) between Debtor and New Vision in 2014 somehow releases Smart Capital's claims against WERM or Mr. McAbian, personally, and therefore defeats the allegations in the 3-Day Notices. See Opp'n, p. 8:4-20.

Neither WERM nor Mr. McAbian, personally, were parties to the underlying settlement agreement containing the general, mutual releases- therefore no claims against these parties were released. See Appendix, Ex. D, bates stamp p. 177-189. And neither WERM nor Mr. McAbian were the debtors in the First BK Case nor the Second BK case, so no claims have been waived against them though those proceedings.

Moreover, the New Vision Settlement Documents have no relevance here because: (1) the current bankruptcy case does not arise from the New Visions Settlement Documents, (2) Smart Capital was not a party to the New Vision Settlement Documents, and (3) the New Vision Settlement Documents have no legal consequence because, as a matter of blackletter bankruptcy law under 11 U.S.C. § 365(d)(2), to the extent there was any ongoing obligations to perform and abide by the settlement, Debtor failed to assume the New Visions Settlement Documents prior to the confirmation hearing in its 2019 bankruptcy case, and the confirmed Second BK Plan did not specifically assume the New Vision Settlement Documents nor the underlying settlement agreement. Thus, by default under the Second BK Plan, the New Vision Settlement Documents and underlying settlement agreement were rejected. See Ex. D, bates stamp p. 348 (Second BK Plan).

In sum, the New Vision Settlement Documents from 2014 did not waive alleged, prospective violations of the Lease and Sublease in 2023.

Debtor's further argument that Smart Capital does not have standing to raise violations of the CUB is meritless. See Opp'n, p. 8:15-20. Smart Capital absolutely has standing to contest the CUB because, as the owner of the Property, Smart Capital may also be jointly liable for violations of the CUB. See Michael S. Chang Decl. attached to the Mot., ¶¶ 10-17. That Debtor also recognizes that the City of Los Angeles may also be a necessary party to adjudicating the underlying CUB dispute provides further grounds for allowing the state court to adjudicate the merits of this ongoing, prepetition landlord-tenant issue.

### O. Smart Capital Reserves Its Arguments Regarding Defaults To Adjudication In The State Court

To correct yet another factual misrepresentation (and misstatement of the law) made by Debtor, contrary to Debtor's statements, the Bankruptcy Court did find that a monetary default had occurred- defaults during said litigation. See Fadi K. Rasheed Decl. [Docket no. 71], p. 4:4 ("The Bankruptcy Court found no defaults existed."), p. 4:13-14 ("… that Smart Capital failed to prove the existence of any material default or breach under the Lease."). As Debtor is well aware, and as the Ninth Circuit held, Smart Capital did in fact prove that a monetary default existed (Debtor's late payment of April 2021 rent) and that the Bankruptcy Court erred as a matter of law by failing find that the monetary default "triggered" the curative analysis required under 11 U.S.C. § 365(b)(1). See Rasheed Decl., Ex. K, p. 54:13-56:6 thereto. Under controlling Ninth Circuit law, there is no requirement that the default be "material." Any failure to perform the obligations set forth in the Lease is sufficient to trigger Section 365(b)(1). Any suggestion by Debtor to the contrary is incorrect. See In re Hawkeye Ent., LLC, 49 F.4th 1232, 1239 (9th Cir. 2022) ("[W]e hold that the bankruptcy court erred in narrowly interpreting 'default' to refer only to defaults that are sufficiently material to warrant forfeiture of the lease under California law because there is nothing in section 365(b)(1) to support this interpretation.").

To dispute Debtor's factual contentions that it has not defaulted under the Lease, and to preserve all rights and remedies arising therefrom, Smart Capital hereby incorporates its arguments as detailed in its *Landlord's Response To Debtor's Motion To Assume Commercial Real Property Lease And Sublease* [Docket no. 70].

## IV.

## CONCLUSION

No evidentiary hearing is required to adjudicate this Motion. The evidence in support of dismissal is largely found in the prior pleadings and Debtor's judicial admissions in those records. There is no dispute concerning those records. With no CUB hearing that is "imminent" or "looming", there's plenty of time for Debtor to adjudicate the merits of the underlying landlord-tenant dispute, and cross-examine any witnesses, in state court.

The filing of this Third BK Case presents this Court with facts that differ from the facts that were before the Court during the Second BK Case. Under the facts now before the Court, Debtor's third voluntary bankruptcy filing presents a clear discernible pattern of Debtor's misuse of the Bankruptcy Code and automatic stay in bad faith to deter and harass Smart Capital's attempts to have the state court adjudicate what is simply a two-party, landlord-tenant dispute. As such, the Motion should be granted.

DATED: January 2, 2024        Respectfully submitted,

**GREENSPOON MARDER LLP**

By:   */s/ Steve Burnell*
     Alan G. Tippie
     Steve Burnell
     Attorneys for Smart Capital

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **SMART CAPITAL'S REPLY TO DEBTOR'S OPPOSITION TO MOTION TO DISMISS THE CHAPTER 11 CASE UNDER 11 U.S.C. § 1112(b)(1)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 2, 2024 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Steve Burnell on behalf of Creditor Smart Capital Investments I,LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC, Smart Capital Investments IV, LLC, and Smart Capital Investments V, LLC
Steve.Burnell@gmlaw.com,
sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com

Steve Burnell on behalf of Interested Party Courtesy NEF
Steve.Burnell@gmlaw.com,
sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com

Russell Clementson on behalf of U.S. Trustee United States Trustee (SV)
russell.clementson@usdoj.gov

Sandford L. Frey on behalf of Debtor Hawkeye Entertainment, LLC
sfrey@leechtishman.com,
lmoya@leechtishman.com;dmulvaney@leechtishman.com;rsokol@leechtishman.com;kgutierrez@leechtishman.com;NArango@LeechTishman.com

Robyn B Sokol on behalf of Debtor Hawkeye Entertainment, LLC
rsokol@leechtishman.com,
rsokol@leechtishman.com;lmoya@leechtishman.com;dmulvaney@leechtishman.com;kgutierrez@leechtishman.com;NArango@LeechTishman.com

Alan G Tippie on behalf of Interested Party Courtesy NEF
Alan.Tippie@gmlaw.com,
atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 2, 2024 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**No judge's copy was served pursuant to General Order 23-01**

☐ Service information continued on attached page.

DW 56366473v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 2, 2024 | Denise Walker | */s/ Denise Walker* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

DW 56366473v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**